## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEIL COLE,<br><br>               *Plaintiff,*<br>    v.<br><br>ICONIX INTERNATIONAL INC. f/k/a/<br>ICONIX BRAND GROUP, INC., and<br>SETH HOROWITZ,<br><br>               *Defendants.* | **COMPLAINT**<br><br>Case No. _____<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1.      Starting in August 2015, Plaintiff Neil Cole had his life and his life's work effectively ripped away from him based on abject lies.  These lies were primarily told by Defendant Seth Horowitz, Cole's one-time yet supposedly spurned protégé at Iconix Brand Group, Inc., the visionary branding business that Cole founded and led for nearly 25 years in various forms. Horowitz's lies sprung an absurd—and now-vacated—federal securities fraud prosecution that tortured Cole for the better part of a decade.  Thankfully, Cole at long last now stands vindicated entirely of the bogus charges Horowitz orchestrated against him.  Indeed, just days ago, the U.S. Court of Appeals for the Second Circuit ordered the dismissal in full of all charges against Cole, noting that the jury that initially heard the case did not believe "even a fraction of Horowitz's account," "rejected the government's proof," and "doubted the story at the heart of the government's case."  Nevertheless, the allegations left devastation and destruction in their wake.

2.      What's more, the harms from Horowitz's lies were significantly exacerbated by the indefensible conduct of Iconix itself, which was obligated to help Cole defend himself against these charges but did not.  Rather, Iconix, the company that Cole had himself built and grew into

1

a multi-billion-dollar empire, turned on Cole on a dime, did all it could to help secure Cole's wrongful conviction, and in so doing intentionally and maliciously neglected its contractual obligations to Cole.

3.     Through this action, Cole seeks relief for the immense harm Defendants caused him: (i) $25,000,000 from Iconix for its egregious breach of its obligations to help Cole defend himself for its own enrichment, including more than $3,800,000 in an underlying and unambiguous contractual liability and associated interest; and (ii) $20,000,000 from Horowitz for his malicious prosecution of Cole.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1) because Cole, Iconix, and Horowitz are citizens of different States and the matter in controversy exceeds $75,000, as alleged herein.

5.     This Court has jurisdiction over Iconix and Horowitz because (i) each transacts business in New York in a continuous and systematic way; (ii) each transacts business in New York and Cole's claims herein arise from that transacting of business; and (iii) Horowitz committed a tort within New York, as alleged herein.  *See* CPLR 302(a)(1), (2).

6.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Cole's claims occurred in this District, as alleged herein.

## PARTIES

7.      **Plaintiff Neil Cole** is a resident of New York.

8.      **Defendant Iconix** is incorporated in Delaware and headquartered in Florida.

9.      **Defendant Horowitz** is, on information and belief, a citizen, domiciliary, and resident of New Jersey.

## STATEMENT OF FACTS

I.      **The Now-Vacated Criminal Action Against Cole That Was Premised Entirely on False and Malicious Reports from Horowitz**

      a.      **Horowitz's Life Becomes Embroiled in Turmoil and He Develops a Deep-Seated Resentment and Visceral Hatred of Cole**

10.      In 2005, Cole founded Iconix Brand Group, a brand management company.

11.      In 2012, Cole hired Horowitz, and, in April 2014, Cole promoted Horowitz to COO.

12.      Horowitz initially viewed himself as Cole's protégé and successor as CEO.

13.      Unbeknownst to Cole at this time, Horowitz's life was then in turmoil.

14.      Horowitz was regularly withdrawing large sums of cash from his bank accounts, each just under the required reporting amount under federal law, some of which he used to buy drugs.

15.      Horowitz was quoted as saying at the time that he "gets a thrill of doing something knowingly wrong," and asking himself:  "I know it's right.  Why don't I do it[?]"

16.      At this time, Horowitz had also developed a deep-seated and mostly irrational resentment and anger towards Cole, principally on the perceived slight that Cole had unfairly rebuffed Horowitz's efforts to lead Iconix.

17.      Indeed, when Horowitz ultimately concluded that Cole stood in his path to becoming CEO, Horowitz grew resentful and angry at Cole and vowed to "fight back" against him.

18.     Horowitz began to write desperate grievance letters addressed to Cole, although he never actually sent them.

19.     These frantic letters provided a window into Horowitz's deep-seated hatred for Cole and into Horowitz's overwhelming desire to take over Iconix at any cost.

