**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEIL COLE,<br><br>    Plaintiff,<br><br> -against-<br><br>ICONIX INTERNATIONAL INC. f/k/a<br>ICONIX BRAND GROUP, INC., and SETH<br>HOROWITZ,<br><br>    Defendants. | INDEX NO. 1:25-cv-09357 (MKV) |

**<u>DEFENDANT ICONIX INTERNATIONAL INC.'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND .................................................................................................................... 3

I.      THE PARTIES ......................................................................................................... 3

II.     COLE'S PREVIOUS HISTORY OF MISCONDUCT.............................................. 4

III.    COLE'S CONTINUED FRAUDULENT CONDUCT AND CRIMINAL INDICTMENT 5

     A.      The Overpayments-for-Givebacks Scheme ................................................. 5

     B.      Cole's Criminal Proceedings ...................................................................... 6

IV.     THE BY-LAWS AND AGREEMENTS RELEVANT TO INDEMNIFICATION ........... 7

     A.      The By-Laws................................................................................................ 8

     B.      Cole's Employment Agreement................................................................... 9

     C.      The 2016 Separation Agreement ............................................................... 10

     D.      The Undertakings....................................................................................... 10

     E.      The Advancement Agreement ................................................................... 11

V.      THIS ACTION AND COLE'S CLAIMS ................................................................ 12

LEGAL STANDARD........................................................................................................... 13

ARGUMENT ...................................................................................................................... 14

I.      COLE FAILS TO PLEAD FACTS SUPPORTING A CLAIM FOR BREACH OF THE ADVANCEMENT AGREEMENT. ......................................................................... 14

II.     COLE'S BREACH OF THE IMPLIED COVENANT CLAIM FAILS BECAUSE IT IS DUPLICATIVE AND CANNOT CREATE AN OBLIGATION BEYOND THE AGREEMENTS. ..................................................................................................... 15

     A.      Cole's Obstruction Theory Is Duplicative of the Breach of Contract Claim........ 16

     B.      Cole's Claim for Return of Performance-Based Compensation Fails Because the Agreements Create No Such Duty....................................................................... 17

III.    COLE'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED BECAUSE IT IS PRECLUDED, CONTRADICTED BY THE SEPARATION AGREEMENT GOVERNING RECOUPMENT, AND TIME-BARRED. ............................................... 19

IV.     THE DAMAGES THEORIES AGAINST ICONIX FAIL AS A MATTER OF LAW.... 22

     A.      Punitive Damages Are Barred for Ordinary Breach of Contract Claims.............. 22

     B.      Cole Is Not Entitled to Consequential Damages................................................... 23

CONCLUSION................................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*900 Unlimited, Inc. v. MCI Telecom. Corp.*,
    626 N.Y.S.2d 188 (1st Dep't 1995) ......................................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................13, 14, 23

*BDG Gotham Residential, LLC v. W. Waterproofing Co., Inc.*,
    No. 19-CV-6386 (BCM), 2024 WL 5201596 (S.D.N.Y. Dec. 23, 2024)...............................22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................................14

*Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*,
    10 N.Y.3d 187 (2008) ......................................................................................................24

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
    70 N.Y.2d 382 (1987) ................................................................................................19, 20

*Cohen v. Dunne*,
    No. 15 Civ. 3155, 2017 WL 4516820 (S.D.N.Y. Sept. 27, 2017) ...........................................22

*Cohen v. S.A.C. Trading Corp.*,
    711 F.3d 353 (2d Cir. 2013)..............................................................................................22

*Cole v. Iconix Brand Grp., Inc.*,
    No. 655837/2021 (N.Y. Sup. Ct. Oct. 25, 2021) ...................................................................12

*Cole v. Iconix Brand Grp., Inc.*,
    No. 655837/2021, slip op. (N.Y. Sup. Ct. Nov. 22, 2021) ......................................................12

*DiFolco v. MSNBC Cable LLC*,
    622 F.3d 104 (2d Cir. 2010)................................................................................................8

*Freedom Holding, Inc. v. Haart*,
    172 N.Y.S.3d 873 (N.Y. Sup. Ct. 2022) ..............................................................................19

*Gallo v. Inter-Con Sec. Sys. Inc.*,
    No. 20 Civ. 4879 (KPF), 2021 WL 3913539 (S.D.N.Y. Sept. 1, 2021) ...........................14, 15

*Great Lakes Reinsurance (UK) SE v. Herzig*,
    764 F. Supp. 3d 164 (S.D.N.Y. 2025).................................................................................24

*Henderson v. Golden Corral Franchising Sys., Inc.*,
  663 F. Supp. 3d 313 (S.D.N.Y. 2023)..................................................................13

*Island Ordnance Sys., LLC v. Amerimex, Inc.*,
  205 N.Y.S.3d 456 (2024)...................................................................................24

*In Re Neil R. Cole*,
  Exchange Act Release No. 34-47769, 79 SEC Docket 3433 (Apr. 30, 2003)...........................4

*Jia Chen v. Antel Communications, LLC*,
  No. 14 Civ. 10080 (SJF), 2015 WL 5793404 (E.D.N.Y. Sept. 30, 2015) ................................15

*Liu Jo S.P.A. v. Jenner*,
  630 F. Supp. 3d 501 (S.D.N.Y. 2022)..............................................................16, 17

*Mangiafico v. Blumenthal*,
  471 F.3d 391 (2d Cir. 2006)..............................................................................8, 11

*Marinaccio v. Town of Clarence*,
  20 N.Y.3d 506 (2013) ....................................................................................22, 23

*Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*,
  137 F. Supp. 3d 430 (S.D.N.Y. 2015)....................................................................22

*Marzullo v. Beekman Campanile, Inc.*,
  No. 10 CIV.0364 PGG, 2011 WL 3251507 (S.D.N.Y. July 22, 2011) ...................................8

*Matusovsky v. Merrill Lynch*,
  186 F. Supp. 2d 397 (S.D.N.Y. 2002)..............................................................13, 20

*MBIA Ins. Co. v. GMAC Mortg. LLC*,
  914 N.Y.S.2d 604 (Sup. Ct. 2010)......................................................................16

*Mill Fin., LLC v. Gillett*,
  992 N.Y.S.2d 20 (App. Div. 2014)......................................................................16

*Munno v. Town of Orangetown*,
  391 F. Supp. 2d 263 (S.D.N.Y. 2005)....................................................................4

*Owoyemi v. Credit Corp Sols. Inc.*,
  596 F. Supp. 3d 514 (S.D.N.Y. 2022)....................................................................25

