# EXHIBIT 4

<u>**SEPARATION AGREEMENT**</u>

SEPARATION AGREEMENT ("<u>Agreement</u>") entered into and effective as of the 28th day of December, 2016 (the "<u>Effective Date</u>") by and among Iconix Brand Group, Inc., a Delaware corporation (the "<u>Company</u>") and Neil Cole ("<u>Cole</u>").

**WHEREAS**, Cole resigned from his positions as Chairman, CEO and President of the Company and as a member of its Board of Directors, effective August 5, 2015 (the "<u>Resignation Date</u>," and such resignation, the "<u>Resignation</u>"), and in connection therewith, the Company and Cole entered into the Confidential Term Sheet for Resignation and Separation Agreement dated August 5, 2015 (the "<u>Binding Term Sheet</u>") (capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to such terms in the Binding Term Sheet);

**WHEREAS**, subsequent to the Resignation Date, the Company restated its financial statements, as more fully described in the Company's Current Reports on Form 8-K filed with the Securities and Exchange Commission on November 5, 2015 and February 18, 2016 (collectively, the "<u>Restatements</u>");

**WHEREAS**, the Board of Directors of the Company (the "<u>Board</u>") determined that, as a result of the cumulative effect of the Restatements, as reflected in the February 18, 2016 Restatement, certain performance-based cash bonus and equity awards previously paid or delivered to Cole are subject to recoupment, pursuant to the terms and conditions of such cash and incentive equity awards, the Company's Recoupment Policy, and the Employment Agreement; and

**WHEREAS**, the Company and Cole desire to settle and resolve, fully and finally, all claims related to the Resignation and the recoupment of Cole's performance-based cash bonus and equity awards as a result of the Restatements, without any admission of liability, incapacity, undue influence, fault or wrongdoing.

**NOW, THEREFORE**, for good and valuable consideration, the mutual receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    The total remaining amount due from the Company to Cole in connection with his Resignation under the Employment Agreement and the Binding Term Sheet, subject to required tax withholding, is $2,750,000 as cash severance to Cole pursuant to Section 5.4.2(i) of the Employment Agreement and the Binding Term Sheet and 1,346,757 shares of the Company's common stock, par value $0.001 per share ("<u>Common Stock</u>") pursuant to the terms of the Employment Agreement and the Binding Term Sheet, comprised of (a) 1,181,684 shares of Common Stock, which number of shares is equal to those restricted stock units granted pursuant to the terms of that certain award agreement by and between Cole and the Company dated February 19, 2008, as amended on December 24, 2008; (b) 51,230 shares of Common Stock, which number of shares is equal to the partial acceleration of the 68,306 outstanding unvested restricted stock units granted pursuant to the terms of that certain award agreement by and between Cole and the Company dated as of June 17, 2011; and (c) 113,843 shares of Common

Stock, which number of shares is equal to the portion of the 455,373 outstanding unvested performance share units granted pursuant to the terms of that certain award agreement by and between Cole and the Company dated June 17, 2011, which vested as a result of the achievement by the Company of the free cash flow target in respect of fiscal year 2015 applicable to such performance share units, all of which shall be treated as delivered by the Company on the date of this Agreement.  The $2,750,000 cash payment and the delivery of the 1,346,757 shares of Common Stock by the Company to Cole shall be made pursuant to Paragraph 3.

2.    In satisfaction of Cole's recoupment obligations with respect to the Prior Awards (defined below) as a result of the Restatements, Cole shall deliver to the Company cash in an amount equal to $2,175,000 and 575,127 shares of Common Stock. The term "Prior Awards" means the following cash bonus that was paid and equity based awards that vested prior to having effected the Restatements: (i) the $2,175,000 cash bonus paid to Cole based on achievement of the 2013 Adjusted EBITDA target ($1,050,000) and 2014 Adjusted EBITDA target ($1,125,000); (ii) 113,843 PSUs based on the achievement of the 2014 EPS target; (iii) 89,669 PSUs based on the partial achievement of the 2013 EBITDA target; and (iv) 65,252 shares of Common Stock based upon the catch up provision for 2012 EPS based on 2013 EPS results. The $2,175,000 cash payment and the delivery of 575,127 shares of Common Stock by Cole to the Company shall be made pursuant to Paragraph 3.

