EXHIBIT F

NbgWhorS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                        19 Cr. 861 (ER)

SETH HOROWITZ,

                Defendant.
                                          Sentence
------------------------------x

                                          New York, N.Y.
                                          November 16, 2023
                                          3:30 p.m.

Before:

                    HON. EDGARDO RAMOS,

                                          District Judge

                        APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  JARED P. LENOW
     ANDREW M. THOMAS
     SCOTT A. HARTMAN
     Assistant United States Attorneys

WILMER CUTLER PICKERING HALE & DORR LLP
     Attorneys for Defendant
BY:  ANJAN SAHNI
     BRENDAN R. McGUIRE
     MARK CAHN
     RACHEL E. CRAFT


Also Present:  Special Agent Nicholas Kroll, FBI

NbgWhorS

(Case called; appearances noted)

THE COURT:  Good afternoon.  You may be seated.

This matter is on for sentencing.  In preparation for today's proceeding, I have reviewed the following.

I've reviewed the presentence report, which was last revised on October 18, 2023, prepared by U.S. Probation Officer Stephanie MacMahon, which includes a recommendation.

I've also reviewed the sentencing memorandum prepared by Messrs. Sahni, Maguire, Cahn and Ms. Craft, filed on November 2, 2023, which includes letters written by various of Mr. Horowitz's family and friends, as well as several documents related to his departure from Iconix and his agreement with the government.

I've also reviewed the government's letter, dated November 9, 2023, in which it indicates its intention to move pursuant to sentencing guideline Section 5K1.1.

Is there anything else I should have received or reviewed in connection with sentencing?

Mr. Lenow.

MR. LENOW:  No, your Honor.

THE COURT:  Mr. Sahni.

MR. SAHNI:  No, your Honor.  Thank you.

THE COURT:  Am I pronouncing your name correctly?

MR. SAHNI:  Yes, your Honor.  Thanks.

THE COURT:  Mr. Sahni, have you read the presentence

report and discussed it with your client?

MR. SAHNI:  We have, Judge.

THE COURT:  By the way, you can remain seated.  You don't have to keep popping up.

Mr. Horowitz, have you read the presentence report and discussed it with your attorney?

THE DEFENDANT:  Yes, I have.

THE COURT:  Are there any objections to the report concerning its factual accuracy?

MR. SAHNI:  No, your Honor.

THE COURT:  Mr. Lenow.

MR. LENOW:  No, your Honor.

THE COURT:  Very well.

Although I am not required to impose a sentence within the sentencing range calculated under the guidelines, I am required to consider the guidelines in imposing sentence.  In order to do so, I must calculate the applicable sentencing range.

Does Mr. Horowitz continue to contest the use of the loss amount in the presentence report, Mr. Sahni?

MR. SAHNI:  Your Honor, we've set forth our position in our sentencing memo, that the 14-level increase based on Mr. Cole's trading was not jointly undertaken activity.  We understand the government's position.  I don't think there are any facts in dispute, but Mr. Horowitz's testimony at trial

NbgWhorS

with respect to those trades was fairly clear.  He knew as a general matter that Mr. Cole intended to trade.  Mr. Cole told him about these particular trades after the fact.  Mr. Horowitz himself didn't benefit in any way from Mr. Cole's trades.

THE COURT:  Very well.

Mr. Lenow.

MR. LENOW:  That's right, Judge.  We don't have any factual dispute here.  It's really a disagreement about, legal disagreement about what are the fair inferences to draw from those facts, and a small difference in inference does result in a large difference in the guidelines.  But we agree that Mr. Horowitz didn't profit from the amount we're pointing to. It's just an issue of was it foreseeable to him that Mr. Cole would have had those profits.

THE COURT:  Just out of curiosity, Mr. Sahni, do you have an alternate view of what the loss amount should be?

MR. SAHNI:  Your Honor, we don't think a 14-level increase is appropriate here.  We appreciate that the alternative would be no loss amount that's imposed, but the somewhat unusual circumstances of the loss amount driving Mr. Cole's sentence as applied to Mr. Horowitz do create an unusual outcome for Mr. Horowitz here.

THE COURT:  I do agree with the government's view that Mr. Horowitz was generally aware that certainly part of the motivation that Mr. Cole had in engaging in the activity that

NbgWhorS

was alleged in the indictment was to profit monetarily.  Mr. Horowitz had an understanding that Mr. Cole would be trading on Iconix stock after those transactions were reported, and accordingly, that loss amount can be attributed to Mr. Horowitz.

