UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    NEIL COLE,

                        Plaintiff,

    v.

    ICONIX INTERNATIONAL INC. f/k/a/
    ICONIX BRAND GROUP, INC., and
    SETH HOROWITZ,

                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No. 1:25-cv-09357-MKV

Oral Argument Requested

## DEFENDANT SETH HOROWITZ'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMLAINT

LAW OFFICE OF DAVID R. LURIE, PLLC

194 President Street
Brooklyn, NY 11231
347-651-0194

*Attorneys for Defendant Seth Horowitz*

Table of Contents

Table of Authorities ................................................................................................ i

Preliminary Statement.......................................................................................... 1

Background ........................................................................................................... 4

Argument .............................................................................................................. 9

    I.      Cole's initiation allegations are implausible and threadbare .......................... 10

    II.     The undisputed facts establish multiple independent
          bases for presuming probable cause Cole cannot rebut................................... 12

        A.  The are multiple grounds for presuming probable cause. ........................ 12

            1.Cole's second trial conviction established a presumption of
              probable cause................................................................................... 12

            2.The Judicial fact findings of Horowitz's truthfulness (and
              Cole's untruthfulness) established a presumption of
              probable cause. .................................................................................. 13

            3.The GBG witnesses' corroboration established probable
              cause................................................................................................... 13

            4.The grand jury's indictment of Cole established an
              unrebutted presumption of probable cause. ...................................... 17

        B.  Cole's allegations fail to overcome the multiple independent
           presumptions of probable cause.................................................................. 18

            1.. Cole's testimony fails to rebut any of the presumptions of
              probable cause................................................................................... 18

            2.Cole's initial partial acquittal does not rebut the presumptions
              of probable cause. ............................................................................. 19

III.    Cole's makeweight "actual malice" allegations are irrational and
        threadbare. .......................................................................................... 19

IV.    Cole fails to allege that Horowitz overcame the volition of federal
       prosecutors ........................................................................................ 21

Conclusion…………………….. ............................................................................... 23
1

Table of Authorities

Cases

Ahearn v. Brachowicz , 13-cv-8007 (SAS)13-cv-8007 (SAS), 2014 U.S. Dist. LEXIS 94586
(S.D.N.Y. July 10, 2014) ......................................................................................... 15

Aretakis v. Durivage, Civ. No. 1:07-CV-1273 (RFT), 2009 U.S. Dist. LEXIS 7781
(Feb. 3 N.D.N.Y. 2009) ............................................................................................ 19

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ...............................................................9, 11

Chambers v. Time Warner. Inc., 282 F.3d 147 (2d Cir. 2002) ....................................... 16

Colon v. City of New York, 60 NY2d 7 (1983)………………………………….…………17

Dantas v. Citigroup, 779 F. App'x 16 (2d Cir. 2019) ............................................... 9 n.3, 2

Flavin v. City of New York, 171 A.D.3d 633 (1st Dep't 2019) ...................................... 15

Franks v. City of New Rochelle, No. 24-CV-539 (KMK), 2025 U.S. Dist. LEXIS 187232
(S.D.N.Y. 2025) ...................................................................................................... 15

Gilman v. Marsh & McLennan Cos., 868 F. Supp. 2d 118 (S.D.N.Y. 2012)..........................21-22

Goddard v. Daly, 295 A.D.2d 314 (2nd Dep't 2002) .................................................... 12

Gull Keys I LLC v. Fulton Advisory Beef Fund I, LLC, No. 1:23-cv-09058-MKV, 2025 U.S.
Dist. LEXIS 169799 (S.D.N.Y. Sept. 2, 2025) .......................................................... 16

Gutierrez v. New York, No. 18-CV-03621, 2021 U.S. Dist. LEXIS 33013
(E.D.N.Y. Feb. 22, 2021) ...................................................................................... 18 n.8

Jessamy v. Jakasal, No. 21-214, 2022 U.S. App. LEXIS 14436 (2d Cir. May 26, 2022)
(unpublished) ...................................................................................................... 22 n.9

iii

Johnson v. McMorrow, No. 19-CV-06480 (PMH), 2023 U.S. Dist. LEXIS 20780
    (S.D.N.Y. Feb. 7, 2023) ................................................................................... 17 n.6, 18

Lupski v. County of Nassau, 32 A.D.3d 997 (2nd Dep't 2006). .......................................... 9 n.3, 21

Martin v. City of Albany, 42 N.Y.2d 13 (1977) ............................................................. 19

Merrill v. Copeland, No. 19-CV-01240, 2022 U.S. Dist. LEXIS 141117
    (N.D.N.Y. Aug. 9, 2022) ................................................................................... 18 n.8

Moorhouse v. Standard,124 A.D. 3d 1 (1st Dep't 2014) ........................................................ 22 n.9

Morant v. City of New York, 95 A.D.3d 612 (1st Dep't 2012)............................................ 9

Paro Mgmt. Co. v. Willis of New Jersey, Inc., No. 1:24-cv-4885 (MKV),
    2025 U.S. Dist. LEXIS 57884 (S.D.N.Y. March 27, 2025)......................................9, 11

Passucci v. Home Depot, Inc., 67 A.D.3d 1470 (4th Dep't 2009) ................................................. 12

Peterson v. Regina, 935 F. Supp. 2d 628 (S.D.N.Y.), report and recommendation adopted,
    935 F. Supp. 2d 628 (S.D.N.Y. 2013) ............................................................. 18 n.5

Robinson v. Concentra Health Servs., 781 F.3d 42 (2nd Cir. 201)………………………  16 n.5

Savino v. City of New York, 331 F3d 63 (2d Cir 2003) ............................................... 12

