**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NEIL COLE,

     *Plaintiff,*

  v.

              Case No. 1:25-cv-09357

ICONIX INTERNATIONAL INC. f/k/a/
ICONIX BRAND GROUP, INC., and
SETH HOROWITZ,
     *Defendants*.

**PLAINTIFF NEIL COLE'S MEMORANDUM OF LAW**
**IN OPPOSITION TO ICONIX INTERNATIONAL INC.'S**
**PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 3

ARGUMENT ........................................................................................................................ 6

    I.        The Complaint States a Claim for Breach of the Advancement Agreement (Count III).................................................................................................................................6

    II.      The Complaint States a Claim for a Breach of the Implied Covenant of Good Faith and Fair Dealing (Count IV). ................................................................................9

         A.    The Complaint States an Obstruction-Based Implied Covenant Claim............ 9

         B.    The Complaint States a Recoupment-Based Implied Covenant Claim........... 12

    III.     The Complaint States a Claim for Unjust Enrichment (Count V)...........................16

    IV.    The Complaint States Claims for Punitive and Consequential Damages. ..............20

         A.    The Complaint States a Claim for Punitive Damages................................... 20

         B.    The Complaint States a Claim for Consequential Damages. .......................... 24

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*25 Bay Terrace Assocs., L.P. v. Pub. Serv. Mut. Ins. Co.*, 144 A.D.3d 665 (2d Dep't 2016) ........ 20

*900 Unltd., Inc. v. MCI Telecom. Corp.*, 626 N.Y.S.2d 188 (1st Dep't 1995) ............................. 19

*AEA Middle Mkt. Debt Funding LLC v. Marblegate Asset Mgt., LLC*, 214 A.D.3d 111
    (1st Dep't 2023)...................................................................................................................11

*Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448 (S.D.N.Y. 2016)...................................... 18

*Ashland Mgt. v Janien*, 82 N.Y.2d 395 (1993)................................................................... 24

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573 (2d Cir.
    2006) .............................................................................................................................. 16

*Bi-Economy Mkt., Inc., v. Harleysville Ins. Co. of N.Y.*, 856 N.Y.S.2d 505 (2008)................ 24, 25

*Botbol v. Frosch Intl. Travel Inc.*, 222 A.D.3d 471 (1st Dep't 2023) ........................................ 12

*Brown v. Cara*, 420 F.3d 148 (2d Cir. 2005).................................................................... 15

*Campione v. Campione*, 942 F. Supp. 2d 279 (E.D.N.Y. 2013)..................................................... 19

*Coggins v. Cnty. of Nassau*, 988 F. Supp. 2d 231 (E.D.N.Y. 2013) ............................................... 3

*Cohen v. Dunne*, 2017 WL 4516820 (S.D.N.Y. Sept. 27, 2017)................................................... 20

*Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353 (2d Cir. 2013) ...................................................... 19

*Cordero v. Transamerica Annuity Serv. Corp.*, 39 N.Y.3d 399 (2023) ......................................... 15

*Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384 (1995)...................................................11, 12

*Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954 (1986)......................... 21

*DNF Assocs., LLC v. HSBC Bank USA, N.A.*, 2024 WL 3426777 (S.D.N.Y. July 16, 2024)....... 25

*Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395 (E.D.N.Y. 2012)......... 12, 14, 15

*Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322
    (S.D.N.Y. 2023) ............................................................................................................... 17

*Gallo v. Inter-Con Security Systems Inc.*, 2021 WL 3913539 (S.D.N.Y. Sept. 1, 2021) ............... 8

*Gipe v. DBT Xpress, LLC*, 150 A.D.3d 1208 (2d Dep't 2017) ...................................................... 24

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996) .......................................................... 7

*Havel v. Kelsey-Hayes Co.*, 83 A.D.2d 380 (4th Dep't 1981) ...................................... 12

*Hobish v. AXA Equitable Life Ins. Co.*, 43 N.Y. 3d 442 (2025) ...................................... 21

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132 (2009) .................................. 19

*In re Alexander*, 2026 WL 74280 (S.D.N.Y. Jan. 9, 2026) ........................................... 22

*Jia Chen v. Antel Communications*, LLC, 2015 WL 5793404 (E.D.N.Y. Sept. 30, 2015) ............. 9

*Joseph Sternberg, Inc. v. Walber 36th St. Assocs.*, 187 A.D.2d 225 (1st Dep't 1993) .................. 17

*Kaplan Grp. Investments LLC v. A.S.A.P. Logistics Ltd.*, 694 F. Supp. 3d 374 (S.D.N.Y. 2023) . 10

*Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247 (S.D.N.Y. 2008) ............................................ 19

*Liu Jo S.P.A. v. Jenner,* 630 F. Supp. 3d 501 (S.D.N.Y. 2022) ......................................... 11

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.,* 244 F.R.D. 204
    (S.D.N.Y. 2007) ......................................................................................... 12

*Marky's Martial Arts, Inc. v. FC Online Marketing, Inc.*, 2022 WL 18276016
    (S.D.N.Y. Sept. 16, 2022) ......................................................................... 23

*Martin Hilti Fam. Tr. v. Knoedler Gallery*, LLC, 137 F. Supp. 3d 430 (S.D.N.Y. 2015) ............. 20

*Matter of Legion of Christ, Inc. v. Town of Mount Pleasant*, 151 A.D.3d 858 (2d Dep't 2017) .. 13

*Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397 (S.D.N.Y. 2002) ............................................ 19

*Mid-Hudson Anesthesiologists, P.C. v. St. Luke's Cornwall*, 2026 WL 734947
    (S.D.N.Y. March 16, 2026) ......................................................................... 23

*Perlbinder v. Vigilant Ins. Co.*, 190 A.D.3d 985 (2d Dep't 2021) ......................................... 20, 21

*Premium Prods., Inc. v. O'Malley*, 246 A.D.3d 948 (2d Dep't 2026) ......................................... 23

*Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331 (S.D.N.Y. 2021) ............................................ 13

*Rocanova v. Equitable Life Assur. Socy. of U.S.*, 83 N.Y.2d 603 (1994) .............................. 21, 23

*Singh v. City of New York*, 139 N.Y.S.3d 307 (2020) ....................................................... 13

iii

*Smart Coffee, Inc. v. Sprauer*, 140 N.Y.S.3d 376 (Civ. Ct. N.Y. 2021) ........................................ 23

*Suffolk Sports Ctr., Inc. v. Belli Constr. Corp.*, 212 A.D.2d 241 (2d Dep't 1995) ........................ 22

*Union Bank, N.A. v. CBS Corp*, 2009 WL 1675087 (S.D.N.Y. June 10, 2009) ............................ 17

*URP Maiden Lane LLC v. Valley National Bank*, 244 A.D.3d 509 (1st Dep't 2025) ................... 10

*Zicherman v. State Farm Fire & Cas. Co.,* 698 F. Supp. 3d 564 (E.D.N.Y. 2023)....................... 20

