**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NEIL COLE,

*Plaintiff,*

v.

No. 25-cv-09357 (MKV)

ICONIX INTERNATIONAL INC. f/k/a/
ICONIX BRAND GROUP, INC., and
SETH HOROWITZ,

*Defendants.*

**PLAINTIFF NEIL COLE'S**
**MEMORANDUM OF LAW IN OPPOSITION TO**
**SETH HOROWITZ'S MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 2

ARGUMENT ....................................................................................................................... 5

    I.   The Complaint Alleges that Horowitz "Initiated" a Criminal Proceeding Against Cole.... 5

    II.  The Complaint Alleges a Lack of Probable Cause. .......................................... 9

        A.  The Complaint Alleges a Lack of Probable Cause by Alleging That Horowitz Made Intentionally False Reports to Law Enforcement and Prosecutors. ........................... 9

        B.  The Competing-Testimony-Plus Standard is Irrelevant Here (Especially at This Stage) and Would in Any Event be Satisfied Here. ............................................... 10

        C.  Horowitz's Extended Discussions of "Presumptions" is a Red Herring..................... 15

    III. The Complaint Alleges Malice. ...................................................................... 23

CONCLUSION.................................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Cases**

*Ahearn v. Brachowicz*, 2014 WL 3408389 (S.D.N.Y. July 10, 2014).......................................... 20

*Ambrose v. City of New York*, 623 F. Supp. 2d 454 (S.D.N.Y. 2009)................................11, 22, 23

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012)..................................... 13

*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003) ...............................................11, 23

*Brandon v. City of New York*, 705 F. Supp. 2d 261 (S.D.N.Y. 2010)................................................11

*Brown v. Sears Roebuck & Co.*, 746 N.Y.S.2d 141 (1st Dep't 2002) ............................................. 6

*Buari v. City of New York*, 530 F. Supp. 3d 356 (S.D.N.Y. 2021)............................................ 10, 22

*Cabrera v. Schafer*, 178 F. Supp. 3d 69 (E.D.N.Y. 2016) ............................................................... 21

*Coggins v. Cnty. of Nassau*, 988 F. Supp. 2d 231 (E.D.N.Y. 2013) ........................................ 18, 22

*Colon v. City of New York*, 60 N.Y. 2d 78 (1983) ........................................................................ 17

*Dantas v. Citigroup, Inc.*, 779 F. App'x 16 (2d Cir. 2019)............................................................... 7

*Davis v. City of New York*, 373 F. Supp.2d 322 (S.D.N.Y. 2005) .................................................. 24

*De Lourdes Torres v. Jones*, 26 N.Y.3d 742 (2016) ...................................................................... 22

*Demosthene v. City of New York*, 2019 WL 181305 (E.D.N.Y. Jan. 10, 2019)...................... passim

*Dolan v. New Hyde Park Fire Dist.*, 2017 WL 6597518 (E.D.N.Y. Dec. 22, 2017)...................... 8

*Flavin v. City of New York*, 99 N.Y.S.3d 259 (2019) .................................................................... 20

*Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118 (S.D.N.Y. 2012) ............................. 7, 8

*Guzman v. United States*, 2013 WL 543343 (S.D.N.Y. Feb. 14, 2013) ........................................ 18

*Hansen v. DeSanti*, 2022 WL 900593 (E.D.N.Y. Mar. 28, 2022) .................................................. 6

*Hicks v. Marchman*, 719 F. App'x 61 (2d Cir. 2018)..................................................................... 10

*Hincapie v. City of New York*, 434 F. Supp. 3d 61 (S.D.N.Y. 2020) ............................................ 12

*Johnson v. McMorrow*, 2023 WL 1797063 (S.D.N.Y. Feb. 7, 2023)..............................................11

*Jorgensen v. Cnty. of Suffolk*, 558 F. Supp. 3d 51 (E.D.N.Y. 2021)................................................. 6

*Komlosi v. Fudenberg*, 2000 WL 351414 (S.D.N.Y. Mar. 31, 2000)................................................ 8

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) ............................................................ 21

*Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979 (S.D.N.Y. 2017) ...................... 25

*Liu Bo Shan v. China Const. Bank Corp.*, 421 F. App'x 89 (2d Cir. 2011) .................................... 6

*Lowth v. Town of Cheektowaga*, 82 F.3d 563 (2d Cir. 1996) ......................................................... 23

*Lupski v. Cnty. of Nassau*, 822 N.Y.S.2d 112 (2d Dep't 2006) ...................................................... 5

*Martin v. City of Albany*, 42 N.Y.2d 13 (1977)............................................................................. 23

*Maskantz v. Hayes*, 832 N.Y.S.2d 566 (1st Dep't 2007 .................................................................. 6

*Mejia v. City of New York*, 119 F. Supp. 2d 232 (E.D.N.Y. 2000) .................................................. 9

*Paige-Bey v. LaCoste*, 2022 WL 4641104 (E.D.N.Y. Sept. 30, 2022).......................................... 12

*Ramos v. City of New York*, 285 A.D.2d 284 (1st Dep't 2001) ...................................................... 24

*Rivers v. Towers, Perrin, Forster & Crosby Inc.*, 2009 WL 817852 (E.D.N.Y. Mar. 27, 2009)..... 6

*Rohman v. New York City Transit Auth.*, 215 F.3d 208 (2d Cir. 2000) ........................................... 5

*S.E.C. v. Siebel Sys., Inc.*, 384 F. Supp. 2d 694 (S.D.N.Y. 2005).................................................. 18

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003).................................................................. 5

*Shabazz v. Kailer*, 201 F. Supp. 3d 386 (S.D.N.Y. 2016).............................................................. 10

*Sibblies v. City of New York*, 196 N.Y.S.3d 47 (2023) ................................................................... 17

*Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*, 2004 WL 2290499 (S.D.N.Y. Oct. 8, 2004) ..... 8

*United States v. Barret*, 848 F.3d 524 (2d Cir. 2017)................................................................... 14

*United States v. Cole*, 158 F.4th 113 (2d Cir. 2025)..................................................... 14, 15, 17, 19

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996)................................................................................ 18

*Williams v. City of New York*, 176 N.Y.S.3d 492 (2022) .................................................................. 20

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) ........................................................................ 13

*Ying Li v. City of New York*, 246 F. Supp. 3d 578 (E.D.N.Y. 2017) ................................. 6, 9, 10, 20

**Other Authorities**

Rest. Torts § 653 cmt. g. ...................................................................................................................... 8

**Rules**

Rule 12(b)(6) .................................................................................................................. 2, 9, 25

## PRELIMINARY STATEMENT

For nearly seven years, Plaintiff Neil Cole was wrongfully prosecuted. He endured not one but two criminal trials. He was unconstitutionally sentenced to 18 months' imprisonment for a crime he did not commit. He watched Iconix Brand Group ("Iconix"), the company he built from scratch into a multi-billion-dollar behemoth, ripped from his grasp. And he endured those trials and tribulations because of malicious lies told by one person: Defendant Seth Horowitz. In this lawsuit, Cole seeks redress.