20.     In one such letter, which Horowitz named "[D]ear[N]eil," Horowitz meticulously documented the ways in which Cole had purportedly "disrespected" him.

21.     Horowitz indicated in that letter that he only had two options as to how he could respond to the disrespect—he could either "ignore it" or "fight back."

22.     Horowitz wrote that he had not yet chosen to fight back "out of respect," but he made it abundantly clear that his "ability to ignore" Cole's supposed disrespect was "not going to last much longer."

23.     Horowitz also documented his concerns that he would never move up the chain at Iconix, writing that he feared Cole had "no plans of letting [him] actually drive and attack the business."

24.     Then, in 2014, Cole told Horowitz that he was not ready to "give up" the title of President of Iconix, which was one of the positions that Horowitz strongly desired.

25.     Later, in 2015, Horowitz became "very upset" with Cole, and others at the company observed that there was "very much . . . a rift developing" between the two.

**b.  To Protect Himself from Criminal Responsibility in Connection with His Own Deals, and to Get Revenge on Cole, Horowitz Tells a False Story That Cole Committed Securities Fraud, Leading to a Near Decade-Long Prosecution Ultimately Resulting in Cole's Vindication (and Horowitz's Prosecution)**

26.     In 2014, Horowitz negotiated two joint venture deals for Iconix with an overseas counterparty (known generally as "GBG"), known as SEA-2 and SEA-3.

27.     In 2015, the S.E.C., and later, in 2018, the Department of Justice, both began investigating the SEA-2 and SEA-3 deals that Horowitz had negotiated.

28.     At first, Horowitz denied having done anything wrong.

29.     However, years later, in 2019, Horowitz became nervous that he would be held accountable for certain terms that he negotiated on SEA-2 and SEA-3 and he decided to throw his perceived nemesis, Cole, under the bus on the basis of abject lies.

30.     To protect himself and to harm Cole, Horowitz crafted a false and absurd story that he told to investigators, law enforcement, and prosecutors that implicated Cole in wrongdoing as to SEA-2 and SEA-3.

31.     Specifically, Horowitz repeatedly told investigators, law enforcement, and prosecutors that Cole had conspired with GBG (Iconix's counterparties on SEA-2 and SEA-3), to enter into unwritten side deals that he kept secret from Iconix and its auditors ("secret side deals"), which Cole supposedly did to artificially inflate Iconix's revenue.

32.     Horowitz also falsely reported to investigators, law enforcement, and prosecutors that Cole destroyed documents and ordered Horowitz to do the same to avoid getting caught for the secret side deals and thereby obstructed justice.

33.     Each of the foregoing reports that Horowitz made were knowingly false.

34.     Cole did not conspire to or effectuate secret side deals on SEA-2 or SEA-3, and he did not destroy, nor did he order the destruction of, any documents related to either transaction.

35.     There was effectively no other evidence other than Horowitz's false account that Cole had either (i) conspired to effectuate secret side deals with GBG on SEA-2 or SEA-3; or (ii) destroyed documents or ordered the destruction of documents.

36.     Absent Horowitz's false reports, Cole would not have been suspected of or investigated for criminal misconduct.

37.     On the basis of Horowitz's false reports, however, Cole was indicted by a federal grand jury and subject to a criminal trial for charges related to conspiracy to commit securities fraud, securities fraud, and obstruction of justice (for his part, Horowitz pled guilty to related charges).

38.     The case against Cole singularly "focused . . . on the factual question of whether Cole had made undisclosed verbal commitments to return money to GBG," which was the "central question" at trial.[1]

39.     Horowitz was thus the key witness at trial because he was the *only* witness to testify to the fact that Cole had supposedly engineered secret side deals on SEA-2 and SEA-3.

40.     "Horowitz, indicted as Cole's co-conspirator, was indisputably the government's key witness," and played a "central role" at trial, testifying throughout its first five days.

41.     The jury, however, did not believe Horowitz's testimony that Cole made secret side deals.

42.     Indeed, the jury did not "believe[] even a fraction of Horowitz's account," and "disregarded all (or nearly all) of Horowitz's testimony."

43.     The jury thus acquitted Cole of the top charge of conspiracy and for obstruction of justice, but was hung on the other counts.

44.     The jury's acquittal necessarily reflected its (accurate) belief that Cole did not engineer secret side deals on SEA-2 or SEA-3 and that Horowitz was not telling the truth.