*Piuggi v. Good for You Prods. LLC*,
  739 F. Supp. 3d 143 (S.D.N.Y. 2024)....................................................................16

*Quintanilla v. WW Int'l, Inc.*,
  541 F. Supp. 3d 331 (S.D.N.Y. 2021)..............................................................17, 18

*Rocanova v. Equitable Life Assur. Soc. of U.S.*,
   83 N.Y.2d 603 (1994) ..................................................................................22, 23

*SEC v. Cole et al.*,
   No. 19-cv-11148 (S.D.N.Y.), ECF 1 ........................................................................7

*Singh v. City of New York*,
   139 N.Y.S.3d 307 (2020), *aff'd*, 40 N.Y.3d 138 (2023)......................................17, 18

*United States v. Cole*,
   158 F.4th 113 (2d Cir. 2025) ................................................................................5, 6

*United States v. Cole*,
   No. 19-cr-869 (S.D.N.Y.), ECF No. 316 .............................................................1, 6, 7

*United States v. Iconix Brand Group, Inc.*,
   No. 1:07-cv-01852 (D.D.C. filed Oct. 15, 2007).......................................................4

**Statutes**

Exchange Act Sections 10(b), 13(a), and 13(b)..............................................................4

Securities Exchange Act of 1934.....................................................................................7

Securities Act of 1933......................................................................................................7

**Other Authorities**

N.Y. C.P.L.R. § 214(3) ..................................................................................................22

## PRELIMINARY STATEMENT

While serving as Chief Executive Officer of Iconix International Inc., Plaintiff Neil Cole was responsible for an overpayments-for-givebacks scheme that inflated Iconix's reported revenue and earnings per share and distorted its disclosures to auditors and the SEC. The scheme, which took place under Cole's leadership, triggered federal criminal prosecutions, a still-pending SEC action against Cole, multiple shareholder derivative and securities class action lawsuits, and a restatement of Iconix's financials. The fallout cost Iconix tens of millions of dollars and significant disruptions to its business and reputation. Cole, on the other hand, personally profited from the scheme through his sale of a million shares of Iconix for a gain of approximately $40 million.

The first trial in the resulting criminal case against Cole ended with an acquittal on conspiracy charges and a hung jury on the substantive fraud counts. After retrial, a federal jury convicted Cole of securities fraud and false SEC filing counts. As the presiding judge stated: "I believe that you [Cole] knew that the two transactions involved had no economic substance. I believe that you entered into those transactions knowing that you would be paying back the $5 million and $6 million. I believe that you did that because of your desire to have the Company meet its revenue market consensus . . . ." *United States v. Cole*, No. 19-cr-869 (S.D.N.Y.), ECF No. 316 at 34–35. Even so, throughout all the proceedings, Iconix—acting in good faith and pursuant to the By-Laws, governing agreements, and Cole's undertakings—advanced tens of millions of dollars in legal costs to Cole.

Cole now seeks to continue harming Iconix by incurring additional legal expenses, seeking indemnification he is not entitled to, and failing to return advanced legal expenses to which he is not entitled. He relies on the Second Circuit's vacatur of his conviction on double-

jeopardy grounds. But that ruling was procedural. It did not dispute the jury's factual findings or conclude that the evidence against Cole was insufficient.

Against that backdrop, Cole brings this Action, seeking even more from Iconix. In addition to asserting a malicious prosecution claim against his co-conspirator, Cole brings claims against Iconix for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment, and seeks actual, punitive, and consequential damages. His breach of contract claim seeking more indemnification (Count II) will be subject to a determination that Cole acted in bad faith and is not entitled to indemnification or advancement under the By-Laws or agreements.

The remaining claims addressed here fail as a matter of law. First, Cole's breach of the Advancement Agreement claim (Count III) fails because he does not plead facts showing that the $1.76 million he seeks was contractually due. He alleges nonpayment but not whether the claimed fees fall within the Agreement's capped obligation.

Second, Cole's implied covenant claim (Count IV) fails because it duplicates his contract claims and seeks to impose duties the agreements do not create. Cole's allegation that Iconix "obstructed" his defense by failing to advance fees rests on the same alleged nonpayment underlying his breach of contract claims and is thus duplicative. His allegation that Iconix had to return more than $7 million in performance-based compensation fares no better, as the governing agreement creates no such obligation and fully resolves claims relating to the recoupment.

Third, Cole's unjust enrichment claim (Count V) fails because the recoupment was governed by a valid contract and was based on Iconix's financial restatements, not the outcome of Cole's criminal case. The claim is also time-barred because it is subject to a three-year statute of limitations and arises from conduct that occurred in 2016.

Fourth, Cole's damages theories fail as to punitive and consequential damages. Punitive damages are unavailable for an ordinary breach of contract claim, and Cole fails to plausibly allege consequential damages.

This case is not about whether Iconix honored its agreements. It did, to the tune of tens of millions of dollars to a CEO who masterminded a massive fraudulent scheme that led to a nightmarish cycle of investigations, litigation, and a financial restatement, all of which damaged the reputation of the company. Rather, this case is about whether Cole may transform limited contractual rights into open-ended entitlements based on a procedural appellate ruling. He may not. And Cole's failure in his Amended Complaint to remedy the pleading deficiencies identified in Iconix's pre-motion letter confirms that permitting further amendment would be futile. Counts III through V should therefore be dismissed with prejudice, as should Cole's claims for punitive and consequential damages.

## BACKGROUND

### I.      THE PARTIES

Iconix International Inc. is a brand management company that owns and licenses a portfolio of consumer brands across fashion, sports, and home goods. Iconix markets and licenses its brand portfolio through more than 500 licensees, including retailers and manufacturers worldwide.

Plaintiff Neil Cole served as President, CEO, and Chairman of Iconix from 1993 through 2015. During his turbulent tenure, his conduct and leadership prompted repeated government investigations, civil lawsuits, an accounting restatement, and criminal proceedings. Eventually, he was forced out of his leadership roles after his misconduct relating to inflated revenue reporting and false SEC statements became public. Cole was also indicted and tried for criminal misconduct. Iconix paid for all of this.