3.    Solely as a matter of convenience, the parties agree that their respective payment obligations pursuant to Paragraphs 1 and 2 above shall be satisfied in the following manner on the Effective Date:

(a)    The Company shall deliver to ADP Services Inc. ("ADP") an authorization letter in the form of Exhibit B hereto instructing ADP to issue and deliver to Cole a check, in an amount equal to $575,000, which amount is equal to the difference between (x) $2,750,000 (*i.e.*, the cash amount payable to Cole by the Company pursuant to Paragraph 1) *less* (y) $2,175,000 (*i.e.*, the cash amount payable to the Company by Cole pursuant to Paragraph 2); and

(b)    The Company shall deliver to Cole 771,630 shares of Common Stock, which number of shares is equal to the difference between (x) 1,346,757 shares of Common Stock (*i.e.*, the number of shares of Common Stock that Cole is entitled to receive pursuant to Paragraph 1 above) *less* (y) 575,127 shares of Common Stock (*i.e.*, the number of shares of Common Stock the Company is entitled to receive from Cole pursuant to Paragraph 2).

4.    On the Effective Date, Cole shall deliver to the Company an amount equal to his tax withholding obligations with respect to the $2,750,000 cash payment and the delivery of 1,346,757 shares of Common Stock set forth in Paragraph 1 above (the "Withholding Payment").  For purposes of the Withholding Payment, the shares of Common Stock delivered pursuant to Paragraph 1 above shall be valued at the closing sale price of the Common Stock on the trading day immediately preceding the Effective Date. The amount of the Withholding Payment shall be the sum of the following subparagraphs (a), (b) and (c) (totaling $8,106,748.05):

(a)    The Federal income tax withholding obligation shall be the sum of (i) $250,000, plus (ii) $693,000, plus (iii) 39.6% of the value of the Common Stock delivered pursuant to Paragraph 1 (such that subtotal (a) equals $5,705,509.84); plus

(b)    The Federal social security and Medicare withholding tax obligation shall be the sum of (i) $9,065.25, plus (ii) $118.17, plus (iii) $59,925, plus (iv) 2.35% of the value of the Common Stock delivered pursuant to Paragraph 1 (such that subtotal (b) equals $351,732.11); and

(c)    The New York state and local withholding tax obligations shall be the sum of (i) $381,425 plus (ii) 13.87% of the value of the Common Stock delivered pursuant to Paragraph 1 (such that subtotal (c) equals $2,049,506.10).

5.    The Company and Cole agree as follows:

(a)    The Company shall seek a refund of the overpaid FICA Taxes (defined below) associated with the wages that are repaid by Cole pursuant to Cole's satisfaction of his recoupment obligation in Paragraph 2 (the "FICA Tax Refund"). Such request for a refund shall be filed by the Company (with a copy evidencing such filing to be sent to Cole) within thirty (30) days after Cole provides the following to the Company:  (i) a written consent to the allowance of a refund of the employee's portion of the overpaid FICA Taxes, and (ii) a written statement confirming that Cole has not made any previous claims, and will not make any future claims, for refund or credit of the overpaid FICA Taxes.  The form of the written consent and written statement referred to in this Paragraph 5(a) shall be (i) provided by the Company to Cole within fifteen (15) days after the Effective Date and (ii) executed and returned to the Company by Cole within fifteen (15) days after Cole's receipt thereof.  As promptly as practical, but in any event no more than thirty (30) days after the Company receives the FICA Tax Refund, the Company shall pay to Cole (without any right to offset against such amounts) the portion of the FICA Tax Refund attributable to FICA Taxes paid pursuant to section 3101 of the Code; provided, however, that if the portion of the FICA Tax Refund that is paid by the Company to Cole is subsequently disallowed or otherwise reduced by the Internal Revenue Service, Cole shall repay to the Company the amount of such disallowance or other reduction no later than thirty (30) days after the Company provides Cole with written notice of such disallowance or reduction.  Cole agrees to indemnify the Company for all costs (including, without limitation, reasonable attorneys' fees and expenses) that the Company incurs in collecting the repayment, should Cole fail to timely make such repayment.  For purposes of this Paragraph, "FICA Taxes" means both the social security and Medicare portions of the FICA tax imposed on the employee under section 3101 of the Internal Revenue Code (the "Code") and imposed on the employer under section 3111 of the Code, but does not include the additional tax imposed on the employee under Section 3101(b)(2) of the Code (the "Additional Medicare Tax").