I also note that, as the parties were aware in connection with Mr. Cole's sentencing, the difficulties in actually calculating a potential loss suggested the approach that was taken.  I agreed with that approach in connection with Mr. Cole's sentencing and believe that it is appropriate here as well.

With that, I have reviewed the paragraphs in the presentence report in connection with the sentencing guidelines.  They are set forth at paragraphs 50 to 64.  I've done my own independent assessment, and I agree with probation that the base offense level in this case is seven, to which 14 levels are added because the offense involved approximately $790,200 in losses; an additional four levels are added because at the time of the offense, Mr. Horowitz was an officer of a publicly traded company; and then two additional levels are added because Mr. Horowitz obstructed or attempted to obstruct justice by destroying certain relevant documents.

That yields a total offense level of 27, from which three levels are deducted due to his acceptance of responsibility, resulting in in a total offense level of 24.

In addition, the parties agree --

I take it that the amendment has already gone into effect.

MR. LENOW:  Yes, Judge.

THE COURT:  So Section 4C1.1 applies because Mr. Horowitz meets all of the requirements, including that he has no criminal history points.  Accordingly, two additional levels are deducted, leaving us with a total offense level of 22.  And because Mr. Horowitz has no criminal history points, he's in criminal history category I, all of which results in a sentencing range of 41 to 51 months.

With that, does the government wish to be heard prior to the imposition of sentence?

MR. LENOW:  Yes, Judge.

As we set forth in our letter, we believe that Mr. Horowitz's cooperation in this case was not simply substantial but that it was truly extraordinary.  I think there are some facts that the Court is certainly aware of in terms of the nature and extent of that cooperation, the fact that there were two trials before the Court.  At each trial Mr. Horowitz testified for a number of days, was subject to extensive cross-examination; the fact that he met with the government many, many times, dozens of times, approximately 50 in total, which was necessitated by the extreme complexity of this case, including facts that were tried before your Honor but also a

NbgWhorS

number of other facts that were extensively investigated but did not result in charges.

THE COURT:  Can you bring the microphone closer, Mr. Lenow.

MR. LENOW:  Yes, Judge.

And in terms of Mr. Horowitz's importance to the case, I think that that was also clear from the trial, so another fact your Honor is well aware of.  But there are two things that I think are worth elaborating upon that are in our letter that may not have been as clear to your Honor based on the trial record.

The first is Mr. Horowitz's complete and total devotion to the cooperation process.  Whenever we sought to meet with Mr. Horowitz, whether it was before charging, while the case was pending, in preparation for trial or during the trial, he was available whenever we asked and met with us for however long we asked with no complaint.  It was a level of complete devotion to his obligations that I think is unusually significant compared to the many other cooperators that I've dealt with.  And so I think that that's something that may not have been as obvious from the trial record, but it was, I think, a truly significant outlier in terms of the demands placed upon Mr. Horowitz and his readiness to meet those obligations.

And I think the second point that I would highlight is

NbgWhorS

what I think we perceived to be Mr. Horowitz's deep and substantial remorse.  In preparation for trial, we obviously discussed the crimes broadly but also his mental process at the time, and it was evident that Mr. Horowitz is someone who I think does have a strong moral compass.  And there was clearly some tension where he sought to reconcile the conduct he had committed with, I think, his inclinations and his deep moral compass.  And I think that tension was very obvious, and he struggled greatly with it.  And I think that the interviews that we had with him and the preparation sessions we had with him, I could see by the end of it, there was truly what I perceived to be a cathartic process, where he was able to work through the issues and that tension and, by the end of it, had truly made peace over what had occurred.

This is someone who I don't think poses any risk of reoffending or any risk in any conceivable way, to me at least. I think that he's used this process to engage in a significant amount of self-reflection on what occurred and is truly on the straight and narrow at this point in time.  And he's used this time to reevaluate his priorities in terms of family, in terms of pursuing things that are of genuine interest and curiosity to him as opposed to simple career advancement, which I think may have been one of the things that was kind of weighing on him at the time this occurred, the desire to please his boss and advance.  I think there's really been a reorientation in

NbgWhorS

his thought process, at least as I perceive it from the outside.

So those are just two things that I wanted to highlight for the Court that I think may not have been as clear to an observer at the trial who saw Mr. Horowitz testify twice. But in sum, Mr. Horowitz is someone who truly does meet all the factors; the cooperation factors weigh very, very heavily in this case in the direction of mitigation. And he is, as I began, not only someone who provided substantial cooperation but extraordinary cooperation.