Sibblies v. City of New York, 219 A.D.3d 403 (1st Dep't 2023)................................................ 12

Simmons v. N.Y. City Police Dep't, 97 Fed. Appx. 341 (2nd Cir. 2004) (unpublished)………,…18

Soto v. City of New York, 132 F. Supp. 3d 424 (E.D.N.Y. 2015).......................................... 18 n.8

United States v. Cole, 158 F.4th 113 (2d Cir. 2025). .............................................................. *passim*

Williams v. City of New York, 210 A.D.3d 516 (1st Dep't 2022)................................................. 15

Other Authorities

Prosser, Torts (4th ed, 1971), ...................................................................................... 19

Rules

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 1, 9

Defendant Seth Horowitz ("Horowitz" or "Defendant"), through his undersigned counsel, hereby submits this Memorandum of Law in support of his Motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking the dismissal with prejudice, as against Horowitz, of Plaintiff Neil Cole's ("Cole" or "Plaintiff") Amended Complaint herein (Dkt. No. 22; the "Amended Compl.," "Amended Complaint" or "Complaint").[1]

Preliminary Statement

Cole seeks to hold Horowitz liable for malicious prosecution because Horowitz: (i) pled guilty to a securities fraud scheme, then (ii) cooperated with government investigators, and (iii) provided what the presiding judge found to be "truthful[], complete[] and reliab[le]" testimony in two criminal trials.

Virtually the only basis Cole proffers for his contention that Horowitz engaged in the knowing misconduct required to sustain a malicious prosecution claim is Cole's own contrary trial testimony. That is insufficient as a matter of governing New York law. Cole also suggests an inference of culpability can be drawn against Horowitz from Cole's partial acquittal in one of the two trials; once again, Cole is wrong as a matter of law.

Despite having access to the vast amount of evidence entered into evidence in connection with two criminal trials, and having had the opportunity to amend his complaint, Cole's claim against Horowitz remains fatally defective on multiple independent grounds:

First, Cole's allegations that Horowitz – not the federal government – initiated the Department of Justice's criminal case against Cole are not just threadbare, but outright irrational.

---

[1] Unless otherwise indicated, initially capitalized terms employed herein are intended to have the definitions set forth in the Amended Complaint.

Cole asserts that: (i) Horowitz knowingly "confessed" to a nonexistent fraud scheme he invented out of whole cloth; (ii) Horowitz then pled guilty to the fictional crime, thereby subjecting himself to potentially decades in prison, as well as incurring SEC sanctions; and (iii) Horowitz knowingly falsely testified regarding his and Cole's roles in the purportedly nonexistent criminal scheme in two separate criminal trials, thereby committing multiple additional felonies. None of these assertions is supported by cognizable allegations of fact. See Point I, infra.

Second, the record facts establish multiple, independent, bases for presuming the DOJ's criminal charges against Cole were supported by probable cause, which defeats a malicious prosecution claim as a matter of law:

- Cole was convicted of securities fraud following his second jury trial. That established a presumption of probable cause Cole offers no allegations to overcome. Cole suggests his conviction should be ignored because it was reversed on Double Jeopardy grounds; but that is at odds with New York appellate precedents holding that a reversal does not obviate the presumption of probable cause arising from a conviction at trial.

- In his sentencing rulings, a judge of this Court found that: (i) Cole perjured himself, stating: "I sat through both trials, and, frankly, I believe Mr. Horowitz, and I did not believe you"; and (ii) Horowitz was a "truthful[], complete[] and reliab[le]" witness. These factual findings, at a minimum, established a presumption of probable cause that Cole, once again, alleges no facts to overcome.

- Horowitz's testimony on the lynchpin issue in dispute in the government's criminal case – whether Cole entered into oral overpayments-for-givebacks deals with a joint venture counterparty– was independently corroborated by testimony from two witnesses employed by that counterparty. That corroborating testimony established yet another presumption of probable cause Cole cannot rebut.

- Finally, Cole's indictment by a grand jury also gave rise to a presumption of probable cause. Cole contends the grand jury was duped by purportedly knowingly false statements Horowitz made to law enforcement personnel, but, once again, fails to allege colorable facts to support that contention, despite having FBI memoranda regarding the statements by Horowitz he now claims were false. See Point II, infra.

Third, Cole offers threadbare allegations in support of his implausible "malice" theory, i.e., that Horowitz pled guilty to a fictional fraud because he was overcome by hatred of Cole, including (i) a note Horowitz wrote after the events at issue that the criminal trial judge twice deemed irrelevant and refused to allow into evidence; and (ii) an unsent email that was drafted long before the purported fraud scheme, and is not remotely inculpatory.

Cole suggests this Court can ignore his makeweight malice allegations at the pleading stage because he has otherwise alleged facts establishing Horowitz knowingly lied to law enforcement officers. Yet Cole proffers the very same threadbare and irrational allegations in support of his claim that Horowitz knowing lied. See Point III, infra.

Finally, because Horowitz is not a law enforcement officer, New York law requires Cole to allege, and then prove, that Horowitz overcame the "volition" of the law enforcement officials

who actually commenced and prosecuted the criminal case against Cole. But Cole, once again, fails to allege any facts supporting that necessary element of his case.

Furthermore, Cole repeatedly testified to the direct contrary, asserting under oath, that prosecutors threatened and otherwise coerced Horowitz, along with other witnesses, to testify – purportedly falsely – against him. See Point IV, infra.

In sum, Cole's claim that Horowitz bears malicious prosecution liability for serving as what Judge Ramos found to be a "truthful[], complete[] and reliab[le]" witness fails as a matter of law.