**PRELIMINARY STATEMENT**

In 2021, a federal jury acquitted Plaintiff Neil Cole of a sprawling securities fraud conspiracy concerning false allegations of misconduct while Cole was the CEO of Defendant Iconix Brand Group ("Iconix), a company he founded. The entire endeavor was orchestrated by a supposedly spurned and vindictive Iconix executive, Seth Horowitz. In 2025, Cole's horrific, near-decade long ordeal ended when the U.S. Court of Appeals for the Second Circuit dismissed the entire criminal case against him on the basis of his acquittal. As is typical for senior executives, Iconix was contractually obligated to assist Cole with his defense of these proceedings, including primarily by indemnifying his legal costs. But Iconix not only failed to comply with that obligation (despite a Court order requiring it to do so)—which forced Cole to spend millions of his own dollars defending himself against these false allegations—it also took every opportunity to harm Cole and seek to secure his conviction, all in effort to scapegoat and serve its own financial interests. To name the most egregious examples: it withheld evidence that it knew exculpated him, obstructed his ability to prepare for and respond to the government's investigation, and forced his trusted legal counsel to withdraw from its representation at a hugely critical moment. As made clear in the Complaint in this action, this conduct amounts to claims sounding in breach of contract, quasi-contract, and longstanding principles of equity and fairness. Iconix moves to dismiss certain of these claims at the pleadings-stage, but its arguments are meritless.

*First*, Iconix takes issue (in part) with what are its straight-forward and unambiguous contractual obligations to indemnify Cole. Specifically, Iconix was obligated to indemnify Cole's legal costs pursuant to two separate sources of contractual obligations: (i) the Company's By-Laws; and (ii) a separate Advancement Agreement Iconix and Cole entered into (when Iconix failed to comply with its obligations under the By-Laws). Through the instant motion, Iconix seeks

1

to dismiss claims that it breached the latter Advancement Agreement; it does not move to dismiss claims that it breached the By-Laws. But its arguments as to the Advancement Agreement simply misread the agreement and the Complaint.

*Second*, Iconix moves to dismiss the Complaint's claim for breach of the implied covenant of good faith and fair dealing. This claim similarly contains two components, *i.e.*, that Iconix breached its implied obligation to (i) refrain from actively harming its executives' abilities to defend themselves in actions for which they are indemnified; and (ii) return electively recouped executive compensation when its basis for recoupment disappears. Iconix primarily argues that these obligations are not contained in a contract—but that is precisely why they make out an *implied* claim. Iconix then challenges the veracity of the facts the Complaint alleges to establish why Iconix's conduct in harming Cole's defense and seeking his recoupment were not in good faith and were not fair dealing. But this is not Iconix's opportunity to present its (inaccurate) view of the facts—that is for the jury to decide.

*Third*, Iconix moves to dismiss the claim for unjust enrichment concerning its retention of improperly recouped funds. Iconix again argues that the claim should fail because Cole's entitlement to a return of the recouped funds is not contained in a contract. But again, that is precisely why the Complaint brings this as a *quasi*-contract claim based in *equity* and *fairness*. And Iconix can proffer no argument—especially one cognizable at this stage—as to why it is fair for Iconix to retain Cole's executive compensation (but not, for example, Horowitz's, despite Horowitz's extant securities fraud conviction) following his acquittal and dismissal of the criminal case.

*Finally*, Iconix moves to dismiss the Complaint's claims for punitive and consequential damages. Its arguments, however, significantly downplay the egregious and foreseeable

consequences of Iconix's betrayal of Cole, while ignoring swaths of allegations in the Complaint that make clear that Iconix committed an independent tort and harmed the public generally.

## FACTUAL BACKGROUND[1]

Neil Cole founded Iconix in 2005 and built it into a multi-billion-dollar branding empire over nearly 25 years.  Complaint ("Compl.") ¶¶ 2, 10.  While serving as Iconix CEO, Cole was falsely accused of securities fraud and other crimes in connection with two joint venture transactions—known as SEA-2 and SEA-3—that had been negotiated by Seth Horowitz, Cole's one-time protégé and former COO of Iconix.  *Id.* ¶¶ 11, 26-27.  In an effort to protect himself and harm Cole, Horowitz falsely claimed that Cole had conspired with Iconix's overseas counterparties to create so-called secret side deals—which Cole had supposedly done to artificially inflate Iconix's revenue—and then tried to cover up the deals by destroying documents and ordering Horowitz to do the same.  *Id.* ¶¶ 30-34.  Horowitz repeatedly told investigators, law enforcement, and prosecutors this false story, and principally based on these false reports, Cole was indicted by a federal grand jury and subjected to a criminal trial for charges related to conspiracy to commit securities fraud, securities fraud, and obstruction of justice (the "Proceedings").  *Id.* ¶¶ 37-38.

Cole was tried twice.  At his first trial, the jury acquitted Cole of the top conspiracy charge and the obstruction count, and was hung on the remaining counts, an outcome the Second Circuit later recognized as reflecting the jury's outright rejection of the government's core theory.  *Id.* ¶¶

---

[1] Iconix's skewed statement of "facts" urges the Court to take judicial notice of certain "public records," "even if the corresponding documents are not attached to or incorporated by reference in the complaint."  MTD n.1.  Although Iconix fails to identify with specificity the entirety of the public records to which it refers, Iconix incorporates into its motion certain records, such as filings from the SEC and FTC.  Iconix also selectively quotes from Cole's sentencing proceeding in *United States v. Cole*, No. 19-cr-869 (S.D.N.Y.), following Cole's unconstitutional conviction.  While the Court can take judicial notice of the existence of these public records or proceedings, the Court may not consider these documents "for the truth of the facts asserted therein," *Coggins v. Cnty. of Nassau*, 988 F. Supp. 2d 231, 242 (E.D.N.Y. 2013).

47-52. The Government unconstitutionally retried Cole on the hung counts in violation of the Double Jeopardy Clause, and the Government secured convictions against Cole. *Id.* ¶ 53.

Although Iconix was contractually obligated to defend Cole against Horowitz's false allegations in the Proceedings, Iconix quickly turned on Cole, and abandoned its obligations for its own self-interest and enrichment. *Id.* ¶¶ 58-59. On January 28, 2008, Iconix and Cole entered into an Employment Agreement. *Id.* ¶ 110. Paragraph 8 of the Employment Agreement provides in relevant part that, "[d]uring the Term and thereafter, the Company shall indemnify and hold harmless the Executive and his heirs and representatives as, and to the extent, provided in the Company's by-laws." *Id.* ¶ 114. When Cole departed Iconix, Iconix and Cole entered into a Separation Agreement dated December 29, 2016. *Id.* ¶ 111. Paragraph 10 of the Separation Agreement provides in relevant part that, "notwithstanding the termination of the Employment Agreement, the Company continues to be bound by Section 8 of the Employment Agreement (including, without limitation, any rights to indemnification and advancement to the extent set forth in the Company's by-laws as in effect as of the Resignation Date"). *Id.* ¶ 114. The "by-laws" referred to in both the Employment Agreement and the Separation Agreement required Iconix indemnify Cole and advance his legal fees. *Id.* ¶ 115.