As Chief Operating Officer ("COO") at Iconix, Horowitz saw himself as Cole's protégé and successor as Chief Executive Officer ("CEO") and President of the company. But when Horowitz saw his prospects rebuffed, and as his personal life succumbed to turmoil, Horowitz descended into deep-seated resentment toward Cole. Embroiled in an investigation into two deals that he led, Horowitz saw an opportunity to accomplish two goals at the same time: (i) protect himself and (ii) harm his rival. He knowingly and falsely told the government that Cole had orchestrated a secret, fraudulent securities-fraud scheme and ordered him to destroy evidence. Fortunately, after a jury acquitted Cole of several counts, the Second Circuit unanimously concluded that the jury necessarily determined that Cole was not guilty of *all* counts. But in the process, Cole lost his business, had his name dragged through the mud, and suffered untold financial and emotional harm.

Horowitz's motion to dismiss the Complaint's New York law malicious prosecution claim presents a narrow and straightforward issue, *i.e.*, whether the Complaint sufficiently alleges three elements: initiation, absence of probable cause, and malice. It undoubtedly has, alleging with specificity the precise lies that Horowitz told in maliciously initiating the yearslong prosecution.

1

Unable to contend with the sufficiency of these allegations, Horowitz obfuscates, relying on a series of arguments that fail to grapple with the central point at issue at this stage: the Complaint sufficiently alleges that Horowitz repeatedly and knowingly lied to incriminate Cole. That single reality effectively serves to defeat every single one of Horowitz's pleading stage arguments. Specifically, Horowitz raises several arguments, chiefly that: (i) prosecutors exercised their own independent judgment in determining to prosecute Cole; (ii) a series of supposed presumptions of probable cause defeat Cole's claim; and (iii) Cole did not sufficiently allege that Horowitz acted with malice. But *each* of these contentions suffers from the exact same flaw: unbroken and unambiguous authority makes clear that each of these arguments fails where, as here, a prosecution was pursued based on knowing and material lies of a private defendant. Perhaps aware of that law, Horowitz ultimately turns his attention to disputed the veracity of the allegations in the Complaint that specifically allege that he made knowing and material lies. But Rule 12(b)(6) is not the place to dispute facts in a complaint.

To be clear, Cole will undoubtedly show that his version of the facts are correct. Horowitz lied about Cole's conduct on the SEA-2 and SEA-3 transactions to have Cole maliciously prosecuted for securities fraud. Horowitz did that in a twisted effort to achieve two aims: protect himself and punish Cole, a man he grew deeply resentful of. But *proving* that story is a fight for another day. For now, Horowitz simply cannot obtain a pleadings-stage dismissal by proffering his own view of the facts.

### FACTUAL BACKGROUND

Cole is a successful businessman who founded Iconix, a brand management company, and served as CEO and President. Complaint ("Compl.") ¶ 10. In 2012, he hired Horowitz as COO. *Id.* ¶ 11. Although Horowitz saw himself as Cole's protégé and successor, Horowitz developed a

deep-seated and irrational resentment and anger toward Cole when Horowitz felt that his efforts to lead Iconix were rebuffed. *Id.* ¶¶ 12, 16. During this time, Horowitz's personal life became embroiled in turmoil, withdrawing large sums of cash to purchase drugs. *Id.* ¶ 14. Horowitz wrote at the time that he "gets a thrill of doing something knowingly wrong," and asked himself: "I know it's right. Why don't I do it[?]" *Id.* ¶ 15. Feeling that Cole stood in his path to becoming Iconix CEO, Horowitz became angry and resentful, vowing to "fight back" against Cole. *Id.* ¶ 17.

In an unsent letter addressed "[D]ear[N]eil," Horowitz meticulously documented the ways in which Cole had purportedly "disrespected" him. *Id.* ¶ 18-20. Horowitz wrote that he could either "ignore it" or "fight back"—but his "ability to ignore" Cole's perceived slights was "not going to last much longer." *Id.* ¶ 22. Horowitz further documented his concerns that he would not become CEO because, he feared, Cole had "no plans of letting [Horowitz] actually drive and attack the business." *Id.* ¶ 23. In 2014, Cole told Horowitz that he was not ready to give up the title of Iconix President. *Id.* ¶ 24. By 2015, Horowitz was "very upset" with Cole. *Id.* ¶ 25. Observers at the company saw that there was "very much . . . a rift developing" between the two. *Id.*

Meanwhile, also in 2014, Horowitz negotiated two joint venture deals for Iconix with an overseas counterparty ("GBG"), known as SEA-2 and SEA-3. *Id.* ¶ 26. Ultimately, the S.E.C and D.O.J. started investigating the SEA-2 and SEA-3 deals that Horowitz had negotiated. *Id.* ¶ 27. To "protect himself and harm Cole," Horowitz falsely accused Cole of criminal wrongdoing in SEA-2 and SEA-3. *Id.* ¶¶ 29-32. Specifically, Horowitz repeatedly and falsely told investigators, law enforcement, and prosecutors that (i) Cole entered into secret unwritten side deals with GBG that increased GBG's purchase price in order to artificially inflate Iconix's revenue; and (ii) Cole destroyed documents and ordered Horowitz to do the same to avoid getting caught for the secret side deals and thereby obstructed justice. *Id.* ¶¶ 31-32. Each of these reports were knowingly

false: Cole did not conspire to or effectuate secret side deals on SEA-2 or SEA-3, nor did he destroy, or order the destruction of, any documents related to either transaction. *Id.* ¶¶ 33-34. Other than Horowitz's false account, there was effectively no evidence that Cole had engaged in the false criminal conduct. *Id.* ¶ 35. Absent Horowitz's false reports, Cole would not have been suspected of or investigated for criminal misconduct. *Id.* ¶ 36.

But Horowitz's reports had their desired effect. Based on these falsehoods, a grand jury indicted Cole for charges related to conspiracy to commit securities fraud, securities fraud, and obstruction of justice (for his part, Horowitz pled guilty to related charges). *Id.* ¶ 37. The Indictment's allegations mirrored the false accounts that Horowitz had been providing to investigators, law enforcement, and prosecutors, i.e., that Cole "hid" the SEA-2 and SEA-3 side deals from Iconix's lawyers and an auditor and that Cole destroyed and concealed relevant evidence. *Id.* ¶¶ 38-39. As the trial records subsequently made clear, those allegations (and many others) could only have come from Horowitz. *Id.* ¶ 40.

At trial, the "central question" was "whether Cole had made undisclosed verbal commitments to return money to GBG." *Id.* ¶ 41. Horowitz—"indisputably the government's key witness" and who testified for the first five days at trial—was the *only* witness to testify that Cole had allegedly engineered secret side deals on SEA-2 and SEA-3. *Id.* ¶¶ 42-43. Indeed, the two other primary witnesses—Jason Rabin and Jared Margolis, each employed by the GBG counterparties on the deals—"denied that Cole asked them to keep the giveback portion of the deals secret or to omit it from the written contracts." *Id.* ¶ 44. The jury, however, did not believe Horowitz and acquitted him of conspiracy and obstruction of justice. *Id.* ¶ 47. As the Second Circuit later explained, the jury did not "believe[] even a fraction of Horowitz's account," and "disregarded all (or nearly all) of Horowitz's testimony." *Id.* ¶ 46. Although the Government

4

unconstitutionally retried Cole in violation of the Double Jeopardy Clause and secured a conviction, that conviction was reversed (and the indictment ordered dismissed) by the Second Circuit which made clear that the initial jury had *necessarily* acquitted Cole of all charges.