---

[1] The quoted language in the remainder of this section is language from the Second Circuit's unanimous decision vacating Cole's conviction and ordering the dismissal of the indictment against him. *See United States v. Cole*, -- F. 4th --, 2025 WL 2999484 (2d Cir. Oct. 27, 2025).

45.    The jury acquitted Cole because it "must have determined that Cole did not make agreements to inflate Iconix's revenue fraudulently."

46.    The jury acquitted Cole because "it doubted the story at the heart of the government's case: that Cole made fraudulent overpayments-for-givebacks deals with CBG."

47.    Indeed, "[t]he obvious explanation for the jury's verdict is that it was not persuaded that Cole made fraudulent overpayments-for-givebacks deals."

48.    "The jury 'necessarily decided' that Cole never made verbal commitments to return to GBG part of the purchase price that it paid for SEA-2 and SEA-3."

49.    Despite the foregoing, the Government unconstitutionally and unfairly retried Cole on the hung counts in violation of the Double Jeopardy Clause, and although Cole was convicted on those counts at a second trial, those convictions were unanimously overturned and the indictment ordered dismissed by the U.S. Court of Appeals for the Second Circuit because they were secured in violation of the Double Jeopardy Clause. *See supra* note 1.

50.    As noted above, the Second Circuit concluded that the second trial was constitutionally infirm and fundamentally unfair because Cole had already been vindicated by the jury in the first trial.

51.    Despite his ultimate vindication, Cole was severely harmed by Horowitz's false reports at least in the amount of $20,000,000, consisting of, among other things, economic damages, pain and suffering, reputational harm, emotional distress, and punitive damages.

## II.    Iconix's Malicious, Intentional, and Self-Serving Failure to Help Cole Defend Himself Against Horowitz's False Allegations

52.    As alleged below, Iconix was obligated to help Cole defend himself against Horowitz's false allegations, but it inexcusably and unlawfully abandoned those obligations for its

own self-interest and enrichment, which included trying to ensure that Cole would be convicted in a way that would allow it to profit in the form of millions of dollars.

53.     Pursuant to a January 28, 2008 Employment Agreement, a December 29, 2016 Separation Agreement, and Iconix's By-Laws, Iconix was contractually obligated to indemnify Cole for legal expenses he incurred in connection with his employment at Iconix and to advance said funds to Cole.

54.     The purpose of these obligations was to give Cole, as a high-level executive of Iconix, the ability to meaningfully defend himself in any proceeding relating to his position as CEO.

55.     These obligations applied to the expenses Cole incurred in defending against the proceedings that were based on Horowitz's false allegations (the "Proceedings").

56.     At first, Iconix complied with its obligations in connection with the Proceedings.

57.     In particular, between January 2020 and June 2021, Iconix (mostly) paid in full the millions of dollars of expenses Cole incurred in connection with the Proceedings, principally consisting of legal fees incurred by Cole's chosen lawyers at Paul, Weiss, Rifkind, Wharton & Garrison ("Paul Weiss").

58.     On the precipice of Cole's criminal trial, however, Iconix abruptly and inexcusably failed to continue advancing Cole's legal expenses in violation of its contractual obligations.

59.     This was just one step of many that Iconix took to harm Cole's ability to defend himself in the criminal proceedings, which Iconix did in part because it knew that if Cole were convicted, it could (among other things) recover the millions of dollars of expenses it had advanced to him.

60.     Iconix refused to cooperate with Cole's legal defense in ways that significantly harmed his defense, such as its inexcusable failure to provide Cole's defense team with exculpatory evidence obtained by an Iconix Special Committee that first investigated the alleged side deals on SEA-2 and SEA-3.

61.     In addition, Iconix subjected Cole to an interview with the SEC and inexcusably and maliciously refused to provide him any documents in advance of that interview.

62.     Iconix's refusal to pay Cole's legal expenses was unlawful.

63.     Indeed, on the day of opening statements in Cole's criminal trial, Cole was forced to file a lawsuit in New York Supreme Court, along with a motion for a preliminary injunction, seeking an order forcing Iconix to comply with its obligations to advance those expenses. *See Cole v. Iconix Brand Group*, No. 655837/2021 (Sup. Ct. N.Y. Cnty.).