## II.    COLE'S PREVIOUS HISTORY OF MISCONDUCT

Cole's misconduct at Iconix was not limited to the events that ultimately led to his departure. For example, between 1997 and 1999, Cole oversaw accounting fraud at Iconix designed to improve the Company's publicly reported financial condition. *See In Re Neil R. Cole*, Exchange Act Release No. 34-47769, 79 SEC Docket 3433 (Apr. 30, 2003), available at https://www.sec.gov/enforcement-litigation/administrative-proceedings/34-47769.[1] The SEC determined that he, among other things, signed SEC filings that improperly recorded revenue and income and authorized a materially misleading earnings press release after auditors raised concerns. *Id.* Accordingly, the SEC found that Cole caused violations of Sections 10(b), 13(a), and 13(b) of the Exchange Act and related rules. *Id.* Cole consented and paid a civil penalty. *Id.*

Then in 2007, the Federal Trade Commission ("FTC") and Antitrust Division of the Department of Justice brought a lawsuit against Iconix in the U.S. District Court for the District of Columbia arising out of Cole's submission of a false statement to the FTC. *See* Complaint, *United States v. Iconix Brand Group, Inc.*, No. 1:07-cv-01852 (D.D.C. filed Oct. 15, 2007), available at https://www.justice.gov/atr/case-document/file/499196/dl. The complaint alleged that when Iconix acquired licensing rights related to a clothing brand, Cole personally signed a Notification and Report Form filed with the FTC and Antitrust Division attesting to its accuracy and completeness. *Id.* Shortly thereafter, the Antitrust Division discovered the inaccuracy of Cole's sworn statement, which led to Iconix paying a significant civil penalty.

---

[1] "The court may [ ] consider matters of which judicial notice may be taken," including public records, "even if the corresponding documents are not attached to or incorporated by reference in the complaint." *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005).  This Court may therefore consider the public documents cited in this Background Section.

4

### III.    COLE'S CONTINUED FRAUDULENT CONDUCT AND CRIMINAL INDICTMENT

The sanctions imposed by federal regulators did not deter Cole from continuing to skirt the law and act in bad faith. From 2014 to 2015, Cole abused his position as President and CEO of Iconix to actively mislead the Company's auditors and misrepresent the Company's financial condition. And he cost the Company dearly.

### A.    The Overpayments-for-Givebacks Scheme

Starting in 2014, a preponderance of the voluminous evidence shows that Cole engaged in a scheme to falsely inflate Iconix's reported revenues and earnings per share through fraudulent overpayments-for-givebacks deals negotiated with a Hong Kong-based joint venture ("JV") partner, Global Brands Group Asia Limited ("GBG"), involving the Southeast Asia region. *See United States v. Cole*, 158 F.4th 113, 117–18 (2d Cir. 2025). The scheme involved two deals: a June 2014 joint venture ("SEA-2") and a September 2014 joint venture ("SEA-3"). *Id.* Cole executed the scheme so that Iconix could hit quarterly revenue and earnings numbers and fraudulently convey the impression to the investing public that Iconix was growing quarter after quarter, as Cole had touted to the market. *Id.* at 118.

"In negotiations for both the SEA-2 and SEA-3 deals, the price that GBG was offering and eventually agreed to pay rose substantially shortly before the close of negotiations—by $5 million for SEA-2 (a 54 percent increase) and by $6 million for SEA-3 (a 39 percent increase). The government's theory was that the deal price increased not because GBG had reassessed the value of the licenses it was acquiring, but because Cole had promised to return portions of the payments to GBG at a later date." *Id*. Thus, Cole induced GBG to agree to pay an inflated buy-in price for its interest in the JV—the overpay. *Id.* And GBG did so because Cole made a commitment to return the excess amount of the payments to GBG at a later date—the

giveback. *Id.* at 116. Cole then hid the inflated purchase from Iconix's auditors and SEC filings. *Id.* at 118–19. "And when it came time to return the overage to GBG, Cole allegedly disguised the payments as legitimate business expenses by persuading his coconspirators at GBG to generate sham invoices for 'marketing' costs." *Id.* at 119. This fraudulent revenue inflation "helped Iconix meet its quarterly revenue goals for Q2 and Q3 2014." *Id.* at 125.

In 2016, following "a comment letter process with the Staff of the U.S. Securities and Exchange Commission relating to an ongoing review of the Company's Form 10-K for the year ended December 31, 2014," Iconix's Board, Audit Committee, and management concluded that a restatement was necessary to correct Cole's reporting errors. *See* Declaration of Jamie A. Levitt, dated Mar. 27, 2026 ("Levitt Decl.") ¶ 3 (attaching Iconix Brand Grp. Inc., Annual Report (Form 10-K) (Mar. 30, 2016), Ex. 1, at 119). These adjustments affected previously reported financial results and required the company to revise both its income statement presentation and underlying accounting treatment. *Id.*

## B.   Cole's Criminal Proceedings

In December 2019, the U.S. Attorney's Office for the Southern District of New York indicted Cole in *United States v. Cole*, No. 19-cr-869 (S.D.N.Y.), charging conspiracy and multiple substantive counts, including securities fraud, false SEC filings, and audit interference. *Cole*, 158 F.4th at 119–20. The first trial began on October 5, 2021 and resulted in an acquittal on the conspiracy charge and a hung jury on the substantive counts. *Id.* at 119, 121. Cole was retried in 2022, and a unanimous jury convicted him on each substantive count. *Id.* at 122–23. The district court sentenced Cole to 18 months' imprisonment and three years of supervised release and applied an obstruction-of-justice enhancement based on perjury. *Id.* at 123.

In so doing, Judge Ramos opined, "I sat through both trials. I saw Mr. Horowitz and Mr. Cole testify both times, and I have to say I believed Mr. Horowitz. I believed the version of facts

that he told. I think it was consistent with the documents that were put into evidence, the testimony of Mr. Margolis and Mr. Rabin, notwithstanding their disclaiming any liability or any wrongdoing. Specifically, I did not credit Mr. Cole's testimony that he had very little role in negotiating these joint ventures; that, you know, to the extent that anything untoward happened, it was all Mr. Horowitz['s] doing." *United States v. Cole,* No. 19-cr-869 (S.D.N.Y.), ECF No. 316 at 8–9. Judge Ramos continued, *"I believe that you [Cole] knew that the two transactions involved had no economic substance. I believe that you entered into those transactions knowing that you would be paying back the $5 million and $6 million.* I believe that you did that because of your desire to have the Company meet its revenue market consensus—consensus revenue targets, as it had for so many quarters before, and you did it for that reason." *Id.* at 34–35 (emphasis added).

Cole appealed his conviction on double jeopardy grounds, and the Second Circuit reversed the judgment of the district court, finding that Cole's acquittal for conspiracy during the first trial precluded retrial on the substantive counts. Am. Compl. ¶ 53. Notably, the court was silent as to the sufficiency of the evidence underlying Cole's conviction.