(b)    If the Company has not filed a request for the FICA Tax Refund and provided to Cole satisfactory evidence of the filing of such request within forty five (45) days after the date that Cole returns the executed written consent and written statement referred to in Paragraph 5(a) above to the Company, Cole shall be entitled to file a Form 843 (Claim for Refund and Request for Abatement) to request a refund in respect of the portion of the overpayment of FICA Taxes incurred by Cole as a result of his satisfaction of the recoupment obligation in Paragraph 2, and thereafter the Company shall, within fifteen (15) days after its

-3-

receipt of a written request from Cole, provide to Cole a statement confirming that the Company has not filed the FICA Tax Refund pursuant to Paragraph 5(a) hereof.

(c)    In addition to the Company's request for the FICA Tax Refund pursuant to Paragraph 5(a) above or Cole's request for a refund pursuant to Paragraph 5(b) above, as applicable, the Company acknowledges that Cole shall be entitled to file a Form 1040X and attach a corrected Form 8959 to obtain a refund of the excess Additional Medicare Tax paid by Cole as a result of his satisfaction of the recoupment obligation in Paragraph 2 above.

6.    Simultaneously with the execution of this Agreement, Cole is delivering to the Company a General Release and Waiver (the "Release") in the form of Exhibit A hereto.

7.    Except for the amounts specifically set forth in Paragraph 3 of this Agreement, Cole agrees that no amounts of cash, equity or other property are owed to him by the Company or any of its affiliates pursuant to the Employment Agreement, any equity awards agreements to which Cole is a party or the Binding Term Sheet or otherwise and that all other equity awards have not vested and are forfeited; provided, that, the foregoing does not limit (i) any claim expressly reserved by Cole pursuant to Section 4 of the Release and (ii) the Company's obligations pursuant to Paragraphs 8 and 10 of this Agreement.

8.    Other than the obligations set forth in Paragraphs 3 and 10 of this Agreement, Cole acknowledges and agrees that none of the Company, its subsidiaries or affiliates, nor any of their respective officers, directors, employees, equityholders, agents, advisors or other representatives have had or continue to have any further obligations to Cole or any of his affiliates or TheNext.org (formerly The Candie's Foundation); provided, that the Company hereby agrees to use its reasonable efforts, without the obligation to incur significant expense, to provide Cole, as promptly as practicable after the Effective Date, with copies of creative materials, if any, that it possesses relating to TheNext.org (formerly the Candie's Foundation), other than those materials which incorporate intellectual property owned or held for use at any time by the Company and/or its subsidiaries or affiliates.