THE COURT:  Thank you, Mr. Lenow.

Mr. Lenow, let me ask you about the financial aspects of sentencing.

Is the government seeking forfeiture?

MR. LENOW:  We are not, Judge.

THE COURT:  Is the government seeking restitution?

MR. LENOW:  No, Judge.

THE COURT:  Very well.

Mr. Sahni.

MR. SAHNI:  Thank you, your Honor.

I appreciate the government's remarks and will begin by noting that Seth has waited for this day for a very long time, since April of 2015, when he initially sent his letter of resignation to the board of Iconix. As the government's 5K letter notes, it was that letter that began this series of

NbgWhorS

events, the ultimate investigation by the SEC, by the government and subsequent charges.

Since that time, your Honor, Seth has lived under a cloud for almost nine years.  The result of the ensuing events meant that he lost his job at Iconix.  He lost his job as CEO of Baked by Melissa.  His reputation was utterly shattered in the business world, in his community, among his friends and family.  And today, after a very long journey, he's finally hoping to get closure on this very long and painful chapter.

In those intervening years, your Honor, he has done absolutely everything within his power to make those things right.  He approached cooperation with a seriousness of purpose the likes of which, I think, on this side we have collectively not seen before.  The government's 5K letter uses the term "extraordinary," as Mr. Lenow just did as well, to describe his cooperation, and that's exactly the right word.

I've seen a lot of 5K letters on the spectrum, on both sides -- with the government and on this side -- and I agree with the government that one would be "hard-pressed to think of another cooperating witness who has approached the cooperation process with as much dedication, patience and earnest remorse as Seth has."

Your Honor, we've, as his lawyers, gotten to know Seth very well over the last several years.  We've spent a lot of time with him.  We've seen him interact with his family, with

NbgWhorS

his friends, and I would, once again, say that the word "extraordinary" is exactly the right word.  He's a pillar of his family.  He's a pillar of his community, and he's a mainstay source of support for all of his friends.  The 15 or so letters that we included in our submission, which the Court mentioned having reviewed, are very much consistent with that and show an otherwise exemplary life.

If it's OK with your Honor, I would just like to take a minute to introduce to the Court some of the people who have traveled here and who are in the court gallery to support Seth in this very important moment.

THE COURT:  Certainly.

MR. SAHNI:  We are joined by his wife, Lori Horowitz; his mother, Renee Horowitz; his sister and her husband, Robin and Adam Geisler; his sister-in-law, Rikki Dugger-Ades; and his father-in-law, Albert Ades.

There are also a few of his friends and colleagues who have come to court today, some from great distances.  They include Matthew Schwartz, who is a college friend and is now at the DLA firm, who came here from California; Jason Levas, who is a college friend and a coworker at Everlast and Baked by Melissa, who traveled from Boston; Rob Siegel, who is a college friend who came from Philadelphia; Shannon Fey, who was a friend and coworker at Baked by Melissa, who traveled today from Boston; Mark Collier, a friend who came for sentencing

from Colorado; Brandon Emerson, a friend who came from California; Jordy Feldman, who is a close family friend of the Horowitzes' and whose son Seth has coached; Bob Friedman, who has known Seth since the 1980s and is a close family friend; and Gregg Carey, who is Seth's current boss and is the CEO of Section 119, which is Seth's current employer.

Judge, since 2018, when Seth began this process of cooperation, he has taken this role like the most serious of jobs one could imagine. As the government outlined, he met with the government over 50 times and also, on top of that, he testified, as the Court observed, very carefully, for ten days during two different proceedings. He's an individual who has demonstrated resilience and positivity in the face of adversity that is truly exemplary.

On a personal level, I can say that I'm incredibly proud to have represented him. The way in which he has shown genuine remorse and acceptance of responsibility in the face of incredible adversity has simply been inspiring to watch over the last several years.

Your Honor, for all these reasons, we would submit that a sentence of time served is appropriate here. We don't think there's any financial penalty or restitution that is applicable. As we understand, Iconix is not seeking restitution. The government has made its position clear.

Mr. Horowitz has been under this cloud, as I said, now

NbgWhorS

for almost nine years, and so we would respectfully submit that a term of supervised release here is unnecessary.  I know the probation department recommended the three-year maximum supervised release term, but I would also point out that part of the justification, the principal justification for that was the contemplation of a potential financial penalty, which we would respectfully submit is unnecessary here.  He has been on pretrial release since his plea in December 2019 and has been a model cooperator in every possible respect with regard to observing his pretrial release conditions.  He regularly has met with his pretrial officer, has not had a single blemish on that record.  Nine years has been a long time to live with these events, and having started his meetings with the government now almost five years ago, Judge, we respectfully submit that the best way to bring closure to this chapter is a sentence of time served.