## Background

Iconix and Cole. As detailed in a Second Circuit opinion incorporated by reference into Cole's Amended Complaint, Cole founded Iconix in 2005. During all times relevant to this Action, Iconix was a publicly traded company and Cole was its CEO. United States v. Cole, 158 F.4th 113, 117 (2d Cir. 2025).

Iconix was in the business of acquiring trademarks for well-known brands, often in fashion, and then licensing those trademarks to retailers that wished to sell products bearing those marks and collecting royalties. Id.

GBG. Global Brands Group ("GBG"), a Hong-Kong based subsidiary of a major multinational apparel company, was among the companies Iconix did such trademark licensing business with. Id.

Horowitz. During all times relevant to this Action, Horowitz was the COO of Iconix, and reported to Cole.

4

The government's criminal charges. In December of 2019, the United States Department of Justice, through the Office of the United States Attorney for the Southern District of New York, announced it had obtained a grand jury indictment of Cole for, and that Horowitz had pled guilty to, substantially the same alleged crimes. Affirmation of David R. Lurie, dated March 27 2026 (the "Lurie Aff."), Exhs. A (Cole indictment) and B (Horowitz Information).

In the grand jury indictment of Cole, the government alleged Cole was the principal architect of a 2014-15 scheme, in which Horowitz also participated, to falsely inflate Iconix's reported revenue and earnings per share by inducing GBG to enter into oral overpayments-for-givebacks deals when negotiating several joint ventures with GBG, including a June 2014 ("SEA-2") and a September 2014 transaction ("SEA-3"). 158 F.4th at 117.

In each case, the government alleged that, in order to meet quarterly revenue goals expected by Iconix's shareholders, Cole approached his associates at GBG, Jason Rabin and Jared Margolis (collectively, the "GBG Witnesses"), with a proposal: GBG would agree to increase the deal price for a transaction (as set forth in the applicable written agreement) – by $5 million in the case of SEA-2 and $6 million in the case of SEA-3 – in return for Cole's oral promise to GBG (not reflected in the applicable written agreement) to later reimburse GBG for the additional "round trip" amount at issue. Id.

The government further alleged that, after Cole struck these oral agreements with GBG, he and Horowitz reported the misleadingly enhanced deal prices to investors, using the higher price to demonstrate—falsely—that Iconix's revenue had continued to grow, thereby committing securities fraud. Id. at 118.

The indictment. The government's indictment of Cole contained the following charges (which, as explained, were substantially mirrored by the charges Horowitz pled guilty to): Count 1 of the Indictment (the "Conspiracy Count") charged Cole with engaging in a conspiracy with three unlawful objectives: (1) securities fraud, (2) submitting false or misleading SEC filings; and (3) improperly influencing the conduct of audits. Counts 2-9 (the "Substantive Counts") charged the conduct related to those same objects as substantive offenses: Count 2 charged Cole with securities fraud; Counts 3-8 charged him with making false or misleading SEC filings; and Count 9 charged him with improperly influencing the conduct of audits. Finally, Count 10 (the "Interference Count") charged Cole with "Conspiracy to Destroy, Alter, and Falsify Records in Federal Investigations." Id.; Lurie Aff. Exh. A.

The government's criminal trials against Cole. The SDNY's prosecution team tried criminal cases against Cole twice before juries, the first in 2021 and, second, in 2022.

In each trial, the SDNY's case focused on proving Cole had made verbal commitments to the GBG Witnesses to return the parts of the SEA-2 and SEA-3 payments that were excluded from the written agreements with GBG (158 F.4th at 118),  an allegation Cole vehemently denied on the stand (id. at 119).

"Cole's defense was that he never made secret verbal commitments to return part of the SEA-2 and SEA-3 payments to GBG. At trial, defense counsel insisted that 'all of the terms of the transaction[s] were in the written contracts.'" 158 F. 4th at 121 (quoting Cole's defense counsel). Cole also testified he had independently decided to make the alleged reimbursement payments to GBG, and that they were not connected to any promises he had made to GBG. See p. __, infra.

6

The government's first criminal trial. In the first trial, Horowitz was the principal witness for the government, but he was joined at the "center stage" (id. at 122) of the government's case by the two GBG witnesses, who provided testimony supporting three pillars of the government's case against Cole:

- First, "Rabin and Margolis told the jury that, in the SEA-2 and SEA-3 deals, GBG agreed to pay an inflated price because Cole made a firm verbal commitment to return the excess payments at a later time." 158 F. 4th at 120; p. __, infra.

- Second, Rabin and Margolis told the jury that GBG would not have executed the written agreements for SEA-2 or SEA-3 without receiving oral commitments by Cole to provide millions of dollars in reimbursements or credits. See p. __, infra; and

- Finally, Rabin and Margolis told the jury Cole provided millions of dollars in cash payments to GBG pursuant to his oral agreements with GBG. See p. __, infra.

After the first trial, Cole was acquitted of the Conspiracy Count and the Interference Count and, after the jury reached an impasse on the remaining counts, including for securities fraud, a mistrial was declared as to the Substantive Counts. 158 F. 4th at 121.

The government's second criminal trial. In its second criminal trial of Cole, the government again tried the Substantive Counts of its indictment against Cole, in a proceeding that, per Cole's counsel, "replicated the first [trial] in nearly every respect",[2] including regarding the central contested issue of whether the GBG Witnesses and Cole entered into undocumented oral agreements to reimburse GBG millions of dollars respecting SEA-2 and SEA-3.

---

[2] https://shapiroarato.com/wp-content/uploads/2025/10/Dkt.-30.1-Cole-Opening-Brief.pdf ("Cole Opening Appellate Brief"), at 17.