Iconix's indemnification and advancement obligations applied to the expenses Cole incurred defending himself in the Proceedings, the purpose of which was to ensure that Cole, a high-level executive, could meaningfully defend himself in any proceeding arising from his role at Iconix. *Id.* ¶¶ 60-61. At the outset, Iconix acknowledged its obligations and advanced Cole the millions of dollars in legal expenses he incurred, principally consisting of fees charged by his chosen counsel, Paul, Weiss, Rifkind, Wharton & Garrison ("Paul Weiss"). *Id.* ¶ 63.

4

Despite Cole's full performance under the contracts, Iconix's compliance came to an abrupt halt on the eve of Cole's first criminal trial. *Id.* ¶ 64. Iconix embarked on a calculated course of conduct designed to obstruct Cole's ability to defend himself—conduct driven by Iconix's self-interest in securing Cole's conviction so that it could, among other things, recover the millions of dollars it had already advanced. *Id.* ¶¶ 65, 96. Iconix unilaterally and without justification ceased advancing Cole's legal fees and expenses in violation of its contractual obligations, forcing Cole to file suit and seek emergency injunctive relief, in which he successfully obtained an order from a New York State court, holding that Cole had a "clear, contractual right to advancement" (the "PI Order"). *Id.* ¶¶ 69-70. Iconix also refused to provide Cole's defense team with exculpatory evidence gathered by its own Special Committee during an internal investigation of the SEA-2 and SEA-3 transactions and furnish Cole with any documents before his SEC interview. *Id.* ¶¶ 66-67.

In violation of the PI Order, prior to Cole's second trial, Iconix told Cole it would refuse to advance fees if he re-retained his counsel of choice at Paul Weiss—a condition Iconix had no contractual right to impose and which forced Cole to retain new lawyer. *Id.* ¶¶ 71-74. Iconix further conditioned advancement for the second trial on Cole's agreement to a $5,000,000 cap on legal fees—again, a condition for which Iconix had no contractual basis. *Id.* ¶ 75. Cole, facing imminent trial with preparations already severely disrupted, had no practical choice but to agree. *Id.* ¶ 76. The parties memorialized this arrangement in the Advancement Agreement dated June 7, 2022, which included a required payment schedule. *Id.* ¶¶ 77, 120. Despite Cole's full performance, Iconix failed to comply with the payment schedule and failed to pay $1,760,000 in required installments under the Advancement Agreement, without justification. *Id.* ¶¶ 80, 81, 123. To date, Cole continues to incur legal expenses for which Iconix is responsible, including legal expenses to cover the instant action. *Id.* ¶ 84.

Iconix's efforts to obstruct and harm Cole's ability to defend himself in the Proceedings stem from Iconix's self-interested efforts to immediately turn on Cole in the wake of Horowitz's false accusations. Without any basis, Iconix immediately assumed that Cole had done something improper in connection with SEA-2 and SEA-3. *Id.* ¶ 87. To account for that incorrect assumption, Iconix chose to restate its financial disclosures and elected to recoup over $7,000,000 in incentive-based compensation from Cole—$2,175,000 in cash and 575,127 shares of Iconix stock then worth approximately $5,100,000—representing compensation Cole had legitimately earned based on Iconix's performance between 2012 and 2014. *Id.* ¶¶ 88-89. Iconix took no similar action against Horowitz or others involved in the same transactions, despite their compensation being calculated by the same or similar formula. *Id.* ¶ 90. Iconix arbitrarily undertook its efforts to recoup Cole's incentive-based compensation as part of its efforts to protect its reputation and protect itself financially.

Despite Iconix's efforts to obstruct Cole's defense and secure a conviction against him, in October 2025, the U.S. Court of Appeals for the Second Circuit unanimously vacated those convictions and ordered dismissal of the indictment in full. *Id.* ¶¶ 53-54. On January 12, 2026, the district court entered the vacatur and dismissal. *Id.* ¶¶ 55–56.

## ARGUMENT[2]

### I.    The Complaint States a Claim for Breach of the Advancement Agreement (Count III).

Iconix argues the Complaint "failed to allege facts that . . . would demonstrate he is owed the amount he claims is due under the Advancement Agreement." MTD. 14. That argument is meritless.

---

[2] Iconix notably does not move to dismiss Cole's Count II of Cole's complaint for breach of the employment agreement, separation agreement, and by-laws.

Under New York law, a party has pled a breach of contract claim when it alleges the following: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). While difficult to parse, Iconix appears to argue that Cole has failed to sufficiently allege damages. Specifically, Iconix appears to argue that Cole failed to allege facts that he is owed $1.76 million under the Advancement Agreement. But no faithful reading of the Complaint can lead to that conclusion. In fact, the Complaint supports this claim with several detailed and specific allegations concerning the sum owed to Cole under the Advancement Agreement, including:

- Cole and Iconix entered into the Advancement Agreement, which included a required payment schedule for $5,000,000 in fees; Compl. ¶ 77.

- Although Iconix made certain of the required payments under the agreed-upon payment schedule, Iconix failed to make a single payment to Cole after it paid an installment on October 1, 2022; *id*. ¶ 79.

- Iconix did not offer any justification for its refusal to advance any legal expenses after October 1, 2022, and that no such justification existed, *id*. ¶ 81; and

- "Iconix failed to make payments for legal fees contained in the Advancement Agreement in the amount of $1,760,000, and Cole instead had to make those payments himself." *Id*. ¶ 123.

To be clear, Cole plainly delineates the fees covered by the Advancement Agreement's $5 million cap, and those not covered by the $5 million cap. *See, e.g.*, *id*. ¶ 78 ("The Advancement Agreement made clear that it did not impact Iconix's obligation (i) to pay legal expenses other than legal fees or (ii) to pay legal expenses (including fees) that Cole might incur ***after the second trial*** (e.g., expenses incurred for sentencing and appeal)") (emphasis added). And Iconix's efforts to inject any doubt into Cole's unambiguous allegations that he is owed $1.76 million under the Advancement Agreement fails.