## ARGUMENT

The sole issue is whether the Complaint plausibly states the elements of a claim for malicious prosecution against Horowitz.  To do so, the Complaint must have alleged that (i) Horowitz initiated a prosecution against Cole; (ii) Horowitz lacked probable cause; (iii) Horowitz acted with malice; and (iv) the prosecution was terminated in Cole's favor.  *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).  Horowitz does not challenge the Complaint's allegation that the prosecution terminated in Cole's favor (nor could he); he instead challenges the first three prongs.  But the Complaint sufficiently alleges each element, and Horowitz's arguments, which amount to a series of red herrings, misstatements of the law, and misunderstandings of the pleading standard, have no merit.[1]

### I.    The Complaint Alleges that Horowitz "Initiated" a Criminal Proceeding Against Cole.

The first prong of a malicious prosecution claim asks whether the defendant initiated or continued a criminal proceeding against the plaintiff.  As Horowitz ignores, however, "'[i]nitiation' in this context is a term of art."  *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000).  For a civilian defendant, a complaint must allege that the "defendant played an active role in the prosecution."  *Lupski v. Cnty. of Nassau*, 822 N.Y.S.2d 112, 114 (2d Dep't 2006) (citation modified).  And critically, for civilian defendants like Horowitz, "providing information 'that is

---

[1] At times, Horowitz's arguments are a bit confused, and he makes arguments going to one element of the claim while purporting to address other elements.  Rather than compound that error, this brief attempts to situate Horowitz's arguments under the correct prong of the test.

known to be false qualifies as the commencement of a prosecution.'" *Hansen v. DeSanti*, 2022 WL 900593, at \*5 (E.D.N.Y. Mar. 28, 2022) (quoting *Rivers v. Towers, Perrin, Forster & Crosby Inc.*, 2009 WL 817852, at \*3 (E.D.N.Y. Mar. 27, 2009)); *see also, e.g.*, *Liu Bo Shan v. China Const. Bank Corp.*, 421 F. App'x 89, 93 n.4 (2d Cir. 2011) ("A private individual who deliberately falsifies evidence to induce another's prosecution may be held liable for malicious prosecution . . . because the knowing provision of false evidence satisfies an essential element of the tort, i.e., the 'initiation' of a prosecution."); *Maskantz v. Hayes*, 832 N.Y.S.2d 566, 569 (1st Dep't 2007) ("[A] defendant may be said to have initiated a criminal proceeding by providing false evidence to the police or withholding evidence that might affect the determination by the police to make an arrest" (quoting *Brown v. Sears Roebuck & Co.*, 746 N.Y.S.2d 141, 146 (1st Dep't 2002)); *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 605 (E.D.N.Y. 2017) (same).  The Complaint satisfies the foregoing requirements by alleging that Horowitz knowingly provided material, false information to law enforcement and prosecutors.  Specifically, the Complaint alleges Horowitz falsely reported that Cole (i) conspired with him to enter into unwritten, secret side deals to artificially inflate Iconix's revenue and (ii) destroyed documents and ordered Horowitz to do the same.  Compl. ¶¶ 31-33. And the Complaint obviously alleges that Horowitz's reports were material, since it alleges that "[t]here was effectively no other evidence other than Horowitz's false account," "Cole would not have been suspected of or investigated for criminal misconduct" absent Horowitz's reports, and the Indictment relied overwhelmingly on Horowitz's false accounts.  Compl. ¶¶ 35-40; *Jorgensen v. Cnty. of Suffolk*, 558 F. Supp. 3d 51, 64 (E.D.N.Y. 2021) (finding initiation where false evidence was "crucial" to indict plaintiff).  The Court's inquiry can end there.

Rather than truly address the "initiation" prong, Horowitz instead appears to raise two arguments in this section of his brief.  *First*, he previews his factual defense that he did not actually

lie about Cole's involvement in SEA-2 or SEA-3 (he nowhere actually rebuts the factual allegation that he lied about Cole obstructing justice). MTD at 10-11. But, as detailed below in the section regarding probable cause, the Complaint more than sufficiently alleges that Horowitz lied for purposes of defeating a motion to dismiss. *See infra* at § II.B. *Second*, Horowitz then previews his factual defense that the Complaint does not sufficiently allege that Horowitz had a motive to lie. MTD at 10. But that contention is also wrong, as detailed below in the section regarding malice. *See infra* at § III.

That said, later in his brief, Horowitz details an argument that theoretically goes towards the initiation prong: that prosecutors acted under their own volition in deciding to move forward with Cole's prosecution, thus precluding the Complaint's malicious prosecution claim. *See* MTD at 21-23; *Dantas v. Citigroup, Inc.*, 779 F. App'x 16, 23 (2d Cir. 2019) (making clear this "volition" assessment comes under the initiation prong). Specifically, Horowitz argues that the Complaint fails to overcome the "presumption that a prosecutor exercises his own independent judgment in deciding to prosecute a criminal defendant." MTD at 21 (quoting *Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 128-29 (S.D.N.Y. 2012)). However raised, the argument has no merit.

To be sure, in certain contexts, a malicious prosecution claim cannot succeed where a defendant can show that a prosecutor pursued the prosecution at issue pursuant to their own *independent* judgment. But under an unbroken line of authority (and as addressed in a related context below), this principle simply does not apply where, as here, the prosecutor's judgment was compromised by a complaining witness's knowingly false report. This is a crucial and oft-applied caveat to the doctrine on which Horowitz relies and is indeed identified in each of the cases he cites. Indeed, while quoting Judge Oetken's decision in *Gilman*, MTD at 21, Horowitz omits *Gilman*'s crucial addition: that a plaintiff overcomes that presumption by alleging that a defendant

engaged in misconduct, including "by providing false information to the authorities." *Gilman*, 868 F. Supp. 2d at 128 (quoting *Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*, 2004 WL 2290499, at *5 n. 8 (S.D.N.Y. Oct. 8, 2004)).  This non-controversial principle is consistently and frequently applied in cases against private individuals who falsely reported crimes.  As Judge Bianco explained, in cases "where a private individual knowingly provides false information to [law enforcement]," "'an intelligent exercise of the officer's discretion becomes impossible and a prosecution based thereon is procured by the person giving the false information.'" *Dolan v. New Hyde Park Fire Dist.*, 2017 WL 6597518, at *9 (E.D.N.Y. Dec. 22, 2017) (quoting Rest. Torts § 653 cmt. g.).  As here, the well-pled allegation that Horowitz knowingly supplied false information "render[s] intelligent exercise of [law enforcement's] discretion 'impossible,' and the resulting prosecution 'procured by' [Horowitz]."  *Id.*  Thus, "[w]here, as here, a defendant willfully and maliciously causes false information to be presented to prosecuting officials, the prosecutor's decision, based on the false information, will not shield the source from liability for malicious prosecution." *Komlosi v. Fudenberg*, 2000 WL 351414, at *10 (S.D.N.Y. Mar. 31, 2000).