64.     On October 29, 2021, the New York Supreme Court granted Cole's preliminary injunction motion and ordered Iconix to advance Cole all of his legal expenses in the Proceedings, noting that Cole has a "clear, contractual right to advancement" and that "this is a case where a preliminary injunction must be granted." *See id.*, Dkt. No.31 (the "PI Order").

65.     Despite the PI Order, after Cole's first trial but before his second trial, Iconix again refused to advance legal fees to Cole, stating that it would not do so if Cole chose to again retain Paul Weiss to represent him in his second trial (as Cole wanted to do).

66.     Iconix again took this step to harm Cole's ability to defend himself.

67.     But Iconix had no right under its By-Laws (or anything else) to dictate which law firm Cole might retain to represent him.

68.     Iconix's decision caused Paul Weiss to withdraw from representing Cole for his second trial, forcing Cole against his will to retain other lawyers.

69.     However, adding insult to injury and further harming Cole's ability to defend himself, Iconix told Cole that it would only advance legal fees for those lawyers if Cole agreed to a capped amount of legal fees for the second trial of $5,000,000.

70.     Iconix had no right to demand a capped amount of legal fees for the second trial but Cole agreed under pressure that Iconix would simply not pay and disrupt his pre-trial preparations even further.

71.     The agreement that Cole and Iconix entered into (the "Advancement Agreement") included a required payment schedule for the $5,000,000 in fees.

72.     The Advancement Agreement made clear that it did not impact Iconix's obligation (i) to pay legal expenses other than legal fees or (ii) to pay legal expenses (including fees) that Cole might incur *after* the second trial (*e.g*, expenses incurred for sentencing and appeal).

73.     Although Iconix made certain of the required payments under the Advancement Agreement, it failed to make a single payment to Cole after it paid an installment on October 1, 2022.

74.     Most notably (apart from not making several of the required installment payments under the Advancement Agreement), Iconix did not advance any funds for the expenses Cole incurred in (successfully) appealing his conviction (almost $1,000,000).

75.     Iconix never offered any justification for its refusal to advance any legal expenses after October 1, 2022 (and there is none).

76.     Again, Iconix took this step to purposefully harm Cole's ability to defend himself at trial and thus further Iconix's own self-interest.

77.    Indeed, Iconix sent Cole a letter on December 5, 2022, just days after the verdict in Cole's second trial, demanding that Cole provide it with a personal guaranty or a security agreement concerning the *past* amount that Iconix had already advanced him.

78.    Cole continues to this day to accrue legal expenses for which Iconix is responsible, including but not limited to legal expenses required to prosecute this action.

79.    As alleged below and consistent with the foregoing, Iconix's myriad breaches of its indemnification and advancement obligations were each willful, wanton, fraudulent, in bad faith, purposefully intended to harm and punish Cole at his most vulnerable, and independently tortious.

80.    For context, Iconix had decided from the very beginning that it would throw Cole under the bus, regardless of the actual facts.

81.    That is to say, Iconix almost immediately (yet incorrectly) assumed there was something improper that Cole had done with respect to SEA-2 and SEA-3.

82.    As a result, in 2016, Iconix restated certain of its public financial disclosures to account for that assumption and then elected to exercise its discretion to force Cole to pay Iconix back millions of dollars of incentive compensation in light of that restatement.

83.    Specifically, Iconix elected to recoup from Cole $2,175,000 in cash and 575,127 in shares of Iconix common stock (then worth approximately $5,100,000) related to incentive-based compensation that Cole had earned in light of Iconix's performance between 2012–14.

84.    On information and belief, Iconix did not similarly elect to recoup incentive compensation from anyone else meaningfully involved in the SEA-2 and SEA-3 transactions, including Horowitz, despite their incentive compensation being calculated by the same or a similar formula.

85.     Rather, on information and belief, Iconix undertook this effort to recoup these monies from Cole solely as part of its effort to frame Cole as a wrongdoer and a fraudster with whom they were cutting ties.

86.     Iconix's later conduct in refusing to comply with its indemnification obligations to Cole is part of the same pattern.

87.     Iconix's breaches of its indemnification obligations to Cole were without justification and Iconix did not even offer justification.

88.     Iconix's breaches were in direct contravention of the PI Order issued by the Supreme Court of New York.

89.     Iconix decided to deliberately breach its advancement obligations out of its own self-interest in cutting ties with Cole, pushing for him to be convicted, and then seeking to recover (among other things) the millions of dollars that Iconix had advanced for his legal expenses.