Cole remains subject to an SEC action initiated in December 2019 (the "SEC Action"). *SEC v. Cole, et al.*, No. 19-cv-11148 (S.D.N.Y.), ECF 1. During the pendency of the criminal case against Cole, the SEC Action against him—which alleges violations of the Securities Exchange Act of 1934 and the Securities Act of 1933 for the scheme—was stayed, and remains so today. *See id.*, ECF No. 71.

## IV.    THE BY-LAWS AND AGREEMENTS RELEVANT TO INDEMNIFICATION

Iconix's By-Laws make clear that an officer or director, like Cole, is *not* entitled to indemnification where a judgment or final adjudication establishes that he acted in bad faith or with active and deliberate dishonesty. Cole signed multiple undertakings affirming that he would

return any fees or expenses advanced if it was subsequently determined that he was not entitled

to indemnification under the By-Laws. The agreements relating to indemnification here all

incorporate the Company's By-Laws.

###    A.    The By-Laws

Article VII, Section 2(a) of Iconix's By-Laws provides, in pertinent part, that the

corporation will indemnify each officer and/or director thereof involved in:

> any action, suit, claim or proceeding, . . . investigation, . . . or any other actual,
> threatened, pending or completed proceeding, whether civil or criminal, . . . by
> reason of the fact that such officer and/or director . . . (i) is or was a director or
> officer of the corporation, or (ii) while serving as a director or officer of the
> corporation, is or was serving, at the request of the corporation, as a director,
> officer, or in any other capacity, of any other Enterprise, against any and all
> judgments, fines, penalties, amounts paid in settlement, and expenses, including
> attorneys' fees, actually and reasonably incurred as a result of or in connection with
> any Proceeding, except as provided in Section 2(c) of this Article VII.

Levitt Decl. ¶ 4 (attaching By-Laws, Ex. 2); *see also* Am. Compl. ¶¶ 59, 73, 114–16 & at

19 (referencing By-Laws).[2]

And Article VII, Section 2(c) of the By-Laws provides, in pertinent part:

> No indemnification shall be made to or on behalf of any Indemnities if a judgment
> or other final adjudication adverse to him or her establishes that such Indemnities
> acts were committed in bad faith or were the result of active and deliberate

---

[2] This Court, "[i]n considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) . . . may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted); *see also Marzullo v. Beekman Campanile, Inc.*, No. 10 Civ.0364 PGG, 2011 WL 3251507, at \*1 n.3 (S.D.N.Y. July 22, 2011) (citing *DiFolco*). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document integral to the complaint." *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2022)). Here, Cole's Amended Complaint incorporates by reference, and relies heavily on, the By-Laws (*see, e.g.*, Am. Compl. ¶¶ 59, 73, 114–16 & at 19), Separation Agreement (*see, e.g.*, *id.*, ¶¶ 111–15, 128–29 & at p. 19), Employment Agreement (*see, e.g.*, *id.* & ¶ 59), and Advancement Agreement (*see, e.g.*, *id.*, ¶¶ 78–80, 101, 119–25) by either citing or quoting these documents to support his position. This Court may therefore consider these documents when evaluating the motion to dismiss.

dishonesty and were material to the cause of action so adjudicated, or that such Indemnitee personally gained in fact a financial profit or other advantage to which he or she was not legally entitled.

*Id.*

Further, Article VII, Section 2(b) of the By-Laws provides that "[e]xpenses, including attorneys' fees" shall only be paid by the Company "upon receipt of an undertaking by or on behalf of such person to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation." *Id.*; *see also supra* note 2.

### B.    Cole's Employment Agreement

In 2008, Iconix and Cole entered into a written employment agreement, which was amended that same year (as amended, the "Employment Agreement").[3] Under Section 1.2.1 of the Employment Agreement, Cole was obligated to "faithfully and diligently discharge his duties" and to "devote all of his business time, attention, knowledge and skills faithfully, diligently and to the best of his ability, in furtherance of the business and activities of" Iconix. *See* Levitt Decl. ¶ 5, Ex. 3A; *supra* note 2.

And under Section 8, the parties agreed that "the Company shall indemnify and hold harmless the Executive and his heirs and representatives as, and *to the extent, provided in the Company's by-laws*." *Id.* (emphasis added).

The Employment Agreement contains a New York choice-of-law provision, *see* Levitt Decl. ¶ 5, Ex. 3A, § 9.6, the governing Separation Agreement incorporates and continues that provision, *see* Levitt Decl. ¶ 7 (attaching Separation Agreement, Ex. 4, ¶ 15), and the Advancement Agreement and By-Laws arise from and are part of that same contractual

---

[3] *See* Levitt Decl. ¶¶ 5, 6 (attaching Employment Agreement, Ex. 3A, and Amendment, Ex. 3B); *supra* note 2 (this Court may consider the Employment Agreement because it is incorporated by reference into the Amended Complaint).

framework, *see* Levitt Decl. ¶ 8, (attaching Advancement Agreement, Ex. 5, ¶ 1); *id.*, Ex. 3A, § 8; *id.*, Ex. 4, ¶ 10.

### C.    The 2016 Separation Agreement

In 2016, Iconix and Cole entered into a separation agreement (the "Separation Agreement").[4] Under Section 10 of the Separation Agreement, Iconix agreed that it continued to be bound by Section 8 of the Employment Agreement "*to the extent set forth in the Company's by-laws as in effect*" at the time of Cole's resignation from Iconix. *See* Levitt Decl. ¶ 7, Ex. 4 (emphasis added); *supra* note 2.

Moreover, following the financial restatements triggered by the fraudulent reporting under Cole's leadership and direction, the Separation Agreement set forth the terms for recouping "certain performance-based cash bonus and equity awards previously paid or delivered to Cole . . . pursuant to the terms and conditions of such cash and incentive equity awards, the Company's Recoupment Policy, and the Employment Agreement." *Id.* at 1. To that end, "[i]n satisfaction of Cole's recoupment obligations with respect to the Prior Awards[,] . . . as a result of the Restatements, Cole" was required to "deliver to the Company cash in an amount equal to $2,175,000 and 575,127 shares of Common Stock." *Id.*, ¶ 2.

Critically, the Company and Cole agreed "to settle and resolve, fully and finally, all claims related to the Resignation and the recoupment of Cole's performance-based cash bonus and equity awards as a result of the Restatements." *Id.* at 1.