9.    Cole acknowledges and agrees that he remains subject to the provisions of Section 7 of the Employment Agreement (other than subsection 7.3. which expired by its terms on August 5, 2016) which shall remain in full force and effect for the periods set forth therein. Further, Cole will, upon reasonable notice, reasonably cooperate with the Company and its affiliates, subsidiaries and other entities in which it directly or indirectly holds an equity interest and with any legal counsel, expert or consultant they may retain to assist them or any of their respective officers, directors, employees, agents or other representatives in connection with any existing or future judicial proceeding, arbitration, administrative proceeding, governmental investigation or inquiry or internal audit in which the Company or any of its affiliates, subsidiaries or entities in which it directly or indirectly holds an equity interest or any of their respective officers, directors, employees, agents or other representatives may be or become involved. The agreement to cooperate includes Cole's reasonable assistance, cooperation and participation with respect to any pending litigation in which he has been identified as a witness or defendant and includes preparing for and attending depositions, assisting in answering factual questions for discovery, and preparing for and attending any hearing or trial. Except as provided above, Cole agrees to notify the Company promptly if he is subpoenaed by any person or entity (including, but not limited to, any governmental agency) to give testimony (in a deposition, court

-4-

proceeding or otherwise) or to provide documents that in any way relates to the Company or any of its affiliates, subsidiaries or entities in which it directly or indirectly holds an equity interest or any of their respective officers, directors, employees, agents or other representatives, unless such prior notification is prohibited by applicable law. Cole also agrees not to give such testimony or provide such documents prior to giving notification to the Company unless compelled to do so by lawful subpoena issued by a body of competent jurisdiction. Cole agrees that nothing in this Agreement is intended or shall be construed in any way as being dependent upon or contingent on the content of Cole's testimony. Cole understands and acknowledges that notwithstanding any other provision in this Agreement, he is not prohibited or in any way restricted from reporting possible violations of law to a governmental agency or entity, and he is not required to inform the Company if he makes such reports.

10.     The parties agree that, notwithstanding the termination of the Employment Agreement, the Company continues to be bound by Section 8 of the Employment Agreement (including, without limitation, any rights to indemnification and advancement to the extent set forth in the Company's by-laws as in effect as of the Resignation Date).

11.     Except with respect to the FICA Tax Refund as provided in Paragraph 5, Cole acknowledges and agrees that he shall be responsible for obtaining federal, state and/or local tax refunds, if any, as a result of this Agreement, including, without limitation, as a result of Cole's satisfaction of his recoupment obligation under Paragraph 2 hereof and of the Withholding Payment under Paragraph 4 hereof, and that the Company is not responsible for obtaining any such refunds on Cole's behalf.

12.     Cole and the Company will bear their own respective legal costs incurred by each in connection with the negotiation and execution of this Agreement.

13.     This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, and their respective successors and assigns. Cole shall not assign or otherwise transfer this Agreement or his rights, interests or obligations under this Agreement, except with the prior written consent of the Company.

14.     The invalidity or unenforceability of any provision hereof shall not in any way affect the validity or enforceability of any other provision.

15.     The parties agree that notwithstanding the termination of the Employment Agreement, Subsections 9.6 and 9.7 of the Employment Agreement will continue in full force and effect and shall be applicable to this Agreement and the performance of the parties hereunder.

16.     Cole hereby represents and warrants to the Company that the execution, delivery and performance of this Agreement by Cole does not and will not conflict with, breach, violate or cause a default under (i) any agreement, contract or instrument to which Cole is a party, including, but not limited to, any employment, consulting, advisory, noncompetition, non-solicitation, confidentiality or similar agreement or arrangement or (ii) any judgment, order or decree to which Cole is subject.

17.     The Company hereby represents and warrants to Cole that the execution, delivery and performance of this Agreement by the Company does not and will not conflict with, breach, violate or cause a default under (i) any agreement, contract or instrument to which the Company is a party or (ii) any judgment, order or decree to which the Company is subject.