Thank you, Judge.

THE COURT:  Thank you, Mr. Sahni.

Mr. Horowitz, you have an absolute right to address the Court before I impose sentence.

Is there anything that you wanted me to know?

THE DEFENDANT:  Yes, there is, your Honor.

First of all, I want to thank you for your time today and your time throughout this case, including during my trial testimony.

NbgWhorS

I do apologize if some of this is repetitive.

I want to thank my attorneys, with whom I've been working with for over eight years.

I also want to thank the government attorneys and agents, all of whom have been respectful and kind throughout this entire difficult process.

I stand before you guilty of the crimes that I committed.  I'm embarrassed and ashamed of what I have done and the toll it has taken on my family and my friends.  I am deeply sorry.

I was 37 years old at the time I committed these crimes.  I stand before you as a 47-year-old man who has grown a great deal during these very difficult years.  Looking back, I am in disbelief that I made the choice to commit these crimes.  There have been times I would walk aimlessly around New York City questioning how I could have done what I did.  But I know I put greed and ambition and a desire to satisfy my boss ahead of my moral compass.

I know that what I did was wrong, and I have paid dearly for it.  I lost my job.  I lost friends.  I was kicked out of every bank and major credit card company, and I could not find work.  And worst -- worst of all -- my wife and my best friend was rightfully angry with me.  I let her, our kids and our family down.

I've worked hard to rebuild my life with the help of

NbgWhorS

these same friends and family.  After resigning from Iconix, I became the CEO of Baked by Melissa, a job that I loved.  I was fired when I pled guilty, and for years after that I had a very difficult time finding employment.  Even so, I tried to use that time productively.

When Covid hit, the silver lining was getting the opportunity to spend time with family and with my community.  I worked with my daughter, who struggles with dyslexia, teaching her on a daily basis, as learning remote was very difficult for her.  I coached my boys' basketball teams, and I was able to support my family when my father-in-law needed a bone marrow transplant and suffered from complications.  Thank God he's now healthy, and he's in the courtroom with us today.

I volunteered at a local school as a teacher's assistant so that classes could continue when teachers came in contact with Covid.  I volunteered at a local park and organized an outdoor basketball league with other communities so that children could get outside and get activity in a safe environment.  I've earned the nickname Coach in my town, as I volunteered and coached hundreds of kids over the last five years.  This is something I continue to do, as I currently coach as a volunteer three different youth basketball teams, and this year we have twice as many participants as the year that I joined.

And now, after searching, after years of searching for

NbgWhorS

work, I am fully employed with an internet apparel company, and I am forever grateful to the CEO, Gregg Carey, for giving me that opportunity.

THE COURT:  I'm sorry.  An internet what company?

THE DEFENDANT:  An internet apparel company.

THE COURT:  Apparel company.

THE DEFENDANT:  I'm forever grateful to that CEO Gregg Carey, who is also here today, for being open-minded and supportive and giving me the opportunity to join him in building his company.

There is nothing more important to me than my wife and our children.

I could not be prouder of our 17-year-old son, who demonstrates incredible character as a leader, as a brother, as a friend and as a son.

Our daughter, who is 15, is an incredible young woman. She is learning that her dyslexia is often misunderstood and can truly be a gift.  I'm grateful that I've been able to play a role in guiding her through these teenage years, and her knowledge, support and love throughout this entire process has been unwavering and truly remarkable.

Our 11-year-old boy is courageous, well-spoken and extremely kind.  He is truly my little best friend.

Children like these, I understand, are rare.  The love in our household is rare, and that is because of the bond that

NbgWhorS

my wife Lori and I have.  Lori is a one-of-a-kind mother.  My crimes put tremendous stress on our relationship.  The pressure of the two trials and the reputational pain she suffered cannot be undone, yet she has given me the opportunity to rebuild our relationship, and that is what we have done and continue to do. I love her very much.

Your Honor, I'm sorry for what I have done.  During the long time since I pled guilty, testifying and awaiting sentence, I have worked hard to get my feet back under me.  I made terrible mistakes.  I've done everything I know how since my time at Iconix to make amends for those mistakes, to expose them, to acknowledge them and the best I can repair them.  I have done everything I can to live a life of love and light.  I fully intend to be an upstanding and law-abiding citizen and active community member for the rest of my life.