During his testimony during the second trial, Cole asserted that each of Horowitz and GBG's Rabin and Margolis lied about the existence of the alleged oral agreements between Cole and GBG because SDNY prosecutors had "threatened" or otherwise coerced them. P. __, infra.

After hearing twelve days of evidence and argument, the jury unanimously convicted Cole on all eight of the Substantive Counts. 158 F.4th at 122.

The Court's sentencing of Cole and Horowitz. During Cole's sentencing hearing, Judge Ramos – who presided over both trials – made a finding of fact that Cole repeatedly committed perjury, stating: "I sat through both trials, and, frankly, I believe Mr. Horowitz, and I did not believe you." P. __, infra. During Horowitz's sentencing hearing, Judge Ramos found that Horowitz had been consistently "truthful[], complete[] and reliab[le]" as a witness. P. __, infra.

The Second Circuit's double jeopardy reversal. On October 27, 2025, the Second Circuit reversed Cole's judgement of conviction following the second trial, and directed the vacatur of his conviction, based solely on a conclusion that his rights under the Double Jeopardy Clause of the Fifth Amendment had been violated. 158 F.4th at 130. The appellate court did not hold or suggest that there had been any evidentiary defects in the first or second trial.

The Amended Complaint herein. In his Amended Complaint herein, Cole purports to state a single claim against Horowitz, for malicious prosecution. Amended Compl. ¶¶ 102-08. Cole's claim is grounded on a contention Horowitz not only knowingly lied to SDNY prosecutors, but indeed overcame the volition of the prosecution team by inducing them to prosecute Cole, and try him twice, all purportedly because Horowitz "hat[ed]" Cole. Amended Compl. ¶ 30. Additionally, Cole contends that Horowitz pled guilty to the same, purportedly entirely fictional,

8

felonies Cole was charged with because of Horowitz's purportedly "deep-seated" and "visceral" "hatred" of, and "anger" at, his former boss. Amended Compl. ¶¶ 10-25.

Argument

"To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must raise 'more than a sheer possibility that a defendant has acted unlawfully.' Id. 'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Id." Paro Mgmt. Co. v. Willis of New Jersey, Inc., No. 1:24-cv-4885 (MKV), 2025 U.S. Dist. LEXIS 57884 (S.D.N.Y. March 27, 2025).

"The elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." Morant v. City of New York, 95 A.D.3d 612 (1st Dep't 2012). In addition, a civilian malicious prosecution defendant must have "demonstrated active, officious and undue zeal, to the point where [the prosecutors who brought and tried the case were] not acting of [their] own volition."[3]

Cole fails to make colorable allegations supporting three of the independently required elements: Initiation, probable cause and malice; furthermore, during his trial testimony, Cole asserted federal prosecutors coerced Horowitz to "lie," the direct obverse of Cole's current contention that Horowitz overcame the "volition" of the DOJ.

---

[3] Dantas v. Citigroup, 779 F. App'x 16, 23 (2d Cir. 2019) (summary order) (emphasis added; quoting Lupski v. County of Nassau, 32 A.D.3d 997, 998 (2nd Dep't 2006).

9

I.      <u>Cole's initiation allegations are implausible and threadbare</u>.

Cole's putative initiation allegations are not just threadbare, but outright irrational:

<u>First</u>, in his Amended Complaint, Cole asserts: (i) Horowitz "confessed to a nonexistent fraud scheme that he invented out of whole cloth; (ii) Horowitz then pled guilty to the fictional crime, thereby subjecting himself to potentially decades in prison, as well as incurring SEC sanctions; and (iii) Horowitz falsely testified regarding his own and Cole's roles in the purportedly nonexistent criminal scheme in two separate criminal trials, thereby knowingly breaching his plea agreement, and committing multiple additional perjury felonies. Amended Compl. ¶¶ 26-43.

Cole's theory of Horowitz's purportedly malicious motive to "lie" is even more absurd. Per Cole, Horowitz harbored such a "deep seated hatred" of his boss Cole that he was willing to turn himself into a felon, and thereby destroy his own life, solely to inflict harm on Cole. Amended Compl. ¶¶ 10-25.

Despite having access to a plethora of evidence from two criminal trials, the allegations Cole proffers in support of his contentions are primarily comprised of a single – far from inculpatory – unsent email written years before the events at issue, as well as a handwritten note written months after those events, that the judge in Cole's criminal trials twice ruled to be irrelevant, and therefore inadmissible. Point III, <u>infra</u>.

<u>Second</u>, in his premotion letter, Cole advanced an entirely different motive theory, invoking the purported "possibility[] that Horowitz committed a crime but Cole did not—<i>e.g.</i>, that Horowitz negotiated secret side deals but Cole did not know about or participate in them." Feb. 3, 2026 Letter of Benjamin D. White (Dkt. No. 15; "Cole Counsel's Letter"), at 2.

10

Cole's Amended Complaint, however, does not contain any allegations of fact supporting the "possibility" floated in his counsel's letter; and a pleading cannot survive a motion to dismiss based solely on the plaintiff's speculative assertion it is "possible" there are facts that could sustain the cause of action; rather, the plaintiff must plead such facts. Paro Mgmt., 2025 U.S. Dist. LEXIS 57884, at *6 (quoting Iqbal, 556 U.S. at 678).

Furthermore, Cole's own testimony directly contradicts his counsel's speculation. Cole repeatedly stated under oath he was "certain" there were no oral agreements with GBG respecting any of the GBG transactions. See, e.g., Lurie Aff. Exh. D, at App'x p. 1054 (Trial 2) (Cole: "There was never a secret side deal [for SEA-3]. Everything was in the [written] agreement); id at App'x p. 1046 (Cole: "Q: "Do you know for certain, there were not side agreements with SEA-2?' Cole" "Correct.").