7

Iconix next argues that Cole was required to plead his breach of contract claim with additional specificity. That argument, however, is untethered from the law. Iconix first analogizes Cole's so-called "pleading deficiencies" to those in *Gallo v. Inter-Con Security Systems Inc.*, 2021 WL 3913539 (S.D.N.Y. Sept. 1, 2021), but Iconix's reliance on *Gallo* is odd. In *Gallo*, a *pro se* plaintiff asserted that the defendant insurance company was required pursuant to a settlement agreement to reimburse him for $1,250 in medical expenses. The problem he ran into, however, was that nothing in the settlement agreement remotely called for that reimbursement. As the Court concluded: "Plaintiff has not identified any provision of the Settlement Agreement obligating Defendant to make a payment of $1,250. And the Court has carefully reviewed the Settlement Agreement, and has been unable to identify any such provision." *Id.* at *9. Despite the lack of any contractual provision entitling plaintiff to relief, however, the Court noted that the defendant appeared to concede in its legal briefing "that it was obligated to make this payment to Plaintiff" pursuant to some obligation (not in the contract or alleged in the complaint) but only if plaintiff had provided "the necessary documentation and receipts to trigger the reimbursement process." *Id*. The Court noted, however, that there was no indication (in the complaint or otherwise) that the plaintiff had complied with this "trigger," and thus the court dismissed the breach claim on this theory. *Gallo* is thus nothing like this case. For one, Cole's right to reimbursement of legal fees is obviously (and carefully) contained within an agreement: as relevant here, the Advancement Agreement. And, unlike in *Gallo*, there is no "trigger" requiring that payment (other than Iconix's signature on the agreement).[3] Indeed, the Advancement Agreement is quite simple: Iconix was to

---

[3] Noticeably, Iconix has (wisely) abandoned arguments it made in its pre-motion letter that there were any "triggers" to reimbursement. For example, Iconix argued that Cole was required to allege certain required "prerequisites" to advancement, including "prompt notice, an executed undertaking, and cooperation with Iconix's participation rights." ECF No. 12. But (as Iconix has undoubtedly come to understand) none of the agreements at issue—and certainly not the Advancement Agreement—contain any of those so-called "prerequisites."

pay $5,000,000 on dates certain.  And the Complaint's claim for breach of the Advancement

Agreement is equally simple:  Iconix did not make certain of those payments on those dates certain

(or ever) in an amount totaling $1,760,000.    Iconix's reliance on *Jia Chen v. Antel*

*Communications*, LLC, 2015 WL 5793404 (E.D.N.Y. Sept. 30, 2015) fares no better.  In *Jia Chen*

(like in *Gallo* but unlike here), the plaintiff failed to allege any entitlement under the relevant

employment contract for the vast majority of damages alleged in the complaint.  *Id.* at *5.  Here,

however, Cole has unequivocally alleged entitlement to $1.76 million under the Advancement

Agreement, which Iconix unjustifiably withheld from Cole.

II.     **The Complaint States a Claim for a Breach of the Implied Covenant of Good Faith and Fair Dealing (Count IV).**

The Complaint alleges that contained within the Employment Agreement and the

Separation Agreement was an implied understanding that: (i) Iconix would not obstruct Cole's

ability to defend himself in any proceeding for which he was indemnified, and (ii) Iconix would

return incentive-based compensation it elected to recoup from Cole following a restatement if

Iconix later learned that Cole bore no responsibility for the restatement (as confirmed by a decision

of the Second Circuit).  Iconix argues that this claim should be dismissed for two reasons: (i) the

Complaint's obstruction-based claim is duplicative of its breach of contract claim; and (ii) the

Complaint's recoupment-based claim relies on a repayment obligation that does not appear in and

cannot reasonably inferred from the governing agreements.  Both arguments are meritless.

A.     **The Complaint States an Obstruction-Based Implied Covenant Claim.**

Iconix first argues that the Complaint's obstruction-based implied covenant claim is

duplicative of the Complaint's breach of contract claims.  But Iconix is incorrect because the

Complaint's implied covenant claim alleges vastly distinct conduct and damages from the breach

of contract claims.  Specifically, while an implied covenant claim cannot lie when "a breach of

9

contract claim, based on the same facts, is also pleaded," an implied covenant claim survives a motion to dismiss "if it is based on allegations different from those underlying the accompanying breach of contract claim." *See. e.g.*, *Kaplan Grp. Investments LLC v. A.S.A.P. Logistics Ltd.*, 694 F. Supp. 3d 374, 388 (S.D.N.Y. 2023) (citation omitted).  That is the case here.

Independent from its breach of contract claims, the Complaint alleges that the very purpose of the indemnification obligations under the Employment and Separation Agreements was to ensure that Cole had the ability to meaningfully defend himself in any proceeding relating to his executive position at Iconix.  Compl. ¶¶ 60-63.  Given this purpose, a reasonable person in Cole's position would be justified in understanding that Iconix would not purposefully obstruct Cole's ability to defend himself in any proceeding for which Cole is indemnified.  *Id.* ¶¶ 60-63.  Yet, as the Complaint alleges, Iconix undertook deliberate efforts to obstruct Cole's ability to defend himself including by: (i) refusing to cooperate with Cole's legal defense, *id.* ¶ 66; (ii) refusing to provide the defense with exculpatory evidence in its possession, *id.*; and (iii) subjecting Cole to an SEC interview, while refusing to provide him with any documents in advance of the interview, *id.* ¶ 67.  These efforts significantly hindered Cole's ability to benefit under the Agreements.

Courts routinely sustain implied covenant claims in this context.  For example, in *URP Maiden Lane LLC v. Valley National Bank*, 244 A.D.3d 509 (1st Dep't 2025), the First Department rejected an argument that an implied covenant claim was duplicative of a breach of contract claim where the plaintiff alleged "that defendants' conduct undermined plaintiff's reasonable expectation that defendants would apprise it of information necessary to allow it to assess whether [the agreement] had been breached and that defendants would not take steps to hinder plaintiff's ability to receive the fruits of the agreement."  244 A.D.3d at 510.  *UPR Maiden Lane LLC* is not an outlier.  In *Demetre v. HMS Holdings Corp.*, 127 A.D.3d 493, 494 (1st Dep't 2015), for example,

the First Department likewise held that an implied covenant and breach of contract claim were not duplicative where the plaintiff alleged that the defendant "in bad faith, engaged in acts that had the effect of destroying or injuring plaintiffs' right to receive "the fruits of the contract." (quoting *Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384, 389 (1995)); s*ee also AEA Middle Mkt. Debt Funding LLC v. Marblegate Asset Mgt., LLC*, 214 A.D.3d 111, 113 (1st Dep't 2023) (finding implied covenant claim not duplicative where plaintiff alleged bad faith conduct on behalf of defendants in conspiring to manufacture a restructuring process that deprived plaintiffs of the benefit of their bargain under an agreement).

Iconix next argues that the Complaint's implied covenant claim should be dismissed because the Complaint seeks to recover damages that are "intrinsically tied to the damages allegedly resulting from the breach of contract." MTD 16. But that is simply incorrect. To support this argument, Iconix does nothing more than cite to *Liu Jo S.P.A. v. Jenner,* 630 F. Supp. 3d 501, 520 (S.D.N.Y. 2022), but that case is unavailing. There, the court held that the alleged implied covenant and breach of contract damages were "intrinsically tied" because "both amounts derive[d] from the contract price." *Id*. But that is not at all the case here. Cole's damages that flow from Iconix's obstruction-based breach of the implied covenant claim—*e.g.*, Cole being forced to change counsel on the eve of his second trial, the disruption to his trial preparation, and the resulting (subsequently overturned) conviction—are not damages that flow from the Employment or Separation Agreements. That difference in damages sought is made plain in the allegations relating to each claim. The Complaint's breach of contract claims seeks reimbursement for legal fees that Cole was forced to pay himself in light of Iconix's breaches; by contrast, the

11

Complaint's obstruction-based implied covenant claim seeks damages relating to the harms Iconix purposefully caused by obstructing Cole's defense throughout the Proceedings.[4]

### B.    The Complaint States a Recoupment-Based Implied Covenant Claim.

Iconix argues that the Complaint's recoupment-based implied covenant claim should be dismissed because: (i) it relies on a duty that does not exist in the contract, and (ii) the Separation Agreement forecloses that implied covenant claim by "expressly resolving the recoupment and leaving no contractual basis for the repayment Cole seeks."  MTD 16.  Iconix, however, fundamentally misunderstands both the Complaint's well-pled allegations and relevant law.