Unable to grapple with this controlling authority as to the "initiation" prong, Horowitz offers a line of arguments that are thematically related, *i.e.*, that all blame lies with the Government, not Horowitz.  But, to the extent these arguments can be deciphered, they can be quickly dispatched. *First*, Horowitz suggests he cannot be liable for malicious prosecution because Cole adopted as part of his criminal trial strategy an argument that the Government coerced witnesses. MTD at 22.  The point Horowitz attempts to make here is not clear.  Perhaps he is arguing that Cole previously argued that it was the *federal government* that maliciously prosecuted Cole, not him.  But that is no defense to a malicious prosecution claim.  Indeed, the Government could have coerced witnesses, even while Horowitz initiated the prosecution by knowingly making false

reports to the Government. And, of course, multiple actors can be responsible for a malicious prosecution. *See Mejia v. City of New York*, 119 F. Supp. 2d 232, 272 (E.D.N.Y. 2000). *Second*, and similarly, Horowitz avers that the Complaint's statement that the Government "unconstitutionally and unfairly" retried him means that the "Department of Justice was the malicious actor." MTD at 22. This argument is also difficult to parse. But, as noted above, there is no reason there is just *one* (*i.e.*, "the") malicious actor. In other words, just because the Government acted unfairly in violating the Double Jeopardy Clause—in 2022, three years after Horowitz maliciously initiated the prosecution—is immaterial to whether Horowitz *separately* acted unfairly in lying about Cole's involvement in SEA-2 and SEA-3 and obstructing justice.

## II.    The Complaint Alleges a Lack of Probable Cause.

Horowitz argues the Complaint fails to plead the second element of a malicious prosecution claim: lack of probable cause. But, here again, Horowitz does not engage with the applicable legal standard. Indeed, again, each argument fails given the central theory underlying the Complaint's malicious prosecution claim: Horowitz *purposefully lied* to have Cole maliciously prosecuted. Those well-pled allegations simply dispatch each of Horowitz's Rule 12(b)(6) arguments. Below, we (i) explain that the Complaint alleges a lack of probable cause under these principles; (ii) rebut Horowitz's reliance on the so-called "competing testimony-plus" principle; and (iii) address and rebut the "presumptions" of probable cause upon which Horowitz so heavily relies.

### A.    The Complaint Alleges a Lack of Probable Cause by Alleging That Horowitz Made Intentionally False Reports to Law Enforcement and Prosecutors.

Probable cause exists where "facts and circumstances that would lead a reasonably prudent person to believe the plaintiff guilty[,] . . . evaluated in light of the facts known or reasonably believed at the time the prosecution was initiated." *Ying Li*, 246 F. Supp. 3d at 611 (citation modified). Similar to the initiation prong, where a presumption of probable cause arises, a plaintiff

rebuts it by alleging that the indictment or conviction was "produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith," which includes allegations that witnesses "have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." *Id.* at 612 (citation modified).

In light of these principles, the issue here is straightforward: whether the Complaint sufficiently alleges that Horowitz engaged in such misconduct. The Complaint undoubtedly does so, alleging that Horowitz knowingly made false reports. *See* Compl. ¶¶ 31-40. The Complaint suffices because it contains "sufficiently specific factual allegations regarding the nature and content of their lies in order to survive defendants' 12(b)(6) motion." *Demosthene v. City of New York*, 2019 WL 181305, at *5 (E.D.N.Y. Jan. 10, 2019) (collecting cases); *see also, e.g.*, *Hicks v. Marchman*, 719 F. App'x 61, 65 (2d Cir. 2018) (summary order) (presumption of probable cause was rebutted at the motion to dismiss stage where the plaintiff alleged that the officers provided fabricated evidence to prosecutors); *Buari v. City of New York*, 530 F. Supp. 3d 356, 388 (S.D.N.Y. 2021) (same); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 392 (S.D.N.Y. 2016) (same). Further, as articulated in the following section, Cole supported his allegations as to Horowitz's intentional lies with detailed additional facts (even though he was not required to).

**B.    The Competing-Testimony-Plus Standard is Irrelevant Here (Especially at This Stage) and Would in Any Event be Satisfied Here.**

Against this black-letter law, Horowitz argues that the Complaint fails to rebut the presumption of probable cause because the Complaint "does not allege <u>any</u> facts, other than his own contrary testimony, in support of his contention that Horowitz knowingly lied under oath." This    argument—seemingly    invoking    the    Second    Circuit's    "competing-testimony-plus"

10

principle—has no merit because it misunderstands malicious prosecution law, the applicable pleading standard, and the facts alleged in the Complaint.

The "competing-testimony-plus" principle that Horowitz seems to invoke emanated from *Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003).  The principle provides that, in certain circumstances, "[a] plaintiff's own contrary testimony alone is insufficient to rebut evidence supporting a presumption of probable cause."  MTD at 18.  This argument here, however, suffers from two fundamental obstacles, as laid out below: (i) the "competing-testimony-plus" standard is a *summary-judgment* principle; and regardless, (ii) the Complaint alleges several other factors (*i.e.*, "plusses") that Horowitz lied about Cole's involvement in the transactions.

*First*, the competing-testimony-plus standard is a summary judgment principle that is categorically inapplicable to a motion to dismiss.[2]  Indeed, courts consistently reject Horowitz's argument at this stage.  For example, rejecting the contention that a plaintiff must point to "some corroboration in the record, beyond plaintiff's mere assertions of defendants' misconduct," Judge Ross explained that a plaintiff need only allege "the nature and content of [defendants'] lies in order to survive defendants' 12(b)(6) motion."  *Demosthene*, 2019 WL 181305, at *4-5.  Thus, a "plaintiff's 'averments,' unsupported by evidence, [are] 'sufficient, at [the motion to dismiss] stage, to rebut the presumption that his prosecution was supported by probable cause.'"  *Id* at *5. (quoting *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 476 (S.D.N.Y. 2009)).  As in *Demosthene*,

---

[2] The principle's inapplicability at the motion to dismiss stage is perhaps demonstrated most clearly by the fact that the "testimony" to which the principle refers is not—as Horowitz suggests—previous *trial* testimony (after all, many malicious-prosecution cases do not have criminal-trial testimony) but to *deposition testimony* in the instant case.  *See Brandon v. City of New York*, 705 F. Supp. 2d 261, 274 (S.D.N.Y. 2010) (discussing competing *deposition testimony*).  To state the obvious: the principle does not apply until there is potentially conflicting deposition testimony—which, of course, exists only after discovery.  Indeed, as explained in *Johnson v. McMorrow*, 2023 WL 1797063 (S.D.N.Y. Feb. 7, 2023)—on which Horowitz heavily relies—"where a plaintiff's testimony is corroborated by *other evidence in the record*, a court faced with competing versions of events may not resolve probable cause at summary judgment because there truly exists a genuine issue of material fact and the plaintiff is entitled to a trial on the merits."  *Id.* at *5 (emphasis added).