90.     Iconix's interest in securing Cole's conviction is reaffirmed by its later shameful effort to present itself to the Court as a "victim" of Cole's conduct (to the tune of $135 million), an effort the presiding court squarely rejected in no uncertain terms (and that was rejected as moot on appeal in light of the vacatur of Cole's convictions). *See In re: Iconix Int'l Inc. v. Cole*, -- F. App'x --, 2025 WL 3002386 (2d Cir. Oct. 27, 2025).

91.     Iconix sought to inflict the maximum emotional harm on Cole as possible.

92.     Iconix's failure to advance Cole his legal expenses was also at least in part fraudulent, in that Iconix defrauded Cole to believe that it would in fact comply with the Advancement Agreement without having any intention of actually complying with it.

## CAUSES OF ACTION

### COUNT I
**Malicious Prosecution**
**(Defendant Horowitz)**

93.     Cole repeats each allegation above as if set forth herein.

94.     By way of the foregoing, Horowitz both initiated and continued criminal proceedings against Cole.

95.     Horowitz played a singularly active role in the prosecution of Cole, including but not limited to by making multiple false reports to law enforcement, investigators, and prosecutors, and by giving advice and encouragement and importuning the authorities to act.

96.     The termination of that criminal proceeding ended in Cole's favor when the U.S. Court of Appeals for the Second Circuit ordered the vacatur of Cole's convictions and the dismissal of the indictment against him.

97.     Horowitz knew his reports were false and he lacked probable cause that Cole had committed a crime.

98.     Horowitz acted with malice, as reflected herein.

99.     Cole suffered damages as a result of Horowitz's malicious prosecution.

### COUNT II
**Breach of Contract—Employment Agreement, Separation Agreement, By-Laws**
**(Defendant Iconix)**

100.    Cole repeats each allegation above as if set forth herein.

101.    On January 28, 2008, Iconix and Cole entered into the Employment Agreement, a legally binding and valid contract.

102.    On December 29, 2016, Iconix and Cole entered into the Separation Agreement, a legally binding and valid contract.

103.    Cole has performed all of his obligations under both the Employment Agreement and the Separation Agreement.

104.    Iconix breached both the Employment Agreement and Separation Agreement by failing to properly indemnify Cole and to advance his legal fees in the manner alleged herein.

105.    Specifically, Iconix breached (i) Paragraph 8 of the Employment Agreement, which provided that "[d]uring the Term and thereafter, the Company shall indemnify and hold harmless the Executive and his heirs and representatives as, and to the extent, provided in the Company's by-laws"; and (ii) Paragraph 10 of the Separation Agreement, which provided that, "notwithstanding the termination of the Employment Agreement, the Company continues to be bound by Section 8 of the Employment Agreement (including, without limitation, any rights to indemnification and advancement to the extent set forth in the Company's by-laws as in effect as of the Resignation Date").

106.    The "by-laws" referred to in both Paragraph 8 of the Employment Agreement and Paragraph 10 of the Separation Agreement required Iconix to indemnify Cole and advance his legal fees in the manner described herein.

107.    As alleged herein, Iconix failed to advance Cole his legal fees and expenses pursuant to the Bylaws and Cole instead had to make those payments himself.

108.    Iconix's breaches were each willful, wanton, abusive, fraudulent, in bad faith, purposefully intended to harm and punish Cole at his most vulnerable (and were thus accompanied by special circumstances of humiliation and indignity), extraordinarily culpable behavior, and independently tortious.

109.    Cole suffered damages as a direct result of Iconix's breaches, including but not limited to the amount of legal expenses he paid out-of-pocket for his legal defense (no less than $3,802,549.78), and consequential and punitive damages.

### COUNT III
**Breach of Contract—Advancement Agreement**
**(Defendant Iconix)**

110.    Cole repeats each allegation above as if set forth herein.

111.    On June 7, 2022, Iconix and Cole entered into the Advancement Agreement, a legally binding and valid contract.

112.    Cole has performed all of his obligations under the Advancement Agreement.

113.    Iconix breached the Advancement Agreement.

114.    Specifically, Iconix failed to make payments for legal fees contained in the Advancement Agreement in the amount of $1,760,000, and Cole instead had to make those payments himself.