### D.    The Undertakings

Iconix advanced the many millions of dollars of attorneys' fees and other related expenses to Cole pursuant to undertakings Cole signed (as required by Article VII, Section 2(b)

---

[4] *See* Levitt Decl. ¶ 7, Ex. 4; *supra* note 2 (this Court may consider the Separation Agreement because it is incorporated by reference into the Amended Complaint).

of Iconix's By-Laws), stating he would repay the Company if it was later determined that he was not entitled to indemnification under the By-Laws. For example, in a written undertaking ("First Undertaking"), Cole agreed to repay the fees and expenses advanced by Iconix on his behalf if it was ultimately determined that he was not entitled to indemnification under the By-Laws. *See* Levitt Decl. ¶ 9 (attaching First Undertaking, Ex. 6).[5]

In another written undertaking dated January 2020 ("Second Undertaking," and collectively with the First Undertaking, the "Undertakings"), Cole again agreed to repay the fees and expenses advanced by Iconix on his behalf if it was ultimately determined that he was not entitled to indemnification under the By-Laws. *See* Levitt Decl. ¶ 10 (attaching Second Undertaking, Ex. 7).

### E.      The Advancement Agreement

Pursuant to the By-Laws, Undertakings, and Cole's Employment Agreement, Iconix advanced Cole millions for his legal fees and related expenses due to SEC and DOJ investigations, multiple shareholder derivative and securities class action lawsuits, the criminal trials, and a restatement of financials. *See* Am. Compl. ¶ 96 (acknowledging advancement of "the millions of dollars that Iconix had advanced for [Cole's] legal fees"); *see also id.* at ¶ 63.

In 2021, Iconix challenged the reasonableness of Cole's legal fees, disputing whether they were reasonably incurred and arguing that the proper approach before advancing funds is

---

[5] This Court may consider the Undertakings because they are integral to the Advancement Agreement cited and quoted in the Amended Complaint, which expressly calls for undertakings. *See* Levitt Decl. ¶ 8, Ex. 5, ¶ 4 ("Mr. Cole hereby acknowledges that the previous two Undertakings previously signed by him remain in full force and effect; further, Mr. Cole hereby acknowledges that the Undertaking dated January 22, 2020 signed by him remains in full force and effect and continues to apply with respect to all legal fees and expenses advanced and/or to be advanced by Iconix in connection with the Criminal Action."). Thus, Cole's claimed right to advancement cannot be understood without considering the Undertakings that are integral to the in-dispute agreement. *See Mangiafico*, 471 F.3d at 398.

11

for Cole to seek advancement of reasonably incurred fees and to provide Iconix with time to verify such reasonableness. *See* Am. Compl. ¶ 69; Tr. of Proceedings at 5, *Cole v. Iconix Brand Grp., Inc.*, No. 655837/2021 (N.Y. Sup. Ct. Oct. 25, 2021) (available at https://iapps.courts.state.ny.us/fbem/DocumentDisplayServlet?documentId=jOw5iU_PLUS_8Xk 4_PLUS_WBgjd5g6MQ==&system=prod). The Supreme Court of New York disagreed as to when fees must be advanced and ordered Iconix to advance the fees contemporaneously with Cole's proceedings; however, it did *not* make a finding as to Cole's good or bad faith conduct or whether he is ultimately entitled to the fees advanced to him. *See Cole v. Iconix Brand Grp., Inc.*, No. 655837/2021, slip op. at 1 (N.Y. Sup. Ct. Nov. 22, 2021).

In June 2022, Cole and Iconix entered into an agreement resolving the issue of the advancement of legal fees for the second criminal action (the "Advancement Agreement"). *See* Am. Compl. ¶ 77 (referencing Advancement Agreement); Levitt Decl. ¶ 8, Ex. 5.[6] Section 1 of the Advancement Agreement made clear that this agreement covered trial expenses alone and capped Iconix's obligations for Cole's legal fees at $5 million. *See id.*, ¶ 1. Iconix complied with the agreement, in good faith, because no court had yet reached any final determination as to whether Cole acted in bad faith or with active and deliberate dishonesty.

In Section 4 of the Advancement Agreement, Cole acknowledged that the Undertakings remained in full force and effect. *Id.*, ¶ 4. After Cole's conviction, Iconix sent a letter reminding Cole of his obligation to preserve assets and notifying him of Iconix's intent to recover the advanced fees. *See* Am. Compl. ¶ 83. Cole did not reimburse Iconix and filed this Action instead.

## V.   THIS ACTION AND COLE'S CLAIMS

On November 10, 2025, Cole commenced this Action seeking yet more payments for

---

[6] *See supra* note 2.

alleged legal expenses and other relief. *See* ECF No. 1. He amended his complaint on February 25, 2026. *See* ECF No. 22.

Cole asserts four causes of action against Iconix[7]: Count II for breach of contract under the Employment Agreement, Separation Agreement, and By-Laws; Count III for breach of the Advancement Agreement; Count IV for breach of the implied covenant of good faith and fair dealing; and Count V for unjust enrichment. *Id.*

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Henderson v. Golden Corral Franchising Sys., Inc.*, 663 F. Supp. 3d 313, 323 (S.D.N.Y. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). While courts take all material factual allegations as true, they are "'not bound to accept as true a legal conclusion couched as a factual allegation,' or to credit 'mere conclusory statements' or '[t]hreadbare recitals of the elements of a cause of action.'" *Henderson*, 663 F. Supp. at 323–24 (quoting *Iqbal*, 556 U.S. at 663–64).

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Id.* at 324 (quoting *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted)). "If a plaintiff's allegations are contradicted by such [ ] document[s], those allegations are insufficient to defeat a motion to dismiss." *Matusovsky v.*

---

[7] Count I for malicious prosecution is against Seth Horowitz (Iconix's former Chief Operating Officer).

*Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (citation omitted).

## ARGUMENT

**I.     COLE FAILS TO PLEAD FACTS SUPPORTING A CLAIM FOR BREACH OF THE ADVANCEMENT AGREEMENT.**

In Count III of his Amended Complaint, Cole alleges that Iconix "failed to make payments" under the Advancement Agreement. Am. Compl. ¶ 123. That wholly conclusory allegation is insufficient to state a claim under *Twombly* and *Iqbal*. Cole failed to allege facts that, even taken as true, would demonstrate he is owed the amount he claims is due under the Advancement Agreement. This claim should therefore be dismissed.

The Advancement Agreement expressly capped trial-related fees at $5 million. Levitt Decl. ¶ 8, Ex. 5, ¶ 1. Yet despite two bites at the apple, the Amended Complaint does not plead facts establishing that the $1.76 million Cole seeks falls within the bounds of that capped obligation. Critically, although all of these facts would be within his knowledge, Cole fails even to allege whether the claimed $1.76 million falls within the remaining balance of that cap. He also does not plead whether the amount relates to trial fees (the only fees subject to the Agreement) or appellate fees (which the Agreement did not include). Absent those factual allegations, the Court cannot determine whether the claimed sum was contractually due, and Cole has not sufficiently pled his breach of contract claim.