18.     Except as specifically provided herein or in the Release, this Agreement and the Release reflect the entire understanding between the parties with respect to the subject matter hereof and thereof.   This Agreement and the Release supersede any and all other agreements, either oral or in writing, between the parties hereto with respect to the employment of Cole with the Company and his Resignation, and contains all of the covenants and agreements between the parties with respect to such employment and Resignation, other than, in each case, the provisions of the Employment Agreement pursuant to which Cole and/or the Company continue to be bound as specifically set forth in this Agreement or the Release.   Any modification or termination of this Agreement will be effective only if it is in writing signed by both parties.  Cole acknowledges and agrees that, in executing this Agreement he has not relied, and when executing the Release he is not relying, on any representation, promise, discussion, understanding or agreement of any kind other than those set forth in this Agreement and the Release.  Cole acknowledges and agrees that the Company has not made any representation as to the tax treatment of the cash payment or delivery of Common Stock by the Company to Cole, the recoupment being made by Cole pursuant to this Agreement or the Withholding Payment pursuant to Paragraph 4 hereof, nor have any representations been made by the Company to Cole regarding the likelihood of success of the FICA Tax Refund, and he is not relying on any tax, legal or other  advice of the Company or any of its affiliates or subsidiary or any of their respective officers, directors, employees, equityholders, agents, advisors or their representatives with respect to this Agreement and he has consulted his own advisors to advise him with respect to all tax, legal and other issues relating to this Agreement.

19.     Other than as required by law and general statements in periodic earnings releases and earnings calls relating to the impact of the recoupment on the Company's financial statements, including updating and follow-on communications, the Company represents that it does not intend to issue any press release or public announcement with respect to this Agreement or its terms.  Notwithstanding the foregoing, it is understood that the Company may disclose this Agreement and its terms in reports and other filings that it files with the Securities and Exchange Commission as it deems appropriate.

20.     The Company, to the extent permitted by law, on behalf of itself and each of its affiliates and subsidiaries, and all of their respective past, present and future parent entities, subsidiaries, divisions, affiliates, and related business entities any of their successors and assigns, assets, employee benefit plans or funds, and all of their respective past and/or present directors, officers, fiduciaries, trustees, administrators, managers, supervisors, shareholders, investors, employees, and assigns, whether acting on behalf of the Company or its affiliates or, in their individual capacities (collectively, the "Company Parties" and each a "Company Party"), does hereby knowingly and voluntarily release, remise, and acquit each of the Executive, his heirs, executors, administrators, trustees, legal representatives and assigns (collectively, the "Executive Parties" and each an "Executive Party") from any and all claims, demands, causes of action, obligations, damages or liabilities, known or unknown, however denominated, which the Company Parties have or may have against any Executive Party for return or recoupment of any

6-

amounts of cash, equity or other property paid, delivered or owed to Cole by the Company or any of its affiliates due to the Restatements, except as provided in Paragraph 2 hereof.

21.    This Agreement may be executed by the parties in one or more counterparts, each of which shall be deemed to be an original but all of which taken together shall constitute one and the same agreement, and shall become effective when one or more counterparts has been signed by each of the parties hereto and delivered to each of the other parties hereto.

22.    All notices relating to this Agreement shall be in writing and shall be either personally delivered, sent by overnight courier, sent by telecopy (receipt confirmed) or mailed by certified mail, return receipt requested, to be delivered at such address as is indicated below, or at such other address or to the attention of such other person as the recipient has specified by prior written notice to the sending party. Notice shall be effective upon receipt.

To the Company:

> Iconix Brand Group, Inc.
> 1450 Broadway, 3rd Floor
> New York, New York 10018
> Attention: John Haugh, President and Chief Executive Officer and
> Jason Schaefer, Executive Vice President and General Counsel

With a copy in the same manner to:

> Blank Rome LLP
> 405 Lexington Avenue
> New York, New York 10174
> Attention: Robert J. Mittman, Esq.

To Cole:

> Neil Cole
> 200 East 65th Street
> New York, New York 10021

With a copy in the same manner to:

> Paul, Weiss, Rifkind, Wharton & Garrison LLP
> 1285 Avenue of the Americas
> New York, New York 10019
> Attention: Lorin L. Reisner, Esq.

23.    The parties each participated in the drafting of this Agreement after consulting with counsel. Therefore, the language of this Agreement shall not be presumptively construed in favor of or against either of the parties.

7-

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

ICONIX BRAND GROUP, INC.

By: _____

NEIL COLE