Thank you again for your time, your Honor.

THE COURT:  Thank you, Mr. Horowitz.

I take it that as a technical matter, the government moves pursuant to 5K1.1.

MR. LENOW:  Yes, Judge.

THE COURT:  That application is granted.

In deciding what sentence to impose, in addition to the sentencing guidelines, I have considered all of the factors set forth at Section 3553(a) of Title 18 of the United States Code, including, as most relevant to Mr. Horowitz, the nature

NbgWhorS

and circumstances of the offense and his history and characteristics.

I've considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes and to provide Mr. Horowitz with needed educational and vocational training in the most effective manner.

I have considered the need to avoid unwarranted sentence disparities among similarly situated defendants.

In addition, because the government has so moved, I have also considered the factors set forth at Section 5K1.1 of the guidelines; namely, my evaluation of the significance and usefulness of Mr. Horowitz's cooperation, taking into account the government's assessment, his truthfulness, completeness and reliability and the information provided in his testimony; the nature and extent of his assistance; any injuries suffered or any risk of danger to Mr. Horowitz or his family resulting from his cooperation; and the timeliness of his assistance.

Having considered all of these factors, it is my intention to impose a sentence of time served on each count of conviction.  That will not be followed by a period of supervised release.

I will not impose a fine in light of the financial

NbgWhorS

losses that Mr. Horowitz has incurred as a result of his conduct. But I will impose the mandatory special assessment of $500, as I must.

I believe that this sentence is sufficient but not greater than necessary to comply with the purposes of sentencing set forth at Section 3553(a)(2), for the following reasons:

Mr. Horowitz, I generally start this portion of the sentence by lecturing the defendant and trying to impress upon the defendant the seriousness of the offense and why the conviction was appropriate and why the sentence is appropriate.

You seem to me to be a fellow who doesn't need to be lectured, who fully appreciates the danger in which you placed yourself and your livelihood and that of your family. Why you did what you did is always a mystery whenever I see someone who has led quite a privileged life. You were very fortunate before you engaged in the activities, the crimes that brought you before me. You are very fortunate today that the people who made you into the person that you are, the people whose letters I read very carefully, are still with you today and are willing to stand by you and support you notwithstanding all of that.

In terms of what I am required to consider in imposing sentence, I don't believe that specific deterrence, which is to say any efforts to prevent you from committing further crimes,

NbgWhorS

is a particularly strong or even a significant factor in this case, because I do not believe that you will commit any other crimes.  I think that you fully understand the type of risks that you encounter when you do that, and there's nothing more that I can do to further impress that upon you.

In terms of general deterrence, I think that the public at large would take some comfort in the fact that those individuals who cooperate with the government and try to do the right thing notwithstanding mistakes that they have made are able to benefit from leniency.

With respect to supervised release, I take Mr. Sahni's point that not only have you been under this cloud for nine years, more importantly, from my perspective, in terms of supervised release and why I don't believe it's necessary in your case, you've been under supervision for four years already -- pretrial supervision -- and based on what I have been told, your compliance with all of the requirements of supervision were met.  So I don't believe that there's any need to impose any additional period of supervision.

With that, is there any reason why I should not impose the sentence as I've indicated?

Mr. Lenow.

MR. LENOW:  No, Judge.

THE COURT:  Mr. Sahni.

MR. SAHNI:  No, Judge.

NbgWhorS

THE COURT:  In that event, it is the judgment of the Court that Mr. Horowitz be sentenced to a period of time served on each count of conviction, and that period will not be followed by a period of supervised release.

I will not impose a fine.

The government does not seek forfeiture.

I will dismiss --

Are there any open counts?

MR. LENOW:  No, Judge.

THE COURT:  However, I will impose a special assessment of $500, which shall be due immediately.

That constitutes the sentence of the Court.

As a practical matter, Mr. Horowitz, I'm required to tell you that you actually have the right to appeal this sentence.  However, if you intend to do so, there are strict time limits by which you must perfect your appeal.

Mr. Sahni, will you assure me that you will promptly and thoroughly discuss with Mr. Horowitz his right to appeal?

MR. SAHNI:  I certainly will, your Honor.  Thank you.

THE COURT:  Any other applications?

MR. SAHNI:  No, Judge.  Thank you.

THE COURT:  In that event, we are adjourned.

Mr. Horowitz, good luck to you, sir.

(Adjourned)