Cole also testified that he – not Horowitz – was personally, and independently, responsible for deciding to make the purportedly corrupt payments and credits to GBG, while declaring that those payments "had 'absolutely no connection' to the SEA-2 and SEA-3 transactions", or any agreements with respect thereto. 158 F.4th at 120 (quoting App'x p. 409 (Trial 1); see also Lurie Aff. Exh. C, at App'x p. 408 (Trial 1) (Cole testifying that he alone authorized givebacks to GBG, with "no obligation"); Lurie Aff. Exh. C, at App'x p. 1038 (Trial 2) (Cole testifying that a $5 million "marketing payment" to GBG was "absolutely not" connected to any oral or other agreement).

Cole's testimony could not be true if, as Cole's lawyers now assert, the payments "possibly" were actually part-and-parcel of a corrupt scheme concerning the SEA 2 and SEA 3 transactions after all.

11

Furthermore, in the opinion supporting the reversal of Cole's conviction, the Second Circuit agreed with Cole's appellate counsel that the proposition that Horowitz, <u>not</u> Cole, was the primary wrongdoer in the alleged scheme was "unrealistic," given that there was <u>no</u> testimony or other evidence in the record to support it. 158 F. 4th at 129.

It is even more unrealistic to posit that the criminal scheme alleged by the government was masterminded and executed by Horowitz without Cole even knowing the scheme existed, given the three witnesses who independently testified that Cole personally negotiated the inculpatory oral agreements at the heart of the scheme.

    II.    <u>The undisputed facts establish multiple independent bases for presuming probable cause Cole cannot rebut</u>.

    A.  <u>The are multiple grounds for presuming probable cause</u>.

    1.  <u>Cole's second trial conviction established a presumption of probable cause</u>.

A criminal conviction, even if overturned on appeal, establishes a presumption of the existence of probable cause in the underlying criminal proceeding. <u>Sibblies v. City of New York</u>, 219 A.D.3d 403, 404-05 (1st Dep't 2023); [4] <u>see</u> <u>Passucci v. Home Depot, Inc.</u>, 67 A.D.3d 1470, 1471 (4th Dep't 2009)  ("As defendants correctly contended in support of their motion, plaintiff's conviction of petit larceny in the underlying criminal proceeding created a presumption of the existence of probable cause for that criminal proceeding despite the fact that the judgment of conviction was later reversed on appeal"); <u>Goddard v. Daly</u>, 295 A.D.2d 314, 315 (2nd Dep't 2002); <u>Savino v. City of New York</u>, 331 F3d 63, 73 (2d Cir 2003).

---

[4] Cole's counsel suggested in his premotion letter that the cited statement of settled New York law regarding the presumption of probable cause arising from a conviction should be disregarded because it was recited in an appellate ruling upholding a grant of summary judgment; that proposition is baseless, and incorrect.

That presumption applies with full force to Cole's conviction following his second trial. Indeed, because the Second Circuit's ruling was based entirely on Cole's Double Jeopardy Clause defense and did <u>not</u> call into question the reliability of any evidence heard by the jury in Cole's second trial, there is, if anything, a greater reason to enforce the presumption of probable cause mandated by settled New York law.

2.  <u>The Judicial fact findings of Horowitz's truthfulness (and Cole's untruthfulness) established a presumption of probable cause</u>.

In connection with his sentencing of Cole, Judge Ramos made a factual finding that Cole perjured himself repeatedly under oath: "I sat through both trials, and, frankly, I believe Mr. Horowitz, and I did not believe you." Lurie Aff. Exh E, at 34 (Cole sentencing hearing transcript); <u>id</u>. at 35 (Cole "provided testimony which was not truthful"). Likewise, in connection with Horowitz's sentencing, Judge Ramos found that Horowitz had been "truthful[], complete[] and reliab[le]". Lurie Aff. Exh. F, at p. 18 (Horowitz sentencing hearing transcript).

Judge Ramos's findings that Horowitz was a truthful and diligent witness in both trials, and that Cole gave knowingly untruthful testimony in each proceeding, at a minimum, establish yet another presumption of probable cause.

3. <u>The GBG witnesses' corroboration established probable cause</u>.

Per the Second Circuit, the "government's case [against Cole] relied primarily on the testimony of three witnesses who allegedly assisted Cole with the fraud: Iconix's former COO (Seth Horowitz) and two GBG executives (Jason Rabin and Jared Margolis)", <u>i.e.</u>, the GBG Witnesses. 158 F. 4th at 119.

13

The GBG Witnesses -- who the Second Circuit described as being in the "center stage" of the government's case, along with Horowitz (158 F. 4th at 122) -- provided testimony supporting three pillars of the government's case against Cole during each trial:

First, "Rabin and Margolis told the juries that, in the SEA-2 and SEA-3 deals, GBG agreed to pay an inflated price because Cole made a firm verbal commitment to return the excess payments at a later time." 158 F. 4th at120; see, e.g., Lurie Aff, Exh. C , at App'x p. 270 (Trial 1) (Rabin: "Mr. Cole said: If you raise the [SEA-2] written agreement's] price by [$]5 million, you can bill it back for marketing."); id. at App'x p. 272 (Trial 1) (Rabin: Cole provided a "firm commitment" of future repayment to GBG in return for increasing the SEA-3 written contract's stated price by $6 million); id. at App'x p. 323 (Trial 1) (Q: "Let me ask you simply, Mr. Margolis, why did the [SEA-2] price increase by $5 million?" Margolis: "Because we were going to get the money back."); id. at App'x p. 325 (Trial 1) (Q: "And why did GBG pay $6 million more [for SEA-3]'?" Margolis: "Because we were [sic] going to get the money back [from Iconix]").