*First*, Iconix appears to argue that the language of the Employment Agreement does not mention the "return of compensation once recouped," and thus, it argues, the implied covenant claim fails.  MTD 17-18.  But, of course, an implied covenant claim need not (and never does) rely on the express terms of a contract.  Indeed, Iconix's contention runs counter to the animating purpose of an implied covenant claim, which encompasses obligations that, while not expressly stated in a contract, are necessary to give effect to the parties' reasonable expectations at the time of contracting.  *Dalton*, 87 N.Y.2d at 389; *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 407 (E.D.N.Y. 2012) ("The fact that the Agreements are silent on these issues is not necessarily fatal to the Plaintiff's claim because New York does not require that a breach of the duty of good faith and fair dealing be tied to a specific contractual provision."); *Havel v. Kelsey-Hayes Co.*, 83 A.D.2d 380, 382 (4th Dep't 1981) ("That a specific promise has not been expressly stated does not always mean that it was not intended."); *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.,* 244 F.R.D. 204, 218 (S.D.N.Y. 2007) ("As the implied covenant of good faith

---

[4] Cole's implied covenant claim is not duplicative of the breach of contract claim, but in any event, it can be pleaded in the alternative.  *Botbol v. Frosch Intl. Travel Inc*., 222 A.D.3d 471, 472 (1st Dep't 2023).

and fair dealing could be interpreted to incorporate these duties without contradicting the express terms of the contract, the proper question is whether such implied terms are appropriate under the circumstances.").[5]

*Second*, Iconix argues that the Separation Agreement reflects the parties' agreement "to settle and resolve, fully and finally, all claims related to the Resignation and the recoupment of Cole's performance-based cash bonus and equity awards as a result of the Restatements." MTD 18. It is difficult to discern the precise bounds of Iconix's argument here, but to the extent Iconix argues that Cole has released or settled claims against Iconix related to the recoupment, the argument fails. Indeed, Iconix's disingenuous reading of the Separation Agreement collapses under scrutiny. The full text of the provision Iconix relies on contains the following language:

> WHEREAS, the Company and Cole desire to settle and resolve, fully and finally, all claims related to the Resignation and the recoupment of Cole's performance-based cash bonus and equity awards as a result of the Restatements, without any admission of liability, incapacity, undue influence, fault or wrongdoing.

Dkt. 26-5 at 2.

Despite referencing this provision no less than five times in its brief, Iconix never acknowledges that the relevant contractual language is contained in a prefatory "WHEREAS clause." Courts routinely recognize that "statements in a whereas clause . . . do not create rights beyond those arising from the contract's operative terms." *See Matter of Legion of Christ, Inc. v. Town of Mount Pleasant*, 151 A.D.3d 858, 860 (2d Dep't 2017). And the contract's operative terms do not release the Complaint's implied covenant claim. Indeed, Iconix makes a concerted effort to put before the Court the Separation Agreement, yet Iconix misleadingly conveys its contents.

---

[5] Iconix generally cites two cases in support of its argument that the failure of its agreements with Cole to mention a duty for Iconix to return recoup funds dooms the Complaint's recoupment-based implied covenant claim: *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331 (S.D.N.Y. 2021), and *Singh v. City of New York*, 139 N.Y.S.3d 307 (2020). But neither case supports Iconix's contentions because in both, the express terms of the contract at issue directly contradicted the plaintiff's implied covenant claim. As noted in text, that is simply not the case here.

13

For one, the Separation Agreement references a "General Release and Wavier (the 'Release')" which is referenced as attached to the Separation Agreement as "Exhibit A." Iconix, however, failed to include the Release in its submission of the Separation Agreement. And the language of the Release makes plain that the Separation Agreement has no bearing on the claims that Cole now brings against Iconix. Specifically, the Release states that Cole releases Iconix:

> [F]rom any and all claims, demands, causes of action, obligations, damages or liabilities, known or unknown, however denominated, which the Releasors have or may have against any Releasee *arising on or prior to the Effective Date*[.][6]

(emphasis added). Because the effective date of the Separation Agreement is December 28, 2016, the Separation Agreement cannot release Cole's implied covenant claim, or any other claim—such as Cole's unjust enrichment claim—that accrued following the affirmance of his acquittal of all charges by the Second Circuit.

Relatedly, Iconix does not identify any provisions of the Separation Agreement that foreclose the Complaint's implied covenant claim. Nor has Iconix pointed to any provision in the Separation Agreement that would prevent the Court from inferring any obligation not expressly stated in the Separation Agreement. *See Dorset Industries, Inc*., 893 F. Supp. 2d at 407 (finding that even a merger clause in an agreement that "recites that all of the parties' agreements are merged into the written document," "does not prevent a court from inferring a covenant of good faith and fair dealing.") (citations omitted). And even if such a provision did exist in the Separation

---

[6] The Release defines the Releasors as "[Cole] for himself and for his heirs, executors, administrators, trustees, legal representatives and assigns." The Agreement defines the Releasees as "[Iconix] and its affiliates and subsidiaries, and all of their respective past, present and future parent entities, subsidiaries, divisions, affiliates, and related business entities any of their successors and assigns, assets, employee benefit plan or funds, and all their respective past and/or present directors, officers, fiduciaries, trustees, administrators, managers, supervisors, shareholders, investors, employees, legal representatives, counsel and assigns, whether acting on behalf of the Company or its affiliates or, in their individual capacities."

14

Agreement (which it does not), that still would not foreclose the Complaint's recoupment-based implied covenant claim here. *Id.*

*Finally*, Iconix argues that the Complaint does not allege facts from which Cole's right to recover the recouped funds could be inferred from the agreements. But the Complaint plainly alleges as much: Iconix immediately assumed (incorrectly) that Cole had done something wrong (and criminal) in connection with SEA-2 and SEA-3, and based on that incorrect assumption, restated its financials, and then elected—*entirely in its discretion*—to force Cole to pay back incentive-based compensation that he had otherwise earned (and not elect to have others do so). The Complaint alleges that, under those circumstances, Cole was justified in understanding that Iconix would not retain funds that it elected to recoup following a restatement once learning that Cole had been fully and finally exonerated by the Second Circuit. Compl. ¶¶ 88-89.