Horowitz "err[s] by equating factual allegations—a standard of pleading that all plaintiffs must meet in order to withstand a motion to dismiss—with the heightened requirement of evidentiary corroboration." *Id.*; *see Hincapie v. City of New York*, 434 F. Supp. 3d 61, 74 n.6 (S.D.N.Y. 2020) (rejecting argument that "the plaintiff had to submit evidence more than 'conjecture' and 'surmise' sufficient for a reasonable jury to find that his indictment was procured in bad faith" because that principle is "consistent with the well-established summary judgment standard, not a motion to dismiss"). Perhaps demonstrating most clearly that this principle simply cannot be invoked at this stage is the fact that *each* of the six cases Horowitz cites for application of the competing-testimony-plus principle are decisions made on summary judgment. *See* MTD at 19 & n.8.

Regardless, even if the competing-testimony-plus rule applied at this stage (it does not), the Complaint would satisfy it because it does *not* rely on Cole's averment alone.[3] *See Paige-Bey v. LaCoste*, 2022 WL 4641104, at *9 (E.D.N.Y. Sept. 30, 2022) (collecting cases for a broad array of "plus" evidence). The Complaint includes myriad other bases making it more than "plausible" that Horowitz lied: (i) there was not a single piece of other evidence—including a single document—evidencing Cole's supposed agreement with Horowitz to enter into these multi-million dollar secret side deals; (ii) a jury unanimously doubted Horowitz's story, a verdict that a unanimous Second Circuit panel interpreted to mean the jury did not "believe[] even a fraction of Horowitz's account," and "disregarded all (or nearly all) of Horowitz's testimony"; (iii) Horowitz had multiple documented and objective motives to lie; and (iv) Horowitz himself acknowledged that he "gets a thrill of doing something knowingly wrong."

---

[3] In support of his contention that no additional evidence in Cole's favor exists, Horowitz cites Cole's appellate counsel's argument that the case "came down" to whether the jury believed Cole or Horowitz. MTD at 18. But that is exactly the point: no other evidence has ever existed to support Horowitz's claim that Cole committed a crime.

12

In response to the foregoing—*i.e.*, to argue that Cole is the liar and that he was the truth-teller—Horowitz offers several arguments attempting to undermine the facts in the Complaint. But even if these contentions were available at this stage (they are not) they are unavailing.

*First*, Horowitz argues that his "purportedly malicious motive to 'lie' is [] absurd." MTD at 10. According to Horowitz, it is "irrational" that "Horowitz harbored such a 'deep seated hatred' of his boss Cole that he was willing to turn himself into a felon, and thereby destroy his own life, solely to inflict harm on Cole." *Id.* As an initial matter, this type of challenge—to the Complaint's factual persuasiveness—is of course inappropriate at this juncture, where "[t]he question at the pleading stage is not whether there is a plausible alternative to the plaintiff's theory; the question is whether there are sufficient factual allegations to make the complaint's claim plausible." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 189 (2d Cir. 2012). Regardless, Horowitz is wrong. The Complaint does not allege that Horowitz was motivated "solely" to harm Cole, it clearly alleged Horowitz had *twin* and overlapping motives: "to protect himself *and* to harm Cole." Compl. ¶ 30. In sum, the Complaint provides a highly plausible—and true—theory that Horowitz became nervous about his role in the SEA-2 and SEA-3 deals when the Government began investigating them and he saw an out where he could "protect himself" by shifting blame to Cole (his boss) and then also "harm Cole," his perceived nemesis. Horowitz may contest the veracity of these allegations, but that is an insufficient basis for dismissal.

*Second*, Horowitz faults the Complaint for not having incorporated more evidence from the criminal proceedings. MTD at 10. But a plaintiff is not required "to plead 'evidence . . . in detail.'" *Demosthene*, 2019 WL 181305, at *5 n.3 (quoting *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004)). In any event, the Complaint sufficiently alleges the nature and content of

Horowitz's lies and cites specific evidence of Horowitz's motive and resentment of Cole, both in Horowitz's own words and that of others.  *See infra* III (listing this evidence in full).

*Third*, Horowitz claims that it is implausible that he would have pled guilty to a crime but that Cole did not commit one.  But as a matter of both logic and law, one person may commit a crime when another does not.  *See, e.g.*, *United States v. Barret*, 848 F.3d 524, 531 (2d Cir. 2017) (approvingly quoting standard jury instruction that "[t]he guilt of any person . . . is not evidence of the guilt of any other person").  And Horowitz may well have committed a crime, thought he committed a crime, or simply decided to take a favorable plea—all of which is entirely consistent with Cole's testimony that he did not believe there to be any secret side deals.[4]

*Finally*, Horowitz oddly tries to weaponize *against Cole* the Second Circuit's decision vacating Cole's conviction and ordering his acquittal.  Specifically, Horowitz contends that the Second Circuit found it "unrealistic" that "Horowitz, <u>not</u> Cole, was the primary wrongdoer in the alleged scheme."  MTD at 12.  But this effort resoundingly fails.  Indeed, any read of the Second Circuit's opinion leaves the reader with one conclusion: the Court earnestly believed that Horowitz was not telling the truth.  *See, e.g.*, *United States v. Cole*, 158 F.4th 113, 127 (2d Cir. 2025) (the jury "must have disregarded all (or nearly all) of Horowitz's testimony" and did not "believe[] even a fraction of Horowitz's account").  To be clear, Horowitz's gloss on the Second Circuit's opinion is not only strained, it is totally inaccurate.  In the portion of the opinion that Horowitz purports to cite, the Second Circuit was considering various hypothetical rationales the jury might have had to acquit Cole on the top conspiracy count but be hung on the other substantive count. The purpose of this exercise was to determine whether the jury could have *possibly* acquitted Cole of the conspiracy count but have nonetheless somehow believed that Cole was guilty of the

---

[4] Horowitz takes issue with Cole's "certainty" that there were no oral agreements, but he of course could only testify to his own knowledge.

substantive count. As the Court made clear, if that were possible, Double Jeopardy would not bar retrial on the hung counts. *Id.* at 126. The Second Circuit, however, rejected each of the Government's hypotheticals, including the third on which Horowitz tries to rely here, which was that perhaps Cole merely aided-and-abetted Horowitz. Specifically, the Court rejected the possibility "that the jury believed it was *Horowitz* who led the overpayments-for-givebacks scheme, and Cole merely aided and abetted (but never made any agreement with) him." *Id.* at 128. This hypothetical possibility, the Court concluded, was "unrealistic" because the "central premise of the government's case [was] that Cole was the 'man in charge' of the scheme." *Id.* Thus, the Court concluded that the jury *must have* rejected the possibility that Cole could have participated in the scheme, or aided-and-abetted Horowitz, without joining in a conspiracy with Horowitz. *Id.* Once the Court's opinion is read with minimal care, Horowitz's argument is nonsense. The Second Circuit did not state that it was "unrealistic" that *Horowitz* committed a crime; it concluded that it was "unrealistic" that the jury could have concluded that *Cole* could have committed a crime without conspiring with, or aiding-and-abetting, *Horowitz*. Indeed, the Second Circuit's hypothetical *assumed* Horowitz not only committed a crime, but was its leader. Of course, because the trial and appeal both concerned Cole, the Second Circuit had no opportunity to opine whether Horowitz was a wrongdoer apart from Cole. And Horowitz's commission of a crime without Cole's participation is entirely consistent with the jury's verdict—which, after all, acquitted Cole, not Horowitz.