115.    Iconix's breaches of the Advancement Agreement were each willful, wanton, abusive, fraudulent, in bad faith, purposefully intended to harm and punish Cole at his most vulnerable (and were thus accompanied by special circumstances of humiliation and indignity), extraordinarily culpable behavior, and independently tortious.

116.    Cole suffered damages as a direct result of Iconix's breaches of the Advancement Agreement, including but not limited to the amount of legal fees that Iconix failed to pay (no less than $1,760,000), and consequential and punitive damages.

<u>**COUNT IV**</u>
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Defendant Iconix)**

117.    Cole repeats each allegation above as if set forth herein.

118.    Iconix's conduct constitutes a breach of the implied covenant of good faith and fair dealing that is implied in every contract.

119.    Contained within the Employment Agreement and the Separation Agreement was an implied understanding that Iconix would not obstruct Cole's ability to defend himself in any proceeding for which he was indemnified, and especially purposefully so.

120.    Also contained within the Employment Agreement and Separation Agreement was an implied understanding that Iconix would return incentive-based compensation it elected to recoup from Cole following a restatement if Iconix later learned that Cole bared no responsibility for the restatement.

121.    A reasonable person in Cole's position would be justified in understanding that Iconix would not purposefully obstruct Cole's ability to defend himself in any proceeding for which Cole is indemnified and would not retain funds that it elected to recoup following a restatement once learning that Cole bared no responsibility for the restatement.

122.    By purposefully obstructing Cole's ability to defend himself and by retaining the funds it recouped from Cole following Cole's final exoneration, Iconix deprived Cole of the benefits he was entitled to under the Agreements.

123.    Iconix purposefully sabotaged Cole's ability to benefit under the Agreements.

124.    Cole suffered damages as a direct result of Iconix's breaches of the implied covenant of good faith and fair dealing, including but not limited to the damages he suffered in being (unconstitutionally) convicted in his second criminal trial.

16

**COUNT V**
**Unjust Enrichment**
**(Defendant Iconix)**

125.    Cole repeats each allegation above as if set forth herein.

126.    Cole duly earned certain incentive-based compensation in light of Defendant Iconix's performance in 2012-2014.

127.    As alleged above, in 2016, Iconix elected to recoup certain of this compensation valued at more than $7 million after restating its previously issued financial statements, thus enriching itself at Cole's expense.

128.    Iconix chose to restate its financial statements and recoup compensation from Cole due to its false understanding that Cole had committed fraud in connection with the SEA-2 and SEA-3 transactions.

129.    Cole did not commit fraud in connection with the SEA-2 and SEA-3 transactions, as confirmed by the U.S. Court of Appeals for the Second Circuit on October 27, 2025.

130.    It is thus at this point against equity and good conscience for Iconix to retain the benefit it obtained by recouping funds from Cole.

**PRAYER FOR RELIEF**

WHEREFORE, Cole prays for relief and demands judgment in his favor on each of his causes of action against each of the Defendants as follows:

(a)    Declaring and adjudging that Defendants' acts alleged herein violated Cole's rights under the laws of the State of New York;

(b)    Entering judgment in favor of Cole and order that Cole shall recover:

   a.    Compensatory and consequential damages against Iconix to compensate Cole for his past, present, and future pain, suffering, and other hardships

arising from Iconix's conduct, including but not limited to punitive

damages, in an amount not to exceed $25,000,000.

    b.   Compensatory and consequential damages against Horowitz to

compensate Cole for his past, present, and future pain, suffering, and other

hardships arising from Horowitz's conduct, including but not limited to

punitive damages, in an amount not to exceed $20,000,000.

(c)    Awarding Cole the costs of the suit herein, including but not limited to attorney's

fees pursuant to the Employment Agreement, Separation Agreement, and Iconix's

Bylaws.

(d)    Granting such other and further relief as the Court deems just and proper.


Dated: New York, New York
       November 10, 2025

              By:       _____
                       *Benjamin D. White*

                       **BLOCH & WHITE LLP**
                       Benjamin D. White
                       Cristina Alvarez
                       Kyle Bigley*
                       90 Broad St., Suite 703
                       New York, New York 10004
                       (212) 901-3820
                       bwhite@blochwhite.com
                       calvarez@blochwhite.com
                       kbigley@blochwhite.com

                       *Attorneys for Plaintiff Neil Cole*

                       *\*S.D.N.Y. Application Forthcoming*