The pleading deficiencies here are similar to those that warranted dismissal in *Gallo v. Inter-Con Sec. Sys. Inc.*, No. 20 Civ. 4879 (KPF), 2021 WL 3913539, at *10 (S.D.N.Y. Sept. 1, 2021), where the plaintiff alleged that the defendant failed to reimburse him $1,250 in medical expenses under a settlement agreement. The Court dismissed the claim because the plaintiff failed to plead facts showing contractual entitlement. *Id.* In particular, plaintiff did "not allege . . . when he completed this test, what the cost of the stress test was, or if and when the

results were conveyed to Defendant." *Id.* Without such factual detail, the allegations were "insufficient to sustain a breach of contract claim." *Id.* As in *Gallo*, the absence of basic allegations supporting Cole's claims prevents the Court from determining whether the claimed amount was contractually due.

Similarly instructive is *Jia Chen v. Antel Commc'n, LLC*, No. 14-CV-10080 (SJF), 2015 WL 5793404 (E.D.N.Y. Sept. 30, 2015). There, the court dismissed portions of a breach of contract claim where the plaintiff sought reimbursement for severance, bonuses, and moving expenses that the governing agreement did not provide for. *Id.* at *4. The court permitted certain reimbursement claims to proceed, but only where the allegations were sufficient to claim the contract plausibly covered those expenses. *See Id.* at *5.

Taken together, *Gallo* and *Jia Chen* underscore that a plaintiff must allege facts showing that the damages sought are of a type the contract covers. Because Cole has not done that here, Count III should be dismissed.

## II. COLE'S BREACH OF THE IMPLIED COVENANT CLAIM FAILS BECAUSE IT IS DUPLICATIVE AND CANNOT CREATE AN OBLIGATION BEYOND THE AGREEMENTS.

Cole's claim for breach of the implied covenant of good faith and fair dealing in Count IV should be dismissed in its entirety. The claim advances two theories: (1) that Iconix "obstructed" Cole's ability to defend himself by failing to advance legal fees, and (2) that Iconix was obligated to return previously recouped incentive-based compensation. *See* Am. Compl. ¶¶ 128–29. The first theory is duplicative of Cole's breach of contract claims and should be dismissed on that basis. The second theory fails independently because the implied covenant cannot create a repayment obligation that does not appear in the governing agreements and could not reasonably be inferred from them.

15

A.    **Cole's Obstruction Theory Is Duplicative of the Breach of Contract Claim.**

Cole's "breach of the implied covenant of good faith and fair dealing claim [ ] is duplicative of [the] breach of contract claim [and] must be dismissed." *MBIA Ins. Co. v. GMAC Mortg. LLC*, 914 N.Y.S.2d 604, 611 (N.Y. Sup. Ct. 2010) (citing *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 319–20 (1995)). "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 169 (S.D.N.Y. 2024) (quoting *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)). To be duplicative, the conduct alleged need not be identical so long as the claims arise from the same operative facts. *See Mill Fin., LLC v. Gillett*, 992 N.Y.S.2d 20, 25 (N.Y. App. Div. 2014).

Here, Cole's breach of the implied covenant claim is based on the same facts and circumstances as his breach of contract claims. The breach of contract claims allege that Iconix failed to "advance Cole his legal fees and expenses" and harmed Cole "at his most vulnerable" and seek actual, consequential, and punitive damages. *See* Am. Compl. ¶¶ 116–18. The breach of the implied covenant claim alleges that Iconix "obstructed" Cole's ability to defend himself by failing to make those same payments and seeks consequential damages arising from that alleged obstruction. *Id.* ¶¶ 128–33. That theory rests on the same operative conduct: failure to advance legal fees under the governing agreements. Furthermore, even if Cole offered different allegations to support this breach of implied covenant claim (which he did not), his pursuit of the same relief for both claims independently warrants dismissal because "claims for breach of the implied covenant of good faith which seek to recover damages that are intrinsically tied to the damages allegedly resulting from the breach of contract must be dismissed as redundant." *Liu Jo S.P.A. v. Jenner*, 630 F. Supp. 3d 501, 520 (S.D.N.Y. 2022) (citations omitted). This portion of

16

the implied covenant claim is therefore duplicative and should be dismissed.

      **B.    Cole's Claim for Return of Performance-Based Compensation Fails Because the Agreements Create No Such Duty.**

The Amended Complaint alleges that the Employment Agreement and Separation Agreement contained "an implied understanding that Iconix would return incentive-based compensation it elected to recoup." Am. Compl. ¶ 129. But as the resort to pleading an implied covenant reveals, these agreements contain no such provision. The allegation is instead made of whole cloth, not reasonably inferred, and thus fails as a matter of law.

***First***, it is axiomatic that an implied covenant cannot create a duty that *does not exist* in the contract. To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege the "existence of a duty, breach of that duty, causation, and damages." *Liu Jo S.P.A.*, 630 F. Supp. 3d at 514 (internal quotation marks omitted). The alleged duty Cole posits here is the supposed obligation to return previously recouped incentive compensation. *See* Am. Compl. ¶¶ 129–31. But New York law is clear that the implied covenant does not create independent contractual rights or impose obligations that cannot fairly be inferred from the express terms of the agreement. *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 351 (S.D.N.Y. 2021) (explaining the "implied covenant does not include any term inconsistent with the terms of the contractual relationship, or create duties which are not fairly inferable from the express terms of that contract[,]" and cannot "be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights" (cleaned up)). Rather, it encompasses only "promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Singh v. City of New York*, 139 N.Y.S.3d 307, 311 (2020), aff'd, 40 N.Y.3d 138 (2023) (quotations omitted).

Here, the Employment Agreement makes no mention of return of compensation once

recouped, *see* Levitt Decl. ¶ 5, Ex. 3A; ¶ 6, Ex. 3B, and the Separation Agreement expressly provides for Iconix's recoupment of funds, not Cole's, *see* Levitt Decl. ¶ 7, Ex. 4. Further, the Separation Agreement reflects the parties' agreement "to settle and resolve, fully and finally, all claims related to the Resignation and the recoupment of Cole's performance-based cash bonus and equity awards as a result of the Restatements," foreclosing any further recovery. Levitt Decl. ¶ 7, Ex. 4, at 1. Moreover, Cole pleads no facts showing that a right to recover previously returned compensation can be inferred from the text of the agreements or from the parties' expectations at the time it was executed. *See* Am. Compl. ¶¶ 126–33. Absent such allegations, the implied covenant cannot be used to rewrite the contract. *Quintanilla*, 541 F. Supp. 3d at 351; *Singh*, 139 N.Y.S.3d at 311.