Second, Rabin and Margolis told the juries GBG would not have executed the written agreements for SEA-2 or SEA-3 without receiving oral commitments by Cole to provide millions of dollars in reimbursements or credits. Id. at App'x p. 312 (Trial 1) (Q: "And without Mr. Cole's assurance to send 5 million back as marketing for SEA-2, would you have agreed to increase the purchase price by 5 million" Rabin: "No."); id. at App'x p. 312 (Trial 1) (Q: "And without Mr. Cole's assurance to send or relieve $6 million in obligations on SEA-3, would you have agreed to increase the purchase price?" Rabin: "No."); id. at App'x p. 323 (Trial1) (Q: "Would GBG have been willing to pay $15.9 million [for SEA-2] if there [had] not been that firm commitment from Iconix to return $5 million? Margolis: "No."); id at App'x p. 331 (Trial1)

14

(Q: And if you didn't have that commitment from Iconix to get back the [$]6 million [for SEA-3], would you have recommended that GBG should pay this $21.5 million price?" Margolis: "No.").

Finally, Rabin and Margolis told the juries that Cole provided millions of dollars in cash payments to GBG pursuant to his oral agreements with GBG. Id. at App'x p. 311, 312 (Trial 1) (Rabin: GBG later sent Iconix $5 million in marketing invoices, reflecting the "amount [Cole orally] agreed to pay on account of SEA-2"); id. at App'x p. 389 (Trial 1) (Q: "If GBG had not overpaid by $5 million on SEA-2, would GBG have even billed Iconix for this $5 million in marketing?" Margolis: "No.").

The GBG witnesses' corroboration of Horowitz's testimony on these central issues in dispute was the epitome of probable cause. See, e.g., Franks v. City of New Rochelle, No. 24-CV-539 (KMK), 2025 U.S. Dist. LEXIS 187232 (S.D.N.Y. 2025) (corroborating testimony of third party witnesses voided malicious prosecution claim as a matter of law); Williams v. City of New York, 210 A.D.3d 516 (1st Dep't 2022) ("The claims were correctly dismissed because the officers' testimony and corroborating video evidence established prima facie probable cause for plaintiff's arrest for criminal trespass in the third degree, and plaintiff failed to raise a triable issue of fact."); Flavin v. City of New York, 171 A.D.3d 633, 634 (1st Dep't 2019); Ahearn v. Brachowicz , 13-cv-8007 (SAS)13-cv-8007 (SAS), 2014 U.S. Dist. LEXIS 94586 (S.D.N.Y. July 10, 2014) (Section 1983 case).

Each argument Cole proffers for disregarding the GBG Witnesses' corroboration is meritless.

15

First, Cole contends this Court is required to disregard the GBG Witnesses' corroboration because Cole ignored it in his own pleading. Cole Counsel's Letter, at 2 (asserting the Court cannot consider the corroborating testimony of the GBG witnesses because the testimony is "contrary to the allegations in the Complaint"). Cole is wrong.

The GBG Witnesses' corroborating testimony is: (i) summarized, and quoted from, in the Second Circuit opinion that Cole extensively, but selectively, quotes from in his Amended Complaint; and (ii) recounted verbatim in the transcripts of both criminal trials, which Cole extensively refers to in his Amended Complaint. Under settled precedent, such materials are deemed to be "incorporated … by reference" into a complaint. Gull Keys I LLC v. Fulton Advisory Beef Fund I, LLC, No. 1:23-cv-09058-MKV, 2025 U.S. Dist. LEXIS 169799, at *8 (S.D.N.Y. Sept. 2, 2025) (quoting Chambers v. Time Warner. Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (additional quotation omitted)).[5]

Second, Cole suggests the GBG Witnesses' testimony did not establish probable cause because -- despite the fact the Rabin and Margolis corroborated Horowitz on the central issue in dispute, i.e., whether Cole entered into the undocumented oral agreements with GBG -- the GBG witnesses did not corroborate every element of Horowitz's account. Cole is wrong again.

The GBG Witnesses did not testify about the efforts to hide Cole's oral agreements from Iconix's accountants and other professionals after Cole allegedly entered into them with the GBG

---

[5] This Court can also take judicial notice of Cole's own appellate filings (which also repeatedly acknowledge the GBG Witnesses' corroboration); furthermore, Cole is judicially estopped from challenging the repeated acknowledgements therein that the GBG witnesses provided corroborating testimony. See Robinson v. Concentra Health Servs., 781 F.3d 42, 45-46 (2nd Cir. 2015).

Witnesses. Given, however, that the GBG Witnesses played no role in Iconix's financial reporting activities, there was no reason to expect them to have knowledge about that element of the scheme. Furthermore, Cole's suggestion that a witness's testimony must be corroborated on every issue for the presumption of probable cause to attach is both wrong and nonsensical.

4.  The grand jury's indictment of Cole established an unrebutted presumption of probable cause.

Cole's indictment by a grand jury established yet another, independent, presumption of probable cause, one that can only be overcome by evidence the indictment was procured by fraud, perjury, suppression of evidence, or other bad-faith conduct. Colon v. City of New York, 60 NY2d 7, 82-83 (1983).[6]

Horowitz did not even testify before the grand jury that returned the indictment of Cole, while the corroborating GBG Witnesses did. Cole speculates the grand jury may have been provided with accounts of some of Horowitz's statements to law enforcement authorities (presumably those recounted in FBI "302" memoranda) which Cole conclusorily asserts contained knowing falsehoods.