At bottom, Iconix simply disagrees with the Complaint's well-pled factual allegations and urges the Court to rule as a matter of law on a fact-intensive question not suited for the pleadings stage. In assessing the existence of an implied covenant, "the boundaries set by the duty of good faith are generally defined by the parties' intent and reasonable expectations in entering the contract." *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 406 (E.D.N.Y. 2012) (citation omitted). "In discerning what is 'reasonable,' the Court looks to what the parties would have expected under the contract: the Court will infer that contracts 'include any promises which a reasonable person in the position of the promisee would be justified in understanding were included' at the time the contract was made." *Cordero v. Transamerica Annuity Serv. Corp.*, 39 N.Y.3d 399, 409 (2023). But it is black letter law that questions of intent and reasonableness are for the trier of fact, not questions of law for the court. *Brown v. Cara*, 420 F.3d 148, 152-53 (2d Cir. 2005) ("[The intentions of the parties are] frequently a source of persistent disputes of fact.").

### III.    The Complaint States a Claim for Unjust Enrichment (Count V).

The Complaint's claim for unjust enrichment asserts that Iconix unjustly enriched itself at Cole's expense after it elected to recoup from Cole compensation valued at more than $7 million in the wake of the false allegations against Cole, and it has retained those funds following the affirmance of Cole's acquittal. Iconix posits three arguments for dismissal of the Complaint's unjust enrichment claim: (i) it is precluded because recoupment is governed by the 2016 Separation Agreement, (ii) it is contradicted by language in the Separation Agreement, and (iii) it is time-barred because the alleged wrongful conduct occurred in 2016. Each argument fails.

*First*, Iconix argues that the Complaint's unjust enrichment claim should be dismissed because the claim is precluded by the 2016 Separation Agreement, "a valid and enforceable contract." While it is true that a party cannot "seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties," an unjust enrichment claim is **only** precluded when the contract "clearly covers the dispute between the parties." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586-87 (2d Cir. 2006). But the Separation Agreement does not "clearly cover" this dispute.

The Complaint's unjust enrichment claim against Iconix is premised on Iconix's enrichment at Cole's expense when it recouped compensation from Cole valued at more than $7 million after it chose to restate its financial statements, Compl. ¶ 135. But that is not all. The Complaint further alleges that Iconix recouped such funds from Cole and not from others, including Horowitz, who was integral to the SEA-2 and SEA-3 transactions, *id.* ¶ 137, and that Iconix has retained the recouped funds even though the Second Circuit has confirmed Cole's unanimous acquittal of charges related to the underlying conduct. The Complaint's unjust

16

enrichment theory proceeds on these facts: no one would think it's fair after reading the Second Circuit's decision for Iconix to retain *Cole*'s executive compensation but not Horowitz's.

For its part, Iconix has not identified a single provision of the Separation Agreement that covers the conduct alleged in the Complaint's unjust enrichment claim. *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 336 (S.D.N.Y. 2023) (denying motion to dismiss unjust enrichment claim where contract is silent as to whether plaintiff was entitled to compensation for certain costs if a deal did go through); *see also Union Bank, N.A. v. CBS Corp*, 2009 WL 1675087, at *6-7 (S.D.N.Y. June 10, 2009) (sustaining an unjust enrichment claim where disputes existed about whether the contracts covered the "subject matter" of the dispute and emphasizing that "[d]ecisions interpreting *Clark–Fitzpatrick* have made clear that the predicate for dismissing quasi-contract claims is that the contract at issue 'clearly covers the dispute between the parties.'" (citation omitted)); *Joseph Sternberg, Inc. v. Walber 36th St. Assocs.*, 187 A.D.2d 225 (1st Dep't 1993).  Moreover, Iconix makes much of the Complaint's allegation that the Separation Agreement is a "legally binding and valid contract," MTD 20, but the mere existence of a valid contract alone does not, and cannot, foreclose Cole's unjust enrichment claim, *see* cases cited *supra*. *Sternberg,* 187 A.D.2d at 228-29.  Iconix then again reverts back to its argument that the Separation Agreement contains the parties' "express agreement 'to settle and resolve, fully and finally, all claims related to the Resignation and the recoupment of Cole's performance-based cash bonus and equity awards as a result of the Restatements.'"  MTD 20.  But for the same reasons stated above, including that the Separation Agreement does not foreclose claims like this one—that accrued after the Separation Agreement was signed—this argument should be rejected.

*Second*, Iconix argues that the Complaint's unjust enrichment claim should be dismissed because the language of the Separation Agreement "contradicts" the allegations in the Complaint.

17

Specifically, Iconix seems to argue that the Complaint's allegation that Iconix elected to recoup Cole's compensation based on a "false understanding" of Cole's misconduct contradicts language in the Separation Agreement that the recoupment was "a result of the restatements."  MTD 20. This is a tortured reading of Cole's complaint and entirely misunderstands the basis for the Complaint's unjust enrichment claim.

For one, there is no contradiction.  Iconix conflates two things: (i) the *right* of Iconix to seek recoupment as a general matter (which was a "result of the restatements"); and (ii) the *exercise of that right* in Iconix's *discretion* as against Cole (and not others involved in SEA-2 and SEA-3, including admitted wrongdoers like Horowitz).  To be clear, nothing in the by-laws (or otherwise) *mandated* recoupment after a restatement (as made clear, again, by Iconix's election not to recoup from others).  And the Complaint makes clear that Iconix's exercise of its discretion to do so as against Cole was part of its self-interested effort to frame Cole as a wrongdoer and fraudster with whom they were cutting ties.  Compl. ¶¶ 87-90.  That Iconix has elected to retain the arbitrarily recouped money, even after the Second Circuit confirmed that a jury necessarily decided that Cole never engaged in the alleged fraud, forms the basis of the Complaint's unjust enrichment claim.

In response, Iconix argues that the outcome of Cole's criminal proceedings is irrelevant to the recoupment because Iconix was "obligated to restate its financial[s]."  MTD 21.  But this argument fails.  For one, the Complaint alleges otherwise.  Compl. ¶¶ 86-89, 137 ("Iconix *chose* to restate its financial statements [. . .]") (emphasis added).  Further, even if Iconix was obligated to restate its financials, it was *not* obligated to concomitantly seek recoupment from Cole.  In any event, Iconix's decision to retain the recouped funds *now*—irrespective of whatever initially triggered the recoupment—is undoubtedly against "equity and good conscience."  *See, e.g., Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448 (S.D.N.Y. 2016) (finding that plaintiff

18

sufficiently pled an unjust enrichment claim where enrichment premised on unenforceable liquidated damages clause).[7]