C.     **Horowitz's Extended Discussions of "Presumptions" is a Red Herring.**

Horowitz spills significant ink throughout his brief discussing "presumptions" of probable cause that he argues bar the Complaint's malicious prosecution claim. To be clear, as laid out below (and previewed above), these presumptions have no work to do in this case. Given the

15

centrality with which Horowitz relies on these presumptions in his papers, however, we address them at relative length.  With an understanding of these presumptions, it is clear they are categorically irrelevant in this case.  Specifically, as made clear by unambiguous legal authority, a malicious prosecution claim is not barred by a presumption of probable cause where, as here, the plaintiff's claim is that his entire prosecution was based off a defendant's intentional lies.

Presumptions of probable cause may apply in malicious prosecution cases because actors *independent* of the defendant—such as grand jurors—determine that there was probable cause.  For example, if an officer investigated a car crash—that he himself did not witness—and determines there is probable cause that a traffic light was red, and a grand jury reviewing the *same* evidence also independently determines the traffic light was red, the presumption applies straightforwardly.  But if that officer witnessed the crash, knew the light was green, and falsely told the grand jury the light was red, the presumption of probable cause is easily rebutted—and immaterial—because the grand jury is unable to exercise its independent judgment: it did *not* view the same evidence as the officer, so its assessment relied *entirely* on the officer being truthful.  This principle is deeply engrained in the law.  *See supra* § II.A.

It is for this reason that none of Horowitz's supposed presumptions (to the extent they even exist) carry any weight.  The Complaint's central theory is that the *entire* criminal prosecution of Cole rested singularly on Horowitz's false testimony.  (A framing that is certainly not just Cole's, but one the Second Circuit and Judge Ramos agreed with and is the only available conclusion after reviewing the trial record.)  Thus, even if others believed Horowitz's false testimony, their belief is not independent and provides no basis to presume probable cause.  In other words, even if Horowitz were able to credibly convince others that he was telling the truth, Cole now alleges he was *not*.  And once that proposition is accepted as true—as it must be at this stage—any

16

presumption collapses because each actor was *misled* and only proceeded exclusively based on a knowingly false account. Simply put, a lying complaining witness does not obtain the benefit of probable cause simply because they were a convincing liar.

Because Horowitz spends so much time on certain of these presumptions, we go through them each below. But the larger point should not be lost: *each* of these presumptions (or the ones that actually exist) are overcome in light of the well-pled allegations that Horowitz knowingly lied.

***Cole's Vacated Conviction.*** Horowitz first contends that Cole's vacated conviction establishes a presumption of probable cause. As a preliminary matter, the presumption is misplaced here, where the Second Circuit held that the first jury necessarily acquitted Cole of all charges and determined that "[the jury] must have disregarded all (or nearly all) of Horowitz's testimony."[5] *Cole*, 158 F.4th at 127. In any event, *Sibblies v. City of New York*, 196 N.Y.S.3d 47 (1st Dep't 2023)—on which Horowitz relies—makes plain that that presumption is rebutted with the same allegations that overcome the grand-jury-indictment presumption: "perjury, fraud, suppression of evidence, or other police conduct undertaken in bad faith," *id.* at 48 (quoting *Colon v. City of New York*, 60 N.Y. 2d 78, 83 (1983))—precisely what the Complaint alleges here. *See* Compl. ¶¶ 31-52; *supra* § II.A.

***Judge Ramos's Comments***. Without citing any authority, Horowitz contends that Judge Ramos's sentencing statements—that he credited Horowitz's testimony over Cole's—establish a presumption of probable cause. MTD at 13. Horowitz's argument is flawed at several levels.

---

[5] Horowitz claims that because the Second Circuit "did <u>not</u> call into question the reliability of any evidence heard by the jury," "there is, if anything, a greater reason to enforce the presumption." MTD at 13. But Horowitz gets it exactly backwards. The Second Circuit did not opine on the sufficiency of the evidence because it instead concluded that the jury *acquitted* Cole—which means it rejected the very evidence on which Horowitz repeatedly relies. In other words, the Second Circuit's acquittal is just about as powerful a statement of actual innocence as is possible.

Horowitz's argument fails out of the gate because, by asking the Court to accept Judge Ramos's "factual findings" for their truth, Horowitz misunderstands black-letter judicial-notice doctrine.  A court may take judicial notice of materials, but "not for the truth of the facts asserted therein," *Coggins v. Cnty. of Nassau*, 988 F. Supp. 2d 231, 242 (E.D.N.Y. 2013), nor to "resolve any factual disputes between the parties," *S.E.C. v. Siebel Sys., Inc.*, 384 F. Supp. 2d 694, 699 n.6 (S.D.N.Y. 2005).  Applying this principle and likewise rejecting defendants' request to take judicial notice of Judge Kaplan's factual findings in a prior proceeding, Judge Oetken explained that to "take judicial notice of the underlying testimony . . . cited in Judge Kaplan's decision, as well as Judge Kaplan's findings of fact, for the truth of the matters asserted therein" would be "tantamount to accepting as true declarations made by [defendants]."  *Guzman v. United States*, 2013 WL 543343, at *3-4 (S.D.N.Y. Feb. 14, 2013).  Just as Judge Oetken held that he "may not consider Judge Kaplan's findings of fact, nor the testimony cited in his opinion," *id.* at *4, this well-established principle forecloses Horowitz's argument.

Even if the Court could take judicial notice of Judge Ramos's statements, they do not establish any sort of presumption of probable cause that would be relevant here for several reasons.  *First*, the Second Circuit reversed and vacated Cole's sentence, and the jury's acquittal in the first trial effectively nullified any later findings.  *See Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) ("[A] judgment [of conviction] that has been reversed, with instructions that the matter be dismissed, is null and void.").  *Second*, and relatedly, even if Judge Ramos credited Horowitz's allegations, a unanimous jury of Cole's peers did not when it acquitted Cole of all charged conduct.  *Finally*, but perhaps most significantly, Judge Ramos's statements directly support what is perhaps the central theme in the Complaint: that there was *no other evidence of Cole's culpability other than Horowitz's testimony*.  Stated differently, Judge Ramos said that he found Horowitz *credible*,

18

but he did *not* say that he found Horowitz corroborated by any other independent evidence. That is because Horowitz's testimony about Cole was totally *uncorroborated*.

*Rabin & Margolis's Trial Testimony.* Horowitz next argues that the trial testimony of GBG witnesses Rabin and Margolis establishes probable cause. Specifically, he contends that they testified at Cole's criminal trials that: (i) Cole made a firm verbal commitment to return excess payments; (ii) GBG would not have executed the agreements for SEA-2 and SEA-3 without the oral commitments; and (iii) Cole provided cash payments to GBG. MTD at 14-15. Horowitz is wrong, again, for at least five independent reasons.