**Second**, and critically, the Separation Agreement forecloses this claim by expressly resolving the recoupment and leaving no contractual basis for the repayment Cole seeks. In December 2016, Cole signed a Separation Agreement pursuant to which he agreed to return "certain performance-based cash bonus and equity awards previously paid" after the Company restated its financial statements. *See* Am. Compl. ¶¶ 88–89; Levitt Decl. ¶ 7, Ex. 4, ¶ 2 ("[i]n satisfaction of Cole's recoupment obligations with respect to the Prior Awards[,] . . . as a result of the Restatements, Cole" was required to "deliver to the Company cash in an amount equal to $2,175,000 and 575,127 shares of Common Stock"). The recoupment was tied to the restatement and the Board's determination that the compensation was no longer earned. *See generally* Am. Compl. ¶¶ 88–90. The Separation Agreement, which Cole ignores even though it governs the recoupment at issue, does not provide Cole a right to seek return of the recouped compensation or condition recoupment on a criminal indictment or conviction. *See* Levitt Decl. ¶ 7, Ex. 4, at 1.

In short, the attempt in the Amended Complaint to use the implied covenant to insert a

repayment obligation absent from the governing agreements is prohibited by New York law and Count IV should be dismissed.

**III.    COLE'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED BECAUSE IT IS PRECLUDED, CONTRADICTED BY THE SEPARATION AGREEMENT GOVERNING RECOUPMENT, AND TIME-BARRED.**

Cole alleges that "in 2016, Iconix elected to recoup certain of [his] compensation valued at more than $7 million after restating its previously issued financial statements, thus enriching itself at Cole's expense." Am. Compl. ¶ 136. This claim fails for at least three reasons: it is (i) precluded because recoupment is governed by the 2016 Separation Agreement, which Cole acknowledges is a valid and binding contract that fully and finally resolved the recoupment; (ii) contradicted by the plain language of the Separation Agreement, which expressly attributes the recoupment to the financial restatements, not a "false understanding" of fraud; and (iii) time-barred because the alleged wrongful conduct occurred in 2016 and is subject to a three-year statute of limitations.

***First***, the claim is precluded by a valid and enforceable contract. An unjust enrichment claim cannot proceed where a valid and enforceable written contract governs the same subject matter. *Freedom Holding, Inc. v. Haart*, 172 N.Y.S.3d 873, 887–88 (N.Y. Sup. Ct. 2022) ("In New York, where there is both a claim for unjust enrichment and a contract claim, and there is no disagreement about the existence or terms of the contract, the unjust enrichment claim can be dismissed as duplicative of the contract claim."); *see also Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."). Further, a party cannot "seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the

19

dispute between the parties." *Id.* at 389.

Here, Iconix's recoupment from Cole of $7 million in performance-based compensation is indisputably governed by the 2016 Separation Agreement. Cole himself describes the Separation Agreement as a "legally binding and valid contract." Am. Compl. ¶ 111. He further alleges that, in 2016, Iconix restated its financial disclosures and "elected to recoup" performance-based compensation earned between 2012 and 2014. *Id.* ¶¶ 89, 135–36. Thus, by his own pleading, the recoupment occurred pursuant to and in connection with the Separation Agreement. Because the alleged enrichment arises directly from obligations defined by an enforceable written contract whose existence and validity are not disputed, and which were fully performed under the contract, *see generally* Am. Compl. ¶ 89, Cole's unjust enrichment claim is duplicative and quasi-contract relief is unavailable as a matter of law, *see Clark-Fitzpatrick*, 70 N.Y.2d at 388–89. This conclusion is reinforced by the parties' express agreement "to settle and resolve, fully and finally, all claims related to the Resignation and the recoupment of Cole's performance-based cash bonus and equity awards as a result of the Restatements." Levitt Decl. ¶ 7, Ex. 4, at 1.

***Second***, the plain language of the Separation Agreement cited in the Amended Complaint contradicts Cole's allegation that Iconix recouped performance-based compensation based on a "false understanding" that he had committed fraud. Am. Compl. ¶ 137. To the contrary, the Separation Agreement instead states that the recoupment is "a result of the Restatements." Levitt Decl. ¶ 7, Ex. 4, at 1; *see Matusovsky*, 186 F. Supp. 2d at 400 (explaining a plaintiff's "allegations are insufficient to defeat a motion to dismiss" where they are "contradicted" by documents cited in the complaint). Indeed, the Amended Complaint itself establishes that the recoupment followed the Company's 2016 restatement of its financial results and the resulting

failure to satisfy the performance metrics tied to Cole's incentive compensation. *See* Am. Compl. ¶¶ 88–90. In turn, those performance metrics were defined by Cole's Employment Agreement, which provided for annual bonuses based on the Company's financial performance. *See* Levitt Decl. ¶ 5, Ex. 3A, § 2.3. When the financial results were restated, Iconix determined that the earnings no longer met the thresholds required for performance-based pay. *See generally* Am. Compl. ¶¶ 88–89. Consistent with that determination, the Separation Agreement addressed the recoupment expressly. *See* Levitt Decl. ¶ 7, Ex. 4, at 1. Under that agreement, Cole agreed to return the performance-based cash and equity awards. *Id.* Notably, the recoupment was not conditioned on a criminal indictment or conviction, and the Amended Complaint does not and cannot allege otherwise. *Id.*; Am. Compl. ¶¶ 88–90, 110–15.

Cole attempts to anchor this claim to his procedural reversal, arguing that it is now "against equity and good conscience for Iconix to retain the benefit it obtained by recouping funds from [him]." Am. Compl. ¶ 139. But that argument has nothing to do with the basis for the recoupment. Iconix recouped compensation following financial restatements issued under Cole's leadership. Whether Cole was acquitted on procedural grounds, acquitted on the merits, or convicted does not change that the Company was obligated to restate its financial statements.

Because Iconix retained funds pursuant to rights defined by contract, there can be no quasi-contractual unjust enrichment. *See 900 Unlimited, Inc. v. MCI Telecom. Corp.*, 626 N.Y.S.2d 188 (N.Y. App. Div. 1995) (holding that "there can be no unjust enrichment, since [defendant] had the right to retain monies . . . pursuant to contract between these parties").