Despite long having had access to those FBI documents (which were entered into evidence during Cole's first trial),[7] however, Cole fails to identify any false statement(s) therein,

---

[6] See also Johnson v. McMorrow, No. 19-CV-06480 (PMH), 2023 U.S. Dist. LEXIS 20780 (S.D.N.Y. Feb. 7, 2023)  ("When a plaintiff has been indicted by a grand jury, a failure to offer independent, corroborating evidence by the plaintiff is fatal to a malicious prosecution claim"; applicable to such claims under state and federal law).

[7] Lurie Aff. Exh. C, at App'x p. 447 (Trial 1).

let alone allege the basis for his contention they contain knowing misstatements. Therefore, Cole cannot overcome the presumption of probable cause.

B. Cole's allegations fail to overcome the multiple independent presumptions of probable cause.

1. Cole's testimony fails to rebut any of the presumptions of probable cause.

Cole does not allege any facts, other than his own contrary testimony, in support of his contention that Horowitz knowingly lied under oath. Furthermore, Cole's appellate counsel effectively acknowledged that no additional evidence exists, repeatedly stating that – in both trials -- the crux of the case "came down" to whether the jury believed Horowitz, Rabin and Margolis, on the one hand, or Cole, on the other. Cole Opening Appellate Brief, at 15.

Thus, Cole necessarily attempts to ground a malicious prosecution against Horowitz on his contention that the jury in the first trial believed him over Horowitz (and the GBG Witnesses). But that is insufficient, as a matter of law.

A plaintiff's own contrary testimony alone is insufficient to rebut evidence supporting a presumption of probable cause. Johnson v. McMorrow, No. 19-CV-06480 (PMH), 2023 U.S. Dist. LEXIS 20780 (S.D.N.Y. Feb. 7, 2023) (plaintiff's failure to "offer[] anything more than his own version of events without corroboration" defeated malicious prosecution claim as a matter of law); Simmons v. N.Y. City Police Dep't, 97 Fed. Appx. 341 (2nd Cir. 2004) (unpublished) (Section 1983 case).[8]

---

[8] See also Merrill v. Copeland, No. 19-CV-01240, 2022 U.S. Dist. LEXIS 141117 (N.D.N.Y. Aug. 9, 2022) (plaintiff's failure to explain how the proceedings before the grand jury were "tainted" insufficient to rebut presumption of probable cause created by grand jury indictment; Section 1983 claim), aff'd, 2024 U.S. App. LEXIS 746 (Jan. 11, 2024); Gutierrez v. New York,

18

2.  <u>Cole's initial partial acquittal does not rebut the presumptions of probable cause.</u>

Neither does Cole's partial acquittal in his first trial rebut any of the foregoing presumptions of probable cause.

Under New York law, an acquittal "does not" establish that that a witness called by the prosecution "fabricated evidence…. Much more is required." <u>Aretakis v. Durivage</u>, Civ. No. 1:07-CV-1273 (RFT), 2009 U.S. Dist. LEXIS 7781, at \*48 (N.D.N.Y. Feb. 3 2009). While the first of the two juries concluded that the government failed to meet its burden of proving guilt beyond a reasonable doubt on certain criminal charges, the first jury's verdict did <u>not</u> constitute a determination that Horowitz made knowingly false statements.

III.    <u>Cole's makeweight "actual malice" allegations are irrational and threadbare.</u>

A necessary element of the cause of action for malicious prosecution is "actual malice." <u>Martin v. City of Albany</u>, 42 N.Y.2d 13, 16 (1977) , or "malice in fact" (Prosser, Torts (4th ed, 1971), § 119, p 847). While the requisite malice may be proven by circumstantial evidence, <u>Martin</u>, 42 N.Y.3d. at 17, and may thus in a sense be denominated "implied" or "inferred" in certain cases, it is far greater than the implied-by-law "malice" which is relevant to a defamation action, Prosser, § 113, at 771-772; § 119, at 847-849.

---

No. 18-CV-03621, 2021 U.S. Dist. LEXIS 33013, at \*37 (E.D.N.Y. Feb. 22, 2021) ("Plaintiff has adduced no evidence from which a reasonable juror could conclude that Defendants procured his indictment through fraud, perjury, or other bad faith."); <u>Soto v. City of New York</u>, 132 F. Supp. 3d 424, 456 (E.D.N.Y. 2015<u>)</u> (presumption unrebutted where the "[p]laintiff merely surmises there was bad faith . . . [and] has neither sought nor produced the grand jury minutes in this matter precluding any further evaluation of what occurred before the grand jury"); <u>Peterson v. Regina</u>, 935 F. Supp. 2d 628, 643 (S.D.N.Y.) (finding plaintiff's offer of his "suspicions of impropriety as proof of the defendants' misconduct before the grand jury" insufficient to rebut presumption), <u>report and recommendation adopted</u>, 935 F. Supp. 2d 628 (S.D.N.Y. 2013).

19

Cole offers only the most threadbare allegations in support of his implausible theory that Horowitz pled guilty to a fictional fraud because he was overcome with hatred of Cole.

First, Cole asserts Horowitz drafted multiple unsent "letters" (Am. Compl. ¶ 18) purportedly evincing "deep-seated hatred for Cole" (Am. Compl. ¶ 19) that supposedly compelled Horowitz to invent (and then plead guilty to) a non-existent fraud scheme and thereafter commit perjury in two trials, thereby placing himself at additional criminal peril.