*Finally*, Iconix argues that the Complaint's unjust enrichment claim is time-barred because the recoupment was tied to the restatements and not to the criminal proceedings, and therefore, the claim began to accrue in 2016. This argument is fundamentally flawed. A tort claim accrues "when *all* elements of the tort can be truthfully alleged in a complaint." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 140 (2009) (emphasis added). The third element of an unjust enrichment claim is that the enrichment is "against equity and good conscience," and the Complaint alleges that it became against equity and good conscience for Iconix to retain the funds it recouped from Cole after his conviction was overturned in October 2025. *See, e.g., Campione v. Campione*, 942 F. Supp. 2d 279, 283-84 (E.D.N.Y. 2013) (holding that even though defendant originally received stock in 1973, the *retention* of the stock did not become wrongful until 2012, and therefore claim accrued in 2012); *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 264 (S.D.N.Y. 2008) (noting that unjust enrichment claim began to accrue when defendants "possessed any of [plaintiff's] 'money or property' that 'equity and good conscience require it to return.'") (citation omitted); *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 364 (2d Cir. 2013) (finding that unjust enrichment claim began to accrue from "the latest-in-time wrongful act pleaded in the complaint"). For that reason (and others), the cases cited by Iconix are unavailing. *See Martin*

---

[7] In support of its argument that the Complaint's unjust enrichment claim is "contradicted" by Cole's agreements with Iconix, Iconix cites two cases: *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) and *900 Unltd., Inc. v. MCI Telecom. Corp.*, 626 N.Y.S.2d 188 (1st Dep't 1995). But both are inapposite. *Matusovsky* did not even involve an unjust enrichment claim, and, in any event, the plaintiff's claims there were "contradicted" by an agreement which contained a general release that unambiguously barred "*all claims*" against the defendant, which is not present here. Then, citing a single line devoid of any context or explanation in the First Department's decision *900 Unltd., Inc.*, Iconix also argues that Cole's claim should be dismissed because Iconix retained funds pursuant to rights defined by contract. But, as addressed in text, nothing in the Separation Agreement addresses Iconix's right to retain the recouped funds under present circumstances. Nor does the Separation Agreement bar Cole's claim in equity for that unjust retention.

*Hilti Fam. Tr. v. Knoedler Gallery*, LLC, 137 F. Supp. 3d 430, 466 (S.D.N.Y. 2015) (generally reiterating equitable tolling limitations period and granting motion to dismiss unjust enrichment claim based on insufficient allegations to support equitable tolling); *Cohen v. Dunne*, 2017 WL 4516820, at *3-4 (S.D.N.Y. Sept. 27, 2017) (finding unjust enrichment claim began to accrue when defendant received wrongful payment).

IV.   **The Complaint States Claims for Punitive and Consequential Damages.**

Iconix argues that the Complaint's claims for punitive and consequential damages are unavailable as a matter of law and should be dismissed. The Court should reject these arguments.

A.   **The Complaint States a Claim for Punitive Damages.**

Iconix argues that the Complaint's claim for punitive damages should be dismissed because the Complaint failed to allege: (i) an independent tort, or (ii) a pattern of Iconix's misbehavior that was directed at the public generally. (Iconix notably does not argue that the Complaint sufficiently alleges conduct egregious enough to warrant punitive damages.) Both arguments are meritless.

*First*, the Complaint does plead independent torts sufficient for punitive damages. To start, Iconix simply ignores the fact that New York courts recognize that, where, as here, a plaintiff has sufficiently pled a breach of the implied covenant of good faith and fair dealing, a plaintiff has satisfied the independent tort requirement and stated a claim at the motion to dismiss stage for punitive damages on that basis alone. *See 25 Bay Terrace Assocs., L.P. v. Pub. Serv. Mut. Ins. Co.*, 144 A.D.3d 665 (2d Dep't 2016); *Zicherman v. State Farm Fire & Cas. Co.,* 698 F. Supp. 3d 564, 571 (E.D.N.Y. 2023) ("New York courts have repeatedly allowed claims for punitive damages to go forward based on a breach of the covenant of good faith and fair dealing."); *Perlbinder v. Vigilant Ins. Co.*, 190 A.D.3d 985 (2d Dep't 2021). In *Perlbinder*, for example, the Second Department affirmed the lower court's denial of the defendant's motion for summary judgment to

20

dismiss the plaintiff's demand for punitive damages. 190 A.D.3d at 986. In that case, the plaintiff asserted, among other things, a claim against the defendant (an insurance company), for breach of the implied covenant. At the end of settlement negotiations, the defendant had agreed to pay $1.6 million, but eventually only tendered approximately $400,000 to the plaintiff. *Id*. The Second Department rejected the defendants' efforts to dismiss the plaintiff's demand for punitive damages, in part because "an alleged breach of the implied covenant of good faith and fair dealing may support an award of punitive damages." *Id*. at 989. The Complaint's punitive damages claim therefore survives based on its implied covenant claim alone.

In any event, Iconix simply ignores the fact that the Complaint also alleges the independent tort of fraudulent inducement. Specifically, the Complaint alleges that Iconix's failure to advance Cole his legal expenses pursuant to the Advancement Agreement was fraudulent, in that Iconix defrauded Cole to believe that Iconix would comply with the Advancement Agreement without having any intention of actually complying with it. Compl. ¶ 101; *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (1986) (fraud in the inducement is a recognized independent tort even where it relates to a contractual obligation).

*Third*, relying on *Rocanova v. Equitable Life Assur. Socy. of U.S.*, 83 N.Y.2d 603, 613 (1994), Iconix argues that the Complaint's claim for punitive damages must be dismissed because it does not plead a pattern of misconduct affecting the public at large. MTD 23. The argument fails. To start, the Complaint need not show a pattern of similar conduct "directed at the public generally." *See Hobish v. AXA Equitable Life Ins. Co.*, 43 N.Y. 3d 442, 453 (2025) (punitives available on contract claim "where 'the fraud, aimed at the public generally, is gross and involves high moral culpability,' *or* when it 'envice[s] a high degree of moral turpitude and demonstrate[s] such wanton dishonesty as to imply a criminal indifference to civil obligations'") (emphasis added)

21

(citation omitted).  In any event, the Complaint does allege conduct that amounted to a pattern of conduct directed at the public generally, including that Iconix: (i) violated (and is still violating) a court order, (ii) intentionally interfered with Cole's ability to vindicate his constitutional rights, thereby interfering with a criminal case, and (iii) took actions aimed at manipulating the public in an effort to restore Iconix's reputation.  These allegations are sufficient to state a claim for punitive damages on a breach of contract claim.  *See Suffolk Sports Ctr., Inc. v. Belli Constr. Corp.*, 212 A.D.2d 241, 247 (2d Dep't 1995); *In re Alexander*, 2026 WL 74280, at *2 (S.D.N.Y. Jan. 9, 2026) (finding punitive damages warranted in case where party failed to comply with court orders).