*First*, before turning to the myriad legal defects with Horowitz's argument, Horowitz is simply wrong on the facts: the GBG witnesses did not, in fact, corroborate his testimony in any relevant way. As the Second Circuit explained, to prove a "secret side deals" scheme, it was of course "essential that Cole hid[] the promised giveback"; Horowitz was therefore "indisputably the government's key witness" because only he could testify as to Cole's purported efforts to "conceal the givebacks" and "cover up the fraud by destroying incriminating evidence." *Cole*, 158 F.4th at 118-20. While Rabin and Margolis each testified that GBG agreed to pay an inflated price because Cole agreed to return excess payments, they denied "that Cole asked them to keep the giveback portion of the deals secret or to omit it from the written contracts." *Id.* at 120. Nor could they testify to the inner workings of Iconix—but "Horowitz's fingerprints were all over the SEA transactions." *Id.* at 128. Simply, the GBG witnesses did not corroborate the "essential" aspect of Horowitz's testimony: Cole's purported intent and conduct in seeking to "hide the promised giveback." *Id.* at 118. Horowitz elsewhere in fact appears to concede as much, admitting that because "the GBG Witnesses played no role in Iconix's financial reporting activities, there was no reason to expect them to have knowledge about" Cole's efforts to conceal the scheme. MTD at 17

19

(emphasis in original). "No role," indeed: that is precisely why liability lies with Horowitz, as he supplied the key material (and false) information linking Cole to fraudulent reporting.

*Second*, Horowitz's argument relies on a fundamentally flawed premise. Horowitz seems to invoke the principle that corroborating witnesses' testimony voids a malicious prosecution claim as a matter of law. MTD at 15. But as each of the four cases that Horowitz cites makes plain, *see id.*, this principle is primarily concerned with corroborating information provided to uninvolved *law enforcement officers* that provide the officer with "no reason . . . to doubt the victim's account of the incident." *Ahearn v. Brachowicz*, 2014 WL 3408389, at *7 (S.D.N.Y. July 10, 2014); *Franks v. City of New Rochelle*, 2025 WL 2711281, at *6 (S.D.N.Y. Sept. 23, 2025) (granting summary judgment to police-officer defendant because "there is no evidence that would call [the corroborating witnesses'] credibility into question" (quotation omitted)); *Williams v. City of New York*, 176 N.Y.S.3d 492 (1st Dep't 2022) ("corroborating video evidence" gave officers probable cause); *Flavin v. City of New York*, 99 N.Y.S.3d 259 (1st Dep't 2019) (same for "corroborating documentary evidence"). This is a totally distinct principle than the one at issue here. Horowitz is, of course, not a law enforcement officer, nor is there an allegation he relied on such third-party evidence in maliciously prosecuting Cole. Regardless, even if this corroboration concept applied in this case, it is primarily a summary-judgment principle, not one resolvable on the pleadings.[6]

*Third*, flowing from that principle, Horowitz's reliance on the GBG Witnesses' trial testimony is a distraction from the actual inquiry of whether Horowitz had probable cause "at the time the prosecution was initiated." *Ying Li*, 246 F. Supp. 3d at 611. Margolis and Rabin's testimony at trial in 2021 and 2022 is irrelevant to whether Horowitz had probable cause in 2019,

---

[6] The sole motion to dismiss decision on which Horowitz relies, *Ahearn*, 2014 WL 3408389, at *7, is easily distinguishable. There, the plaintiff himself "corroborated parts of the victim's story," which gave the police officer arguable probable cause to arrest. *Id.*

when the prosecution was commenced, absent some allegation that Horowitz relied on the GBG Witnesses' accounts. Indeed, Horowitz's argument asks the Court to ignore the Complaint's specific allegation that the Government would have had no basis to *investigate Cole at all* had Horowitz not first falsely implicated him. *See* Compl. ¶ 36. In other words, the GBG Witnesses' stories never would have been told had Horowitz not initially lied and roped Cole into this at all.

*Fourth*, Horowitz again claims that the Court can take "judicial notice" of Rabin's and Margolis's testimony. This incorrect assertion can be dealt with quickly, and for similar reasons as explained above: a court may only take judicial notice of materials from prior proceedings "to establish the fact of such litigation and related filings" but "not for the truth of the matters asserted in the other litigation." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see also Cabrera v. Schafer*, 178 F. Supp. 3d 69, 73 (E.D.N.Y. 2016) (rejecting defendant's request for the court to take judicial notice of prior testimony). And, in any event, to the extent that Rabin and Margolis did implicate Cole in wrongdoing, the jury rejected their testimony in acquitting Cole.

*Finally*, the GBG witnesses said nothing about Cole *obstructing justice* by destroying documents, a theory of criminality that was indisputably proposed by Horowitz and only Horowitz, which is another claim the jury rejected (and that was not part of the second trial).

**The Indictment.** Horowitz falls back on the presumption of probable cause created by a grand jury indictment. But, as Horowitz does and must acknowledge, this presumption is (like the others) overcome by allegations that "the indictment was procured by fraud, perjury, suppression of evidence, or other bad-faith conduct." MTD at 17. Because the Complaint rebuts that presumption, *see supra* § 1.A, Horowitz instead turns to further obfuscation.

*First*, Horowitz states that he "did not even testify before the grand jury," but the GBG witnesses did. MTD at 17. That is yet another red herring. To start, immunity generally attaches

21

to grand jury testimony, so Cole is none the worse that Horowitz did not testify because his claim necessarily does not depend on what happened in the grand jury. *See De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 770 (2016). Regardless, although a defendant cannot be liable for grand jury testimony alone, immunity does not attach to "other conduct 'laying the groundwork for an indictment,'" *Coggins*, 988 F. Supp. 2d at 244 (citation omitted)—as the Complaint alleges here.

More to the point, there is simply no requirement that a witness testify before the grand jury to be held liable for malicious prosecution. *See id*. Indeed, at this stage, Cole "'is not required to prove that the defendants lied before the grand jury or in their discussions with . . . prosecutors; instead, he need only provide sufficiently specific factual allegations regarding the nature and content of their lies.'" *Buari*, 530 F. Supp. 3d at 388 (quoting *Demosthene*, 2019 WL 181305, at *5). And, here, the Complaint not only specifically alleges the "nature and content" of Horowitz's lies but also does, in fact, allege that Horowitz made those reports to law enforcement. Compl. ¶¶ 31-36. Further, although Horowitz may not have testified before the grand jury, the Complaint makes it clear that Horowitz's *lies* were presented to the grand jury and served as a key pillar of its indictment. *Id.* ¶¶ 37-40.