***Third***, given the recoupment was not tied to the criminal proceedings but instead to Iconix's 2016 restatement of its financial results and the resulting determination to recoup performance-based compensation, 2016 is the operative accrual date for statute of limitations

21

purposes and Cole's claim is time-barred. Unjust enrichment claims seeking monetary relief are subject to a three-year statute of limitations under N.Y. C.P.L.R. § 214(3). *See Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 466 (S.D.N.Y. 2015); *see also Cohen v. Dunne*, No. 15 Civ. 3155, 2017 WL 4516820, at *3–4 (S.D.N.Y. Sept. 27, 2017). The statute of limitations for unjust enrichment begins to run "'upon the occurrence of the wrongful act giving rise to a duty of restitution.'" *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 364 (2d Cir. 2013) (quoting *Coombs v. Jervier*, 906 N.Y.S.2d 267 (N.Y. App. Div. 2010)). Here, Cole seeks to recover the 2016 recoupment of performance-based compensation he made pursuant to the Separation Agreement. Am. Compl. ¶¶ 88–90, 136. This Action, filed nearly nine years later in November 2025, is untimely and should be dismissed as a matter of law.

## IV.     THE DAMAGES THEORIES AGAINST ICONIX FAIL AS A MATTER OF LAW.

Cole seeks punitive and consequential damages on his contract claims. Those remedies are unavailable as a matter of law and should be dismissed.

### A.     Punitive Damages Are Barred for Ordinary Breach of Contract Claims.

The Amended Complaint seeks punitive damages for alleged breaches of the Employment Agreement, Separation Agreement, By-Laws, and Advancement Agreement. Am. Compl. ¶¶ 117, 124, 125. Under New York law, "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights." *BDG Gotham Residential, LLC v. W. Waterproofing Co., Inc.*, No. 19-CV-6386 (BCM), 2024 WL 5201596, at *2 (S.D.N.Y. Dec. 23, 2024) (quoting *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613 (1994)). Accordingly, "the standard for imposing punitive damages is a strict one and punitive damages will be awarded only in exceptional cases[.]" *Marinaccio v. Town of Clarence*, 20 N.Y.3d 506, 511 (2013). To recover punitive

damages in a contract case, a plaintiff must plead an independent tort, egregious conduct, and a pattern of similar conduct directed at the public generally. *Rocanova*, 83 N.Y.2d at 613. Cole fails to do so.

The Amended Complaint does not and cannot plead an independent tort separate from the alleged contractual failure to indemnify or advance funds. Instead, in insufficient and conclusory fashion, it states that Iconix's conduct was "willful, wanton, abusive, fraudulent, in bad faith" and "independently tortious," and that it was "aimed at the public." Am. Compl. ¶¶ 85, 117, 124. Those are labels, not facts. *See Iqbal*, 556 U.S. at 678. Moreover, the Amended Complaint does not allege any pattern of similar misconduct affecting the public at large. The allegations concern a dispute over Cole's own compensation and advancement rights. Am. Compl. ¶¶ 88–101, 113–125; *Rocanova*, 83 N.Y.2d at 613. That is a private contractual dispute.

Cole had the opportunity to amend his complaint after failing to plead a viable tort or public harm theory but chose to add only conclusory assertions about Iconix's former status as a public company and alleged violations of a court order. This effort to repackage a private contractual dispute as a public harm fails. *See* Am. Compl. ¶ 95. Here, the alleged breaches concern Iconix's supposed obligations to Cole alone, not an alleged pattern of misconduct from Iconix affecting shareholders or the public at large. Under *Rocanova*, the absence of allegations showing repeated conduct directed at the public is dispositive. 83 N.Y.2d at 613.

Because Cole has not pled facts satisfying the strict standard for punitive damages under New York law, *see Marinaccio*, 20 N.Y.3d at 511, his demand for punitive damages should be dismissed with prejudice.

### B.    Cole Is Not Entitled to Consequential Damages.

Cole seeks consequential damages on his breach of contract claims. Am. Compl. ¶¶ 118, 125. Under New York law, consequential damages are recoverable only if they were foreseeable

and within the contemplation of the parties at the time of contracting. *Island*

*Ordnance Sys., LLC v. Amerimex, Inc.*, 205 N.Y.S.3d 456, 458 (N.Y. App. Div. 2024);

*Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 193 (2008). In assessing

foreseeability, courts examine "the nature, purpose and particular circumstances of the contract

known by the parties" and what liability the defendant reasonably may be supposed to have

assumed when the contract was made. *Bi-Econ.*, 10 N.Y.3d at 193 (quoting *Kenford Co. v.

County of Erie*, 73 N.Y.2d 312, 319 (1989)). In addition, consequential damages may not be

speculative. *See Great Lakes Reinsurance (UK) SE v. Herzig*, 764 F. Supp. 3d 164, 189

(S.D.N.Y. 2025).

Here, Cole fails to allege in his Amended Complaint that the claimed consequential

damages were foreseeable or within the parties' contemplation at the time the relevant

agreements were executed. Instead, he broadly seeks undefined damages "not to exceed

$25,000,000" for "past, present, and future pain, suffering, and other hardships." Am. Compl. at

18–19 (Prayer for Relief). He identifies no specific consequential losses, no facts explaining how

those losses were calculated, and no allegations showing that such damages were contemplated

when the contracts were formed. That is insufficient, and the claim for consequential damages

should be dismissed.

**CONCLUSION**

In its pre-motion letter, Iconix identified the deficiencies in Cole's pleading, yet he failed

to address them with allegations sufficient to withstand this Motion to Dismiss. The Court can

reasonably conclude, therefore, that further amendment would be futile and Counts III through

V, along with punitive and consequential damages, should be dismissed with prejudice. *See

generally Owoyemi v. Credit Corp Sols. Inc.*, 596 F. Supp. 3d 514, 521 (S.D.N.Y. 2022)

("Dismissal with prejudice is appropriate . . . where the problem with [plaintiff's] causes of action is substantive such that amendment would be futile.") (cleaned up).


Dated: March 27, 2026          MORRISON & FOERSTER LLP
       New York, New York


By:  *Jamie A. Levitt*
     Jamie A. Levitt, Bar No. 2548477
     JLevitt@mofo.com
     Michael D. Birnbaum, Bar No. 3068129
     MBirnbaum@mofo.com
     250 West 55th Street
     New York, NY 10019-9601
     Telephone: 212.468.8000
     Facsimile: 212.468.7900

     *Attorneys for Defendant
     Iconix International Inc.*

25