In his pleading, however, Cole repeatedly (and misleadingly) quotes from and paraphrases a single unsent email, implying that his citations come from multiple documents. Furthermore, Cole fails to disclose the date of that single document. It was written in June 2012, years before Horowitz made his purportedly false admissions of criminal culpability to the government. Lurie Aff. Exh. G.

While the single such document contains criticisms of Cole's management style, it hardly expresses a "deep-seated" hatred that could plausibly have so "overwhelm[ed]" (Amended Compl. ¶ 19) Horowitz as to lead him to invent and plead guilty to a fake crime years later, solely to cause harm to Cole.

Second, Cole also grounds his claim on a handwritten note he asserts proves Horowitz had a compulsion to engage in "knowingly wrong" conduct. But the document Cole relies on was written, at a minimum, written months after Horowitz left Iconix and did not call the truthfulness of Horowitz's testimony into question. Judge Ramos, accordingly, twice ruled the document to be irrelevant, and barred Cole from using it for impeachment. Lurie Aff. Exh. C, at App'x p. 243 (Trial 1); Lurie Aff. Exh D, at  App'x p. 892-93 (Trial 2).

<u>Finally</u>, Cole argues that, because Horowitz made several cash withdrawals, none of which Cole even claims had anything to do with the subject matter of the case, he must have made up a criminal securities fraud. Lurie Aff. Exh. C , at App'x p. 240, 241 (Trial 1). Cole's counsel did not even present this makeweight evidence during the second criminal trial.

In his premotion letter, Cole's counsel suggested this Court can disregard the paucity of Cole's purported malice allegations because malice can be inferred, at the pleading stage, <u>if</u> the plaintiff adequately alleges the Defendant made knowing and intentional misstatements. Cole Counsel's Letter, at 3. Cole, however, fails to make any such allegations against Horowitz, as explained above. Indeed, Cole relies on the very same threadbare allegations to substantiate his claim that Horowitz had a motive to lie.

IV.     <u>Cole fails to allege that Horowitz overcame the volition of federal prosecutors</u>.

"New York law imposes a presumption that a prosecutor exercises his own independent judgment in deciding to prosecute a criminal defendant." <u>Gilman v. Marsh & McLennan Cos.</u>, 868 F. Supp. 2d 118, 128-29 (S.D.N.Y. 2012).

Accordingly, in a malicious prosecution case brought against a non-government defendant, the plaintiff must plead and prove the defendant overcame the "volition" of the prosecutors. <u>See</u> <u>Dantas v. Citigroup</u>, 779 F. App'x 16, 23 (2d Cir. 2019) (summary order); <u>Lupski v. County of Nassau</u>, 32 A.D.3d 997, 998 (2nd Dep't 2006); <u>Gilman</u>, 868 F. Supp. 2d at 128-29 (to advance a malicious prosecution claim against a civilian defendant, the plaintiff "must

allege that Defendants 'affirmatively induced the [prosecutor] to act . . . to the point where the [prosecutor] not acting of his own volition.'" (emphasis added)).[9]

During trial testimony. Cole asserted  that the government engaged in an elaborate coercion scheme to force Horowitz, as well as Rabin and Margolis, to "lie" under oath, and that the DOJ otherwise set out to violate his constitutional rights, a contention that is at direct odds with Cole's assertion in his Amended Complaint that Horowitz overcame the volition of the prosecutors. Amended Compl. ¶ 103.

Cole testified that the government "threatened" and otherwise wrongfully caused each of the two GBG witnesses – as well as Horowitz -- to provide inculpatory testimony against him, stating that each of the three testified to the existence of the oral agreements solely because the U.S. Attorney's Office coerced the "three people." Lurie Aff. Exh. D , at App'x p. 1076 (trial 2); accord id. at 1066 (trial 2) (Cole asserting that the government "definitely got them both [meaning Rabin and Margolis] to lie"); id. at 1076 (trial 2) (Cole asserting each of Horowitz, Rabin and Margolis purportedly falsely testified to the existence of the oral agreements because they were "being threatened" by the government).

Furthermore, in his Amended Complaint, Cole accuses the government of "unconstitutionally and unfairly" retrying him (Am. Compl. ¶ 53), once again asserting that the Department of Justice was the malicious actor, a contention that it entirely at odds with Cole's

---

[9] See also Jessamy v. Jakasal, No. 21-214, 2022 U.S. App. LEXIS 14436, at *7 (2d Cir. May 26, 2022) (unpublished) ("To establish a malicious prosecution claim against a private party, . . . the private party must have 'affirmatively induced the officer to act, such as taking an active part in the arrest . . . to the point where the officer is not acting of his own volition.'") (quoting Moorhouse v. Standard,124 A.D. 3d 1 (1st Dep't 2014)).

contention, in the same pleading, that Horowitz maliciously "continued" the DOJ's prosecution of him.[10]

Conclusion

For all of the reasons stated herein, and in the accompanying affirmation, we respectfully submit that the Amended Complaint herein should be dismissed, as against Horowitz, with prejudice.

Dated: March 27, 2026
Brooklyn, New York

                Respectfully submitted,


                LAW OFFICE OF DAVID R. LURIE, PLLC


                By: _____/s/_____

                David R. Lurie
                194 President Street
                Brooklyn, NY 11231
                347-651-0194

                *Attorneys for Defendant Seth Horowitz*

---

[10] Although Cole was acquitted of the Indictment's Interference Count, the independently dispositive arguments set forth in this Point, was well as in Points I, II(A)(1), and (4) and III, supra, apply with full force to Cole's malicious prosecution theory insofar as it arises out of the Interference Count in the government's indictment.

<u>Certificate of Compliance</u>

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 6,311 words (exclusive of the caption, any index, table of contents, table of authorities, signature blocks and this certificate).