*Suffolk Sports*—decided after *Rocanova*—is an illustrative example.  *Suffolk Sports* involved a dispute between two parties in a landlord-tenant relationship, where the Second Department found that the plaintiff had sufficiently alleged entitlement to punitive damages.  212 A.D.2d at 247-48.  There, the defendant "embarked upon a calculated effort to vitiate the landlord-tenant relationship between it" and the plaintiff, including by taking steps to force the plaintiff out of business.  The Court held that the defendant's actions "involve[d] that degree of bad faith evincing a 'disingenuous or dishonest failure to carry out [the parties'] contract' so as to justify the imposition of punitive damages."  *Id*. (citation omitted).  Although the Court recognized that the parties' conduct involved a purely private dispute, the Court held that punitive damages "serve[d] the *public good* by acting as a deterrent to similar actions in the future," in part because "allow[ing] any landlord to vitiate a landlord-tenant contract by resort to extralegal means would generally do a disservice to all tenants."  *Id*. (emphasis added).  The same is true here.  Permitting Iconix to intentionally and wantonly frustrate the purposes of its employment-based agreements with Cole, would—like in *Suffolk Sports*—"do a disservice" to all employees and "could be interpreted as tacit permission" for an employer to engage in wrongful and unlawful conduct.  And, *Suffolk Sports*

22

does not stand alone in allowing punitive damages claims to proceed in private disputes. In *Smart Coffee, Inc. v. Sprauer*, 140 N.Y.S.3d 376, 387 (Civ. Ct. N.Y. 2021), for example, a court granted a plaintiff punitive damages in a case premised on a breach of a commercial lease agreement where the defendant's conduct "was both intentional and malicious" and in violation of the N.Y. Governor's Executive Order during the COVID-19 pandemic. Other examples abound. *See, e.g.*, *Premium Prods., Inc. v. O'Malley*, 246 A.D.3d 948, 955 (2d Dep't 2026) (sustaining claim for punitive damages where plaintiff alleged that defendant "acted so recklessly [and] wantonly as to warrant awards…for punitive damages" in an employment and trade secrets claim); *Mid-Hudson Anesthesiologists, P.C. v. St. Luke's Cornwall*, 2026 WL 734947, at *11 (S.D.N.Y. March 16, 2026) (sustaining claim for punitive damages where plaintiff alleged that defendants "knowingly misused confidential financial, billing, and operational information obtained during the parties' business relationship in order to develop a strategy to replace Plaintiff as the hospital's anesthesia provider"); *Marky's Martial Arts, Inc. v. FC Online Marketing, Inc.*, 2022 WL 18276016, at *8 (S.D.N.Y. Sept. 16, 2022) (holding punitive damages appropriate where defendant disclosed plaintiff's client list to competitors in violation of contractual confidentiality obligations). In any event, unlike in *Rocanova*, where the plaintiff failed to plead "that he was personally aggrieved by tortious conduct arising out of his contractual relationship with" the defendant, 83 N.Y.2d at 604, Cole's complaint suffers from no such defects. *See, e.g.*, Compl. ¶¶ 85-101.

In any event, this early stage is not the proper place to address Iconix's argument. At the motion to dismiss stage, "it is premature to conclude that the allegations in the complaint are insufficient to support a finding that the defendant[] acted so recklessly or wantonly as to warrant awards of damages and punitive damages" for certain causes of action. *Premium Prods., Inc.*, 246 A.D.3d at 955 (finding premature dismissal of entitlement to punitive damages awards at the

motion to dismiss stage); *Gipe v. DBT Xpress, LLC*, 150 A.D.3d 1208, 1210 (2d Dep't 2017) (noting that at the motion to dismiss stage, "it is premature to conclude that the allegations in the complaint are insufficient to support a claim that DBT Xpress acted so recklessly or wantonly in connection with the hiring, retention, and supervision of the defendant driver as to warrant an award of punitive damages.").

### B.    The Complaint States a Claim for Consequential Damages.

Iconix argues that Cole is not entitled to consequential damages because Cole has not alleged that his damages were foreseeable.  This argument should be rejected.

A party who breaches a contract "is liable for those risks foreseen or which should have been foreseen at the time the contract was made." *Ashland Mgt. v Janien*, 82 N.Y.2d 395, 403 (1993).  It is not necessary for the breaching party to have foreseen the breach itself or the particular way the loss occurred, rather, "[i]t is only necessary that loss from a breach is foreseeable and probable." *See e.g., Bi-Economy Mkt., Inc., v. Harleysville Ins. Co. of N.Y.*, 856 N.Y.S.2d 505, 508 (2008). Courts must look to "the nature, purpose and particular circumstances of the contract known by the parties . . . as well as 'what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made.'" *Id*. (citation omitted).  Moreover, foreseeability of consequential damages is a question of fact unsuitable for resolution at the pleading stage.  *Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc*., 723 F. Supp. 3d 212, 234 (E.D.N.Y. 2024).

Contrary to Iconix's claim, the Complaint sufficiently alleges that Cole's damages were foreseeable and probable.  Of course, the very *purpose* of Iconix's indemnification and advancement obligations were to protect Cole against the consequences of being unable to mount an adequate legal defense for claims against him arising out of his position as CEO of Iconix.  *See*

24

*e.g., Bi-Economy*, 856 N.Y.S.2d at 508.  Courts routinely sustain claims for consequential damages in this context.  *Bi-Economy* is directly analogous here.  Just as in *Bi-Economy*, where the court held that an insurance company that withheld coverage in bad faith could foresee that the insured would suffer harm beyond merely the cost of the unpaid claim, Iconix—which contractually agreed to fund Cole's defense against criminal charges—could plainly foresee that withholding that funding at critical junctures would harm Cole's ability to defend himself and expose him to the risk of conviction.  Indeed, the Complaint alleges that Iconix not only *actually* foresaw these consequences, but that it *deliberately* brought them about.  To be clear, the Complaint alleges that Iconix deliberately withheld the advancement of legal fees precisely *because* it wanted Cole to be convicted so it could recover the fees it had advanced.  A party cannot argue it did not foresee harm that it allegedly engineered for its own selfish ends.

Finally, Iconix argues that the Complaint's claim for consequential damages should be dismissed because it is speculative.  It is not.  As noted above, the Complaint sufficiently alleges Cole's entitlement to consequential damages, and the complaint does not "plead facts that establish that any consequential damages would not be susceptible to calculation."  *DNF Assocs., LLC v. HSBC Bank USA, N.A.*, 2024 WL 3426777, at *6 (S.D.N.Y. July 16, 2024).  In any event, entitlement "to consequential damages is best tested in the context of a motion for summary judgement, after the parties have had the opportunity to develop the factual record."  *Id*.

**<u>CONCLUSION</u>**

Based on the foregoing, the Court should deny Iconix's motion to dismiss.

25

Dated: April 27, 2026
New York, New York

By:  _____
Benjamin D. White

**BLOCH & WHITE LLP**
Benjamin D. White, Esq.
Cristina Alvarez, Esq.
Kyle W. Bigley, Esq.
90 Broad Street, Suite 703
New York, NY 10004
(212) 901-3825
bwhite@blochwhite.com
calvarez@blochwhite.com
kbigley@blochwhite.com

*Attorneys for Plaintiff Neil Cole*

26