*Second*, Horowitz faults the Complaint for failing to identify in FBI 302s the specific false statements that Horowitz made. But Horowitz again attempts to invent a new pleading rule. The Complaint was required to neither "plead evidence in detail" nor identify the precise statements Horowitz made, so long as it provides "sufficiently specific factual allegations regarding the nature and content of their lies"—which it readily does. *Demosthene*, 2019 WL 181305, at *5 & n.3 (citation modified); *Ambrose*, 623 F. Supp. 2d at 476. In any event, Horowitz is also wrong about his description of the FBI 302s. For one, he is incorrect in suggesting that they were each "entered into evidence during Cole's first trial." MTD at 17. Rather, they were almost exclusively used—

22

often unsuccessfully, because of Horowitz's intransigence—to try to refresh Horowitz's recollection. And that exposes a related flaw in Horowitz's argument: the FBI 302s are *hearsay* of FBI personnel, *not* Horowitz's own statements.

### III.         The Complaint Alleges Malice.

Finally, Horowitz argues that the Complaint fails to sufficiently allege malice. But the argument again easily fails in light of a basic principle of law with which he does not grapple: an absence of probable cause establishes motive on a malicious prosecution claim. On this, the law is as clear as it is long-standing. *See, e.g.*, *Ambrose*, 623 F. Supp.2d at 477 (collecting federal and NY cases for proposition that the "same allegations" demonstrating a lack of probable cause "suffice to state a claim of actual malice as well"). Indeed, this principle not only applies at the motion to dismiss stage, *see id.*, and the summary judgment stage, *see Boyd*, 336 F.3d at 78, but even *at trial*, *see Martin v. City of Albany*, 42 N.Y.2d 13, 17 (1977). Thus, the Complaint's well-pled allegations that Horowitz lacked probable cause that Cole committed a crime, *see supra* at § II.A, itself establishes an inference of alleged malice. The Court need not inquire further.

In any event, the Complaint goes well beyond the malice-pleading requirement, alleging that Horowitz commenced the proceeding due to a "wrong or improper motive." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quotation marks and citation omitted). On this, the Complaint is rife with specific, well-pled allegations, including the following:

- Horowitz "developed a deep-seated and mostly irrational resentment and anger towards Cole, principally on the perceived slight that Cole had unfairly rebuffed Horowitz's efforts to lead Iconix." Compl. ¶ 16.

- Horowitz stated at this time that "he 'gets a thrill of doing something knowingly wrong,' and ask[ed] himself: 'I know it's right. Why don't I do it[?]'" *Id*. ¶ 15.

- Horowitz "ultimately concluded that Cole stood in his path to becoming CEO, [and] grew resentful and angry at Cole and vowed to 'fight back' against him." *Id*. ¶ 17.

23

- Horowitz "began to write desperate grievance letters addressed to Cole," which "provided a window into Horowitz's deep-seated hatred for Cole an into Horowitz's overwhelming desire to take over Iconix at any cost," including one letter "which Horowitz named '[D]ear[N]eil," which "meticulously documented the ways in which Cole had purportedly 'disrespected' him," and "indicate . . . that he only had two options as to how he could respond to the disrespect—he could either 'ignore it' or 'fight back.'" *Id*. ¶¶ 18-21.

- Horowitz "documented his concerns that he would never move up the chain at Iconix, writing that he feared Cole had 'no plans of letting [him] actually drive and attack the business.'" *Id*. ¶ 23.

- "[I]n 2014, Cole told Horowitz that he was not ready to 'give up' the title of President of Iconix, which was one of the positions that Horowitz strongly desired." *Id*. ¶ 24.

- "Later, in 2015, Horowitz became 'very upset' with Cole, and others at the company observed that there was 'very much . . . a rift developing' between the two." *Id.* ¶ 25.

- "Horowitz ultimately became nervous that he would be held accountable for certain terms that he negotiated on SEA-2 and SEA-3 and he decided to throw his perceived nemesis, Cole, under the bus." *Id.* ¶ 29.

- Horowitz crafted his story implicating Cole "[t]o protect himself and to harm Cole." *Id.*

Of course, having such a mountain of direct motive evidence at the pleadings stage (or ever) is highly unusual in a malicious prosecution case. *See Davis v. City of New York*, 373 F. Supp. 2d 322, 334 (S.D.N.Y. 2005) ("Malice, however, 'is seldom shown by direct evidence of an ulterior motive, but is usually inferred from the facts and circumstances of the investigation.'" (quoting *Ramos v. City of New York*, 285 A.D.2d 284 (1st Dep't 2001); *de la Roca v. Schacht*, 244 A.D.3d 1570, 1572 (3d Dep't 2025) (malice "can be inferred by lack of probable cause or conduct that was reckless or grossly negligent" (quotation marks omitted)). Again, New York law does not even require actual malice evidence *at trial*. Nevertheless, Horowitz nitpicks around the edges of some (but not all) of these allegations, but even those arguments have no merit.

*First*, Horowitz questions the probative value of the "Dear Neil" grievance letter, arguing that because it was (supposedly) written in June 2012, it was too temporally removed from when he maliciously prosecuted Cole. He also disputes the Complaint's factual assertion that the letter

*actually* expresses a "deep-seated hatred" for Cole. MTD at 20. Apart from these averred facts not being properly before the Court, they are simply not facts at all. To be clear, Horowitz's (premature) factual account will be heavily disputed by Cole. For example, the fact that the letter was written in June 2012—years before outside observers noted the deep rift developing between Horowitz and Cole—evinces how deep-seated Horowitz's resentment was. (Of course, the Complaint also cites more contemporaneous evidence of that malice.) *Second*, Horowitz's attempt to explain away the relevance of his note admitting to the thrill of doing something "knowingly wrong" is both confused and confusing. Horowitz first notes that the document was written "months after Horowitz left Iconix," an observation whose import is left unstated. Horowitz then claims that the document "did not call the truthfulness of [his] testimony into question." MTD at 20. A fact finder may of course draw a different inference from a document in which a defendant admits to enjoying doing "knowingly wrong" things. Horowitz then relies on Judge Ramos's exclusion of the document at trial. But a non-final ruling as to a document's evidentiary admissibility in a separate securities fraud criminal trial does not govern the pleading requirements under Rule 12(b)(6) in a civil trial. *See Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 991 n.7 (S.D.N.Y. 2017). *Finally*, Horowitz takes issue with the Complaint's allegation that he made a series of cash withdrawals to purchase drugs, arguing that the allegation is irrelevant solely because Cole's counsel did not present this evidence during his second criminal trial. But whether Cole's counsel chose to present them in a criminal securities fraud case (although they were introduced in the first trial) is of course a distinct question from whether his current counsel would choose to present them in a malicious-prosecution trial.

## CONCLUSION

For the foregoing reasons, Horowitz's motion to dismiss should be denied.

25

Dated:        April 27, 2026
              New York, New York


                                        By:    _____
                                               Benjamin D. White

                                               **BLOCH & WHITE LLP**
                                               Benjamin D. White, Esq.
                                               Cristina Alvarez, Esq.
                                               Kyle W. Bigley, Esq.
                                               90 Broad Street, Suite 703
                                               New York, NY 10004
                                               (212) 901-3825
                                               bwhite@blochwhite.com
                                               calvarez@blochwhite.com
                                               kbigley@blochwhite.com

                                               *Attorneys for Plaintiff Neil